UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
BEVERLY VAN GUNDY,

                    Plaintiff,                Case No.:

-against-


ATLAS RARE COINS, INC.         **COMPLAINT**
TRI-STATES ASSETS, LLC
CHRISTIAN ANTONELLI, and
JASON SULLIVAN              **Jury trial demanded.**

               Defendants.
_____X

       Plaintiff, by her attorney, Kenneth G. Walsh, complaining of the defendants, alleges as follows on information and belief:

## NATURE OF THE CASE

1.     This is a RICO action against two related New York precious metal telemarketing dealers and RICO Enterprises Atlas Rare Coins, Inc. (hereinafter "Atlas") and Tri-State Assets, LLC (hereinafter "Tri-State") which are controlled and manipulated by RICO persons Christian Antonelli and Jason Sullivan to carry out a long-running scheme to fraudulently sell precious metals to and steal precious metals from unsuspecting consumers like the Plaintiff Beverly Van Gundy (hereinafter "Mrs. Van Gundy" or "Plaintiff").  These types of scams by the Defendants are not isolated events or accidents but are well-known and actively investigated and prosecuted by various Federal and State agencies.

2.     Beverly Van Gundy is an 80-year-old widow who resides in California.  In June 2017, Mrs. Van Gundy saw an advertisement for a new gold coin, but when she inquired about it, the

Defendants convinced her instead to buying numismatic[1] coins with claims of high returns. Although she admitted to Defendants that she knew very little about precious metals and numismatics, Mrs. Van Gundy was intrigued by Defendants' sales pitch and succumbed to purchasing and investing in Benjamin Franklin half-dollars. Thus began the Defendants' financial exploitation of Mrs. Van Gundy. Over the course of four years, the Defendants convinced Plaintiff to make fifty-seven (57) distinct purchases of precious metal products for a total of Five Hundred Thousand Six Hundred Sixty and 19/100 Dollars ($500,660.19) by falsely claiming the purchases were "investments" at "dealers' cost" with a substantial likelihood of a high rate of return. Defendants were so effective in selling the coins to Plaintiff that she decided to move her assets from other investments to precious metal coins.  However, the original purchase price for coins the Defendants sold to Mrs. Van Gundy was not the value as misrepresented by Defendants. Instead, the true fair market value of the fraudulently overpriced precious metal coins was but a fraction of the amount Mrs. Van Gundy paid--just $189,655.00. In a nutshell, the Defendants scammed Mrs. Van Gundy of $311,005.19 of her life savings.

**3.**     Once Plaintiff's available funds began to be depleted, and, as a result, her purchases of coins from Defendants began to slow, the Defendants launched "part two" of their scheme upon the Plaintiff. In 2021, claiming the COVID pandemic provided an unparalleled opportunity to realize even higher returns, Defendants enticed Plaintiff to ship the coins she had already purchased from Defendants at grossly overinflated prices, along with other coins she owned, to the Defendants "on consignment" allegedly to sell at auction with Defendants' assurance that Mrs. Van Gundy would realize an "in-pocket" return of $1.1 million after fees and commissions.

---

[1] Numismatics is the study or collection of currency, including coins, tokens, paper money, medals and related objects. The discipline also includes the broader study of money and other means of payment used to resolve debts and exchange goods.

Defendants claimed that they had checked with reputable auction companies three (3) times and assured Plaintiff of the values represented and the return on investment. Defendants further agreed to send Plaintiff a "good-faith" downpayment as soon as they received the coins. In reliance upon these representations, Mrs. Van Gundy boxed up her collection (that she had accumulated at a total cost of $834,792.72) and shipped them to the Defendants. In fact, in furtherance of their scheme, Defendants did pay Mrs. Van Gundy a "good-faith" downpayment of $231,915.00 for her shipped coins. After a few weeks, Mrs. Van Gundy began inquiring with Defendants as to the results of the auctions, and the Defendants became evasive and began to dodge and stall her. After repeated calls, Defendants finally informed Van Gundy that they did not send her coins to auction after all as represented, but rather they had gone "another way"[2] and that they had already paid her for the coins they had sold.  When Mrs. Van Gundy then demanded that Defendants return her with a  full accounting, Defendants returned eight (8) coins  valued at approximately $12,570.00, but they have never provided her an accounting.  In sum, as a direct result of the Defendants' actions and fraudulent misrepresentations—including outright thievery--Mrs. Van Gundy has incurred losses of $590,307.72.  It is against this gut-wrenching backdrop that the elderly Beverly Van Gundy files this complaint.

**4.** Mrs. Van Gundy brings this action under 18 U.S.C. §§ 1961-68 and New York common and statutory law against Christian Antonelli (RICO person) and Jason Sullivan (RICO person) and Atlas Rare Coins, Inc. (RICO enterprise) and Tri-States Assets, LLC, (RICO enterprise) for their unlawful, false, misleading and unconscionable misrepresentations and sales tactics that resulted in damages to Mrs. Van Gundy in the amount of $590,933.72 by: (a) inducing her to

---

[2]  It is a common scam technique for unscrupulous coin dealers to sell the coins fraudulently obtained from one customer to other customers without ever compensating the original owner.

purchase collectible numismatic[3], semi-numismatic, and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented; and (b) inducing her to ship those coins, as well as coins she had obtained from other sources, back to them for "consignment sale" based upon the representation that she would receive at least $1,100,000.00 net from the "sale" but, instead, absconding with her coins. Plaintiff seeks to recover her coins, to recover the value she paid for the coins and/or to recover actual damages, consequential damages, punitive damages, statutory treble damages, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

**RICO Person Christian Antonelli**

**5.**     RICO Person Christian Antonelli (hereinafter "Antonelli") conducted and/or participated in the business and financial affairs of the two RICO enterprises, Atlas Rare Coins, Inc. and Tri-State Assets, LLC through a pattern of racketeering activity, to wit: Antonelli engaged in repeated and systematic mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 that generated multiple and repeated unlawful coin sales to Plaintiff that, in turn, generated exorbitant compensation for Antonelli.  In association with RICO Person Jason Sullivan, Antonelli caused Atlas Coins and Tri-State Assets to use the interstate mails and wires to repeatedly make and/or send fraudulent coin solicitations, sales receipts and/or other purchase confirmations to Plaintiff.

**6.**     By his unlawful acts, Antonelli (i) conducted and/or participated in the affairs of Atlas Coins and Tri-States Assets in violation of 18 U.S.C. § 1962(c); and/or (ii) conspired to violate 18 U.S.C. § 1962(b) and (c) in violation of 18 U.S.C. §1962(d), and defrauded Plaintiff in the process. Antonelli committed these substantive RICO offenses by causing Atlas Coins and Tri-States

---

[3] Numismatics is the study or collection of currency, including coins, tokens, paper money, medals and related objects. Specialists, known as numismatists, are often characterized as students or collectors of coins, but the discipline also includes the broader study of money and other means of payment used to resolve debts and exchange goods.

Assets to engage in multiple predicate acts of mail fraud and wire fraud—all the while knowing of, and agreeing to, the overall objective of such fraud, to wit: generating exorbitant compensation for himself. Antonelli knew that making and/or sending fraudulent solicitations, sales receipts and/or purchase confirmations to Plaintiff was fraudulent, misleading, and unlawful. Antonelli knew such wrongful acts and practices would generate multiple and repeated unlawful coin sales to Plaintiff that, in turn, would generate exorbitant compensation for himself. Antonelli engaged in the scheme to take unfair advantage of Plaintiff. The wrongful acts of Antonelli proximately and/or directly caused Plaintiff to be substantially overcharged for the coins in the first instance, and to incur additional, substantial losses in Defendants' subsequent *faux* "consignment sale" scheme by which they not only stole back the coins they had sold Mrs. Van Gundy but also stole additional coins from her.

**RICO Person Jason Sullivan**

**7.** RICO Defendant Jason Sullivan (hereinafter "Sullivan") conducted and/or participated in the business and financial affairs of the two RICO enterprises, Atlas Rare Coins, Inc. and Tri-State Assets, LLC through a pattern of racketeering activity, to wit: Sullivan engaged in repeated and systematic mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 that generated multiple and repeated unlawful coin sales to Plaintiff that, in turn, generated exorbitant compensation for Sullivan. In association with RICO Person Christian Antonelli, Sullivan caused Atlas Coins and Tri-State Assets to use the interstate mails and wires to repeatedly make and/or send fraudulent coin solicitations, sales receipts and/or other purchase confirmations to Plaintiff.

**8.** By his unlawful acts, Sullivan (i) conducted and/or participated in the affairs of Atlas Coins and Tri-States Assets in violation of 18 U.S.C. § 1962(c); and/or (ii) conspired to violate 18 U.S.C. § 1962(b) and (c) in violation of 18 U.S.C. §1962(d), and defrauded plaintiff in the process.

Sullivan committed these substantive RICO offenses by causing Atlas Coins and Tri-States Assets to engage in multiple predicate acts of mail fraud and wire fraud—all the while knowing of, and agreeing to, the overall objective of such fraud, to wit: generating exorbitant compensation for himself. Sullivan knew that making and/or sending fraudulent solicitations, sales receipts and/or purchase confirmations to Plaintiff was fraudulent, misleading, and unlawful. Sullivan knew such wrongful acts and practices would generate multiple and repeated unlawful coin sales to Plaintiff that, in turn, would generate exorbitant compensation for himself. Sullivan engaged in the scheme to take unfair advantage of Plaintiff. The wrongful acts of Sullivan proximately and/or directly caused Plaintiff to be substantially overcharged for the coins in the first instance, and to incur additional, substantial losses in Defendants' subsequent *faux* "consignment sale" scheme by which they not only stole back the coins they had sold Mrs. Van Gundy but also stole additional coins from her.

## JURISDICTION AND VENUE

**9.**     This Court has original subject-matter jurisdiction over the RICO claims pursuant to 18 U.S.C. §§ 1964(a) and 1964(c) and pursuant to 28 U.S.C. § 1331 insofar as they arise under federal law. This Court has diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of California and all Defendants are citizens of states other than California, and the amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees; alternatively, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 insofar as they are so related to the federal claims that they form part of the same case or controversy. This Court has *in personam* jurisdiction over Defendants because at all relevant times Defendants resided, maintained citizenship, were found, had agents, conducted

business and/or sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to Plaintiff in and/or from New York.

10.     At all relevant times, Defendants resided, were found, had agents and/or conducted business in the Eastern District of New York.  Defendants sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to Plaintiff in and/or from the Eastern District of New York.  A substantial part—if not all—of Defendants' wrongful acts and omissions occurred in the Eastern District of New York.  Accordingly, venue is proper in this Court pursuant to 28 U.S.C § 1391(a).

## **PARTIES**

11.     Plaintiff Beverly Van Gundy is a citizen and resident of California.

12.     Defendant Atlas Rare Coins, Inc. (aka Atlas Gemstones & Rarities and Atlas Gemstones, Inc.) (collectively referred to as "Atlas Rare Coins") is a New York corporation incorporated on October 2, 2020, with its principal place of business at 90-7 Collin Drive, Holbrook, New York 11741.

13.     Upon information and belief, Defendant Tri-State Assets, Inc. is a business owned and operated by Defendants Christian Antonelli and Jason Sullivan located at 90-7 Collin Drive, Holbrook, New York 11741 since 2015. Its place of incorporation is not known at this time, but it is not registered as doing business in New York.  It is doing business as Atlas Rare Coins, so it may be an assumed name for Defendant Atlas Rare Coins, Inc.

14.     Defendant Christian Antonelli ("Antonelli") is a natural person and a citizen and resident of the State of New York.  His address is 7 Francis Street, East Setauket, NY 11733. Antonelli is a principal owner of Defendants Atlas Rare Coins and Tri-State Assets.

15.     Defendant Jason Sullivan ("Sullivan") is a natural person and a citizen and resident of the State of South Carolina.  His last known address is either 5098 Oat Fields Dr Myrtle Beach, SC 29588 or 1425 Teague Rd Apt 307 Myrtle Beach, SC 29577. Upon information and belief, Sullivan is a prior part-owner and operator of Defendants Atlas Rare Coins and Tri-State Assets.

16.     Defendants Tri-State Assets and Atlas Rare Coins market and sell collectible numismatic, semi-numismatic, and bullion coins directly to consumers over the telephone and via its website, and is, or at all times pertinent was, principally owned and controlled by Defendants Christian Antonelli and Jason Sullivan who managed, operated and treated defendants Tri-State Assets and Atlas Rare Coins as their personal bank account—and continue to do so—in such a way that Tri-State Assets and Atlas Rare Coins are their alter-egos because corporate formalities are not followed, and separate and distinct books and records are not maintained.  Tri-State Assets and Atlas Rare Coins are undercapitalized and the line between owner/manager and the entities is substantially blurred to the point that it is difficult, if not impossible, to determine where the individual Defendants end and Tri-State Assets and Atlas Rare Coins begin.  Tri-State Assets and Atlas Rare Coins exist as mere tools and business conduits for Antonelli and Sullivan and possibly other owners, which has resulted in an injustice to Plaintiff and the diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct.

## FACTUAL BACKGROUND

### A.  The Predatory Precious Metals Market

17.     The precious metals industry is highly complex and nuanced, making it the ideal market for deceptive and fraudulent activity. Precious metals are naturally-occurring metals that carry a high economic value, often due to scarcity or global demand. These metals, including gold, silver,

platinum, and palladium, can be sold as physical assets, in the form of bars, bullion, or coins, or as futures contracts or other speculative investments. Although precious metals prices are volatile, they tend to increase during economic turmoil and stabilize during more prosperous times as contrasted with the price fluctuations experienced by more traditional investment products, including stocks, bonds, and real estate. It is common to see financial reports and media headlines touting the gains in value experienced by precious metals when contrasted against poor yields in other investments during times of economic uncertainty. Interestingly, this market is largely unregulated as "precious metal dealers fall 'within a 'gap'' in the federal regulatory system."[4] For several decades, fraudsters, sharp operators, and con men have taken advantage of this lack of regulation to lure unsophisticated and trusting customers into purchasing precious metals at prices so far above the fair market value as to nullify any reasonable return on investment, thereby resulting in devastating losses of elderly customers' life savings and leaving them with no recourse or chance of recovery.

18.     While there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry"), operating in the penumbra of the reputable dealers, has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[5] Banking on customers' lack of knowledge, and using the nuances of coin

---

[4]  *See* David J. Gilberg, *Precious Metals Trading-The Last Frontier of Unregulated Investment*, 41 Wash. & Lee L. Rev. 943 (1984) (https://scholarlycommons.law.wlu.edu/wlulr/vol41/iss3/4) for an interesting overview of the precious metals' trading industry.

[5]  *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

collecting, grading, historical factors and mint populations, unethical coin dealers continue to confuse and confound the reasonable consumer with deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The complexities and unfamiliarity of the precious metals industry to the normal consumer provide fertile ground for fraudulent schemes such as those executed by Defendants and experienced to her great detriment by Mrs. Van Gundy in this case.[6]

19.     The ploys used by the Defendants have been condemned by the United States Senate and various Federal and State agencies and commissions. Nine years ago in 2014, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[7] Unfortunately, while federal and state regulators continue to aggressively pursue the worst actors in the industry, *"many other bad actors are able to continue their shady dealings with impunity."*[8] In other words, these coin fraud schemes have not abated, and dealers such as the Defendants continue to victimize unsuspecting, elderly customers such as Mrs. Van Gundy.

20.     The Federal Trade Commission has testified before the United States Senate that it had "*observed a proliferation of schemes targeting financially-distressed consumers. These schemes have included deceptive telemarketing operators posing as "brokers" and offering precious metals as purported high-profit, low-risk investments. By failing to disclose key information about the investments' terms*

---

[6]  *See* note 2, *supra*. In 2010, the FTC elaborated on the precious metal fraudulent schemes identical to those used by the defendants.  *See*  https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-precious-coins-and-bullion-disclosure-act/100923coinsbulliamact.pdf.

[7]  *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report"*)*.

[8]  US Senate Report at 3.

*and high costs, these brokers deceive consumers into believing that the investments provide a safe and secure vehicle for savings. Sadly, many Americans have lost their life savings to these unscrupulous operations*"[9] as has, unfortunately, Mrs. Van Gundy.

21.     The Commodities Futures Trade Commission and numerous States' Attorneys General have filed numerous actions attempting to curtail illegal over-charging for precious metal products.[10] The Texas Attorney General even established a relatively liberal bright-line that dealers' selling gold bullion at over 100% markup is fraudulent *per se*.[11] However, even though these Federal and State agencies have stepped up enforcement actions, *"many unscrupulous precious metal dealers are still able to cheat customers due to a lack of transparency within the industry and relatively little monitoring of their business practices."*[12]

22.     Government actors aside, the legitimate precious metals industry, comprised of professional numismatists, financial analysts, and reputable dealers, recognizes the creeping taint of fraudulent over-selling of precious metals. In 2019, the Professional Numismatists Guild[13] ("PNG"), issued warnings about grossly overpriced gold coins.[14] The PNG and the American Numismatic Association developed acceptable industry standards for selling and pricing of the various types of precious metal products. Industry associations have defined limits as to what constitutes a legitimate sales mark-up on precious metal coins to assist consumers to avoid the traps laid by

---

[9]  *See* https://www.ftc.gov/legal-library/browse/prepared-statement-federal-trade-commission-exploring-perils-precious-metals-market; and https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-precious-coins-and-bullion-disclosure-act/100923coinsbulliamact.pdf.

[10]  *See, e.g.*, http://metalsandbarrickcapitalreceivership.com/wp-content/uploads/2020/10/Complaint.pdf.

[11]  *See* the Texas Attorney General Gold Coins Fact Sheet Advisory, April 2017 https://www.texasattorneygeneral.gov/files/cpd/17084_gold-coins_factsheet.pdf.

[12]  US Senate Report at 3.

[13]  The Professional Numismatists Guild (PNG) is a highly regarded nonprofit organization composed of the country's top numismatic experts who adhere to a strict code of ethics in the buying and selling of numismatic items.  See www.pngdealers.org.

[14]  *See* https://www.numismaticnews.net/world-coins/beware-of-grossly-overpriced-gold-coins.

fraudsters. For example, the National Futures Association ("NFA") advices that gold bullion should not be purchased at more than 5-10% above spot price.[15]

**B.  The RICO Enterprises in this Case Prey Upon the Elderly.**

23.     The U.S. Senate Report revealed that the "*overwhelming number of victims in precious metal fraud are seniors*."[16] Likewise, the FBI found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it*" and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings*."[17] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[18] True to form, Defendants in this case targeted the elderly Mrs. Van Gundy.

**C.  The RICO Enterprises Use Misleading and False Marketing Claims.**

24.     Relying upon market complexity and lack of oversight of the precious metals industry to their benefit and to their unwitting customers' detriment, the Defendants practice a subterfuge upon naïve and unsuspecting customers. Defendants' operation of this telemarketing operation is for the sole purpose of selling collectible numismatic, semi-numismatic, and bullion coins[19]

---

[15] The NFA adopted the U.S. Commodities Futures Trade Commission's bright line limits. *See* https://www.nfa.futures.org/investors/investor-newsletters/January-2021.html.

[16] *See* US Senate Report at 16.

[17] *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer

[18] *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[19] In this context, the term "numismatic coin" refers to collectible coins whose value is based upon other qualities in addition to the metal content of the coin, such as appearance, population, grade, rarity, and other attributes.  "Semi-numismatic coin" refers to a coin whose value partially derives from its numismatic value and mainly from the value of its precious metal content.  "Bullion coins" derive their value almost entirely from the fair market value of the precious metal content, commonly referred to as the "spot value".

directly to customers over the telephone (and/or via the internet), and, in this case, re-obtaining coins ostensibly to sell "on consignment while, in reality, stealing those coins. Defendants and their agents/employees make many hundreds of intrastate and interstate sales calls per month — via the telephone — utilizing one or more of the following unlawful, false, misleading, and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry. These unscrupulous sales practices are specifically designed to prevent a consumer from making informed purchasing decisions:

a.  Claiming that the coins are "safe investments" but failing to disclose that the significant markup created a substantial loss of the customer's investment simultaneously with consummation of the purchase and that she would never recover because the coins, as well as bullion prices, would have to appreciate to historical highs that have never been realized just for her to break even;

**b.**  Representing that the coins possessed certain qualities and guaranteeing that the coin investments will substantially appreciate, with full knowledge that such representations are false and misleading;

**c.**  Falsely claiming that the Defendants possess expert knowledge, qualifications, and experience in precious metals when they do not;

**d.**  Falsely claiming that the Defendants have specialized financial investment knowledge and experience regarding the precious metals market when they do not;

**e.**  Convincing customers to purchase certain types of coins based upon representations that such coins appreciate in value more quickly than others, when, in fact, they do not;

**f.**  Offering a "money back guarantee" with no intention of ever honoring the guarantee;

**g.**  Shipping (and charging for) coins to customers without their permission or authority and then, when confronted with this, representing that the coins' purchase price was so low that the customers would lose money if they did not acquiesce and keep the coins;

**h.**  Representing to customers that the coins being offered will outperform other types of investments—without any specific underlying data or basis to support such assertions;

**i.**  Failing to follow client/customer directives as to the sale or purchase of coins;

**j.**  Offering to "resell" the client/customer's coin collection "on consignment" with no intent of reselling them but, instead, after receiving shipment of the coins, converting (stealing) the coins for their own use;

**k.** Falsely claiming that the COVID pandemic created a unique opportunity to sell or buy precious metals, without any data to support such claims;

**l.** "Baiting" customers with claims that there was an unusually high demand for the customer's coins in order to obtain the coins fraudulently;

**m.** "Baiting" customers with claims that the customers' coins were worth a great amount, then after receiving shipment of the coins for resale, switching their story and claiming that the coins are worth only a fraction of the amount previously represented;

**n.** Using grading and marketing ploys to deceptively sell bullion at a premium as some type of "modern numismatics," even though there are very large populations of the high-grade coins and/or the purported "grade certification" is commonly duplicated with minor expense;

**o.** Misrepresenting the value of numismatic coins by misapplying and mis-utilizing data from other numismatic coins that have significantly different attributes;

**p.** Misrepresenting attributes of precious metal coins to move the customer from purchasing bullion to over-priced numismatic and semi-numismatic coins;

**q.** Misrepresenting graded bullion coins as rare numismatics with unconscionably high markups through deceptive claims of value and investment potential that are false;

**r.** Advising customers to purchase precious metal coins with the representation that they could be sold at upcoming auctions for 200-300% return when such auctions were purely fictitious and the promised return was illusory;

**s.** Misrepresenting that the coins are "rare" or of limited population when the populations used are presented in such a way as to mislead or deceive customers in believing that "certified coins" will outperform other types of investments—without any specific underlying data supporting or basis to support such assertions;

**t.** Advising customers to purchase purportedly "unique" bullion coins, when, in fact, there is nothing unique about the coins;

**u.** Misleading customers to buy, sell or trade precious metal coins by representing that the increased value of such coins are "tax-free" and falsely advising that customer would avoid tax issues on the appreciation or rate of return earned;

**v.** Trading (or holding-for-trade) coins with the promise to sell such coins at a profit, when such inducement was merely intended to stall the customer, obfuscate the transactions, and delay the return of the coins or the purchase price;

**w.** Upon customers' inquiry as to the value of previously purchased coins, misrepresenting the market value of the coins to prevent or delay the customers from determining the actual market value of the coins;

**x.** Claiming a volatile precious metals market based upon the spot price of gold yet selling bullion coins at such exorbitant and fraudulent prices to make "market price" nothing but a gimmick;

**y.** Pressuring the customer into believing the need to purchase at a purported substantial discount was "immediate" and that the customer had to "act right away" to achieve large profits or else lose a good deal and/or that the coins are elusive and will soon become unavailable, thereby creating a false sense of urgency for the customer to consummate the sale;

**z.** Representing that Defendants would broker the sale of customers' coins for substantial profits at auctions, then claiming that the auctions were cancelled due to the COVID health pandemic, or some other fabricated reason, when no such auctions ever were even scheduled, much less cancelled;

**aa.** Misrepresenting that the customer enjoyed special pricing and early low prices when she actually paid significant, usurious mark-ups on the coins;

**bb.** Knowingly selling customers coins graded by less than reputable grading services which artificially inflated the values of the coins; and

**cc.** Various other acts and practices that may be uncovered during discovery.

25.     In this case, Defendants utilized, and continue to utilize, one or more of the following unlawful, false, misleading, and unconscionable sales and business tactics (which have been identified as fraudulent and prosecuted by various governmental entities[20]) as part of Defendants' daily on-going business model:

**a.** Using grading and marketing data to deceptively sell bullion at a premium as some type of "modern numismatics," even though there are very large populations of the high-grade coins and/or the so-called "certifications" are commonly duplicated with minor expense;

**b.** Misrepresenting the value of numismatic coins by utilizing data from other, similar numismatic coins that have significantly different attributes;

**c.** Misrepresenting attributes and "investment" potential of precious metal coins to nudge customers from common bullion to over-priced numismatic and semi-numismatic coins;

---

[20] *See California v Lear*, pages 7-9, https://docs.simpluris.com/websites/13abd9da-de42-4adb-8903-54649f9c5695/documents/fcc995e5-6132-42f9-8608-aea59c728a84/CA%20Complaint(11118433.2).pdf.

**d.** Misrepresenting that bullion is at risk of being "confiscated" by the government when there is no current law under which the government can recall gold nor any way to predict that any item is immune from a theoretical future recall;[21]

**e.** Misrepresenting that certain coins are "rare" and "valuable" and provide a "better" investment, when in truth such coins have limited numismatic and collectible value (if any) while at the same time ignoring the significant and immediate cost imposed on customers in the form of fraudulent pricing;

**f.** Misrepresenting to customers that "certified coins" will outperform other types of investments—without any specific underlying data supporting or basis to support such assertions;

**g.** Advising customers to purchase overpriced "unique" bullion coins, when, in fact, there is nothing unique about the coins;

**h.** Misleading customers to buy or trade for pre-1933 gold coins and representing that by making such purchases or trades the customer will avoid tax issues;

**i.** Trading or holding-for-trade coins with the promise to sell at a profit, when such inducement was merely intended to stall the customer, obfuscate the transactions, and delay the return of the coins or the purchase price;

**j.** Misrepresenting that they are seeing the market value of the precious metal coins purchased by the consumer increase substantially to confuse and prevent or delay customers from determining the actual market price of bullion coins;

**k.** Claiming a volatile market based upon the spot price of gold yet selling bullion coins at such exorbitant and fraudulent prices to make "market price" nothing but a gimmick;

**l.** Claiming guaranteed or substantially certain high returns on the contemplated investment in certain coins, when in truth there is no way to predict the future rate of return on precious metals;

**m.** Claiming that investments on numismatic and modern graded bullion coins are non-reportable or "tax-free" when in truth customers must ultimately pay taxes on capital gains, irrespective of the classification of the coins:

**n.** Pressuring the customer into believing the need to purchase at a purported substantial discount was "immediate" and that the customer had to "act right away" to achieve large profits or else lose a good deal;

---

[21] This ploy is based upon President Franklin Roosevelt's 1933 executive order, in which the government recalled most of the gold owned by private citizens but provided an exception for "rare and unusual coins." https://www.presidency.ucsb.edu/documents/executive-order-6102-requiring-gold-coin-gold-bullion-and-gold-certificates-be-delivered.  Historically criticized, it was repealed in 1974 by President Gerald Ford.  *See* https://www.cmi-gold-silver.com/gold-confiscation-1933/.

**o.** Misrepresenting that customers would realize unusually high rates of return on investment due to numerous market conditions;

**p.** Advising customers to purchase precious metal coins with the representation that they could be sold at upcoming auctions for 200-300% return when such auctions were purely fictitious and the promised return was illusory;

**q.** Representing that Defendants would broker the sale of customers' coins for substantial profits at auctions, then claiming that the auctions were cancelled due to the COVID health pandemic, or some other fabricated reason, when no such auctions ever were even scheduled, much less cancelled;

**r.** Trading certain coins for other coins with representations that the consumer has thereby attained a better investment position, when, in fact, the consumer experiences even further losses; and

**s.** Various other acts and practices that may be uncovered during discovery.

26.    Defendants' repeated misrepresentations and sales of over-priced coins to Mrs. Van Gundy are neither isolated incidents nor unique to his interactions and experiences with Defendants. Rather, utilizing these fraudulent tactics, these Defendants have sold millions of dollars of over-priced coins to thousands of other customers for over four years, and continue to do so, indicating a continuous open-ended scheme and pattern of fraudulent conduct by Defendants.

**D.  The RICO Enterprises' First Scheme to Ensnare the Plaintiff**

27.    Plaintiff, Beverly Van Gundy is an elderly, 80-year-old widow whom Defendants convinced to invest a substantial portion of her life savings in gold and silver coins. In June 2017, Mrs. Van Gundy saw an advertisement of Defendants offering newly minted gold coins for sale at "low prices."  When she admitted to Defendants that she knew very little about precious metals and numismatics, the Defendants recommended that she would earn more by investing in Benjamin Franklin Half-dollars which they would sell her at "dealers' cost." Mrs. Van Gundy was intrigued by Defendants' sales pitch and succumbed to purchasing and investing in the Ben Franklin Half-dollars.  From that point forward, Mrs. Van Gundy began to receive a constant

barrage of phone calls from Christian Antonelli and Jason Sullivan who double-teamed Mrs. Van Gundy and "pitched" Mrs. Van Gundy to purchase various "fantastic, rare and valuable coins" that they represented to be of significant investment value and that they represented she was getting at "dealers' cost." These included historical common date coins[22], numismatic coins, and "graded modern bullion"[23] that Antonelli and Sullivan claimed were a sound investment. They further represented to Mrs. Van Gundy that she was getting "great deals," that the coins would retain their value, that the coins were unique and/or rare, that she needed to take immediate advantage of the opportunity and that any delay would result in her losing the opportunity to purchase and own a valuable coin. In reality, Defendants failed to (and made sure not to) advise Mrs. Van Gundy that (1) she was paying substantially more than the fair market prices for the coins and (2) that she was incurring immediate and substantial losses with each transaction, ultimately draining her life savings.

**28.**     Through fifty-seven (57) separate interstate transactions over this 4-year period, between June 30, 2017 through July 8, 2021, Antonelli and Sullivan developed and cultivated both a personal and a professional relationship with Plaintiff and convinced her to purchase numerous numismatic, semi-numismatic and bullion coins as investments from Atlas Coins and Tri-State Assets. Through misrepresentation and fraud, Defendants, through Antonelli and Sullivan induced and cajoled Mrs. Van Gundy to purchase various precious metal coins as investments. These funds

---

[22] Common date means coins of a particular mintage issue that is readily available and has little numismatic value.

[23] Numismatic coins are graded on a numerical system, commonly referred to as the *Sheldon scale* that ranges between 1 and 70.  The numerical grade is assigned based on a number of attributes, such as luster (i.e. shininess), strike (i.e. how well the mint connected with the blank coin in manufacturing), and color (i.e. the dye variations used in striking the coin). The most valuable coins are uncirculated coins, commonly referred to as mint state (MS) and designated with grades from 60 to 70.  Thus, a coin with a grade MS-70 is a perfect coin in original, uncirculated condition and the highest grade for coins minted for general circulation. The grades are assigned for a nominal fee by independent grading services. The industry considers the premier professional grading services to be Numismatic Guaranty Corporation (NGC) and Professional Coin Grading Services (PCGS).

used to purchase the coins were transferred from California to New York by wire or credit card. The coins were shipped from Defendants' place of business in New York to Mrs. Van Gundy in California through interstate carrier or the United States Postal Service.  This series of purchases was based upon the various high pressure and fraudulent sales tactics outlined and described above and Antonelli's and Sullivan's representations that Mrs. Van Gundy would realize a substantial return on her investment, that the coins purchased were a safe investment and that she was paying fair market value for her coins. As demonstrated below, Antonelli's and Sullivan's representations were false, and the coins sales to Mrs. Van Gundy were based on deception and fraud; to wit:

28.1    On 6/30/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase two rolls of Benjamin Franklin 50¢ Gem Proof for $800.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $480.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $320.00. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

28.2    On 7/15/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase five (5) common date[24] $5 Gold Liberty Half-Eagle MS63 for $4,775.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $2,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,275.00. This represents a markup of 91%, an amount that is fraudulent and unconscionable.

28.3    On 8/6/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase five (5) rolls of 1965 Washington Quarter in Proof state for $575.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $100.00, resulting in an immediate and unconscionable monetary loss to

---

[24]  Common date is a term used to refer to numismatic coins that are less rare and very affordable because they are more available within a series and have a higher surviving number. They can be quite affordable, even those preserved in brilliant uncirculated, mint state grades.

Plaintiff of $475.00. This represents a markup of 475%, an amount that is fraudulent and unconscionable.

**28.4** On 8/28/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1907 $20 Saint Gaudens Prospector PCGS for $1,900.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**28.5** On 8/28/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1908 $20 Saint Gaudens Prospector PCGS for $1,900.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**28.6** On 8/28/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1920 $20 Saint Gaudens Prospector PCGS for $1,900.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**28.7** On 9/12/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1922 Silver Peace Dollar - Brilliant Uncirculated for $387.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $180.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $207.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**28.8** On 9/12/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1923 Silver Peace Dollar - Brilliant Uncirculated for $301.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $140.00, resulting in an immediate and unconscionable monetary loss to Plaintiff

of $161.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**28.9**   On 9/12/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1924 Silver Peace Dollar - Brilliant Uncirculated for $43.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $20.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $23.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**28.10**   On 9/12/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1925 Silver Peace Dollar - Brilliant Uncirculated for $129.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $60.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $69.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**28.11**   On 10/2/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase twenty rolls of common date Silver Peace Dollars - Brilliant Uncirculated for $860.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $460.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**28.12**   On 10/13/2017, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase three (3) rolls of Benjamin Franklin Gem Proof coins for $1,785.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $480.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,305.00. This represents a markup of 272%, an amount that is fraudulent and unconscionable.

**28.13**   On 1/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a roll of JFK Gem Proof coins for $375.00 as a sound and safe investment. The fair market value of these coin as of the date of purchase was just $160.00,

resulting in an immediate and unconscionable monetary loss to Plaintiff of $215.00. This represents a markup of 134%, an amount that is fraudulent and unconscionable.

**28.14** On 3/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1904 $2.50 Gold American Quarter-Eagle MS63 for $695.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**28.15** On 3/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1905 $2.50 Gold American Quarter-Eagle MS63 for $695.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**28.16** On 3/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1905 $2.50 Gold American Quarter-Eagle MS63 for $695.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**28.17** On 3/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1906 $2.50 Gold American Quarter-Eagle MS63 for $695.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**28.18** On 3/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1907 $2.50 Gold American Quarter-Eagle MS63 for $695.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff

of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**28.19**   On 3/22/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase three (30 1893 $10 Gold American Eagle MS63 for $3,450.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $2,250.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,200.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**28.20**   On 3/22/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1899 $10 Gold American Eagle MS63 for $1,150.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $750.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $400.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**28.21**   On 3/22/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1907 $10 Gold American Eagle MS63 for $1,150.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $750.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $400.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**28.22**   On 4/5/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1924 Silver Peace Dollar NGC MS67 for $5,400.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,280.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,120.00. This represents a markup of 137%, an amount that is fraudulent and unconscionable.

**28.23**   On 4/12/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1923 Silver Peace Dollar NGC MS67 for $3,850.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,800.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

$2,050.00. This represents a markup of 114%, an amount that is fraudulent and unconscionable.

**28.24** On 4/26/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1922 Silver Peace Dollar MS66+ CAC for $3,450.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,045.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,405.00. This represents a markup of 230%, an amount that is fraudulent and unconscionable.

**28.25** On 4/26/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1925 Silver Peace Dollar MS66+ CAC for $1,795.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $880.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $915.00. This represents a markup of 104%, an amount that is fraudulent and unconscionable.

**28.26** On 5/8/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1927-S Silver Peace Dollar MS64+ CAC for $2,850.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,528.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,322.00. This represents a markup of 87%, an amount that is fraudulent and unconscionable.

**28.27** On 6/6/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1928-S Silver Peace Dollar MS64+ CAC for $3,240.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $823.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,417.00. This represents a markup of 294%, an amount that is fraudulent and unconscionable.

**28.28** On 6/20/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1912 $5.00 Indian Head MS64+ CAC for $7,150.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

24

$5,150.00. This represents a markup of 258%, an amount that is fraudulent and unconscionable.

**28.29**   On 6/28/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1910 $5.00 Indian Head MS64+ for $4,750.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,750.00. This represents a markup of 138%, an amount that is fraudulent and unconscionable.

**28.30**   On 7/20/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1909-D $5.00 Indian Head MS64+ for $3,850.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,850.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**28.31**   On 8/2/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1914-D $5.00 Indian Head PCGS MS64+ CAC for $11,950.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $9,450.00. This represents a markup of 378%, an amount that is fraudulent and unconscionable.

**28.32**   On 8/28/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1941-S Walking Liberty Half Dollar MS67 for $18,200.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $7,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,700.00. This represents a markup of 143%, an amount that is fraudulent and unconscionable.

**28.33**   On 10/10/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase an 1897 $20.00 Liberty Double Eagle Prospector Series PCGS for $3,600.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary

loss to Plaintiff of $1,600.00. This represents a markup of 80%, an amount that is fraudulent and unconscionable.

**28.34**  On 12/5/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase twenty-five (25) rolls of JFK Gem Proof coins for $14,875.00 as a sound and safe investment. The fair market value of these coins as of the date of purchase was just $4,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,875.00. This represents a markup of 272%, an amount that is fraudulent and unconscionable.

**28.35**  On 12/18/2018, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase an 1881 Morgan Silver Dollar MS65 DPL for $12,250.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $11,750.00. This represents a markup of 2,350%, an amount that is fraudulent and unconscionable.

**28.36**  On 1/23/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1922-D Silver Peace Dollar MS67 for $18,500.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $8,400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,100.00. This represents a markup of 120%, an amount that is fraudulent and unconscionable.

**28.37**  On 3/18/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to exchange coins she had previously purchased from Defendants for $75,000.00 for five coins:

  **(a)** 1945 Walking Liberty MS67 CAC (FMV = $690.00);

  **(b)** 1945-D Walking Liberty MS67+ CAC (FMV = $2,233.00);

  **(c)** 1945-S Walking Liberty MS66+ CAC (FMV = $384.00);

  **(d)** 1880-O Morgan Silver Dollar MS64+ CAC (FMV = 2,640.00);

  **(e)** 1885-O Morgan Silver Dollar MS67+ CAC (FMV = $1,560.00.

26

As a result, Plaintiff traded $75,000.00 for coins with a total fair market value of $7,507.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $67,493.00. This represents a markup of 900%, an amount that is fraudulent and unconscionable.

28.38   On 5/22/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase an 1887-S Morgan Silver Dollar MS65+ CAC for $5,150.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,650.00. This represents a markup of 243%, an amount that is fraudulent and unconscionable.

28.39   On 6/13/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1921 Morgan Silver Dollar MS66+ CAC for $3,420.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,080.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,340.00. This represents a markup of 217%, an amount that is fraudulent and unconscionable.

28.40   On 6/27/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1937-S Walking Liberty Half Dollar MS66+ CAC for $2,995.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $630.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,365.00. This represents a markup of 375%, an amount that is fraudulent and unconscionable.

28.41   On 7/24/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1921-D Morgan Silver Dollar MS66+ CAC for $5,125.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,880.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,245.00. This represents a markup of 78%, an amount that is fraudulent and unconscionable.

28.42   On 8/7/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1879-S $20.00 Saint Gaudens Prospector BU PCGS for $4,400.00 as a sound and safe investment. The fair market value of this coin as of the date

of purchase was just $1,950.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,450.00. This represents a markup of 126%, an amount that is fraudulent and unconscionable.

**28.43**   On 9/9/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a roll of 1964 JFK Half-Dollars Gem Brilliant Uncirculated for $5,500.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $375.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $5,125.00. This represents a markup of 1,367%, an amount that is fraudulent and unconscionable.

**28.44**   On 9/24/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1941 Walking Liberty Half Dollar MS67+ CAC for $2,900.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $660.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,240.00. This represents a markup of 339%, an amount that is fraudulent and unconscionable.

**28.45**   On 10/18/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1943 Walking Liberty MS67+ CAC for $2,206.67 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $960.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,246.67. This represents a markup of 130%, an amount that is fraudulent and unconscionable.

**28.46**   On 10/18/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1943-D Walking Liberty MS67+ CAC for $2,206.67 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $886.67. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

**28.47**   On 10/18/2019, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1943-S Walking Liberty MS66+ CAC for $2,206.67 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just

$1,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $886.67. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

**28.48**   On 1/6/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 2019-S Silver American Eagle Enhanced Reverse PR70 for $400.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $125.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $275.00. This represents a markup of 220%, an amount that is fraudulent and unconscionable.

**28.49** On 1/6/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1944 Walking Liberty MS67 CAC for $1,725.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $720.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,005.00. This represents a markup of 140%, an amount that is fraudulent and unconscionable.

**28.50**   On 1/6/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1944-D Walking Liberty MS67+ CAC for $8,700.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,170.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,530.00. This represents a markup of 644%, an amount that is fraudulent and unconscionable.

**28.51**   On 1/23/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1946-D Walking Liberty MS67+ for $5,250.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,680.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,570.00. This represents a markup of 213%, an amount that is fraudulent and unconscionable.

**28.52**   On 2/3/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1918-S Walking Liberty Half Dollar MS64+ CAC for $5,590.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,280.00, resulting in an immediate and unconscionable monetary loss to

Plaintiff of $3,310.00. This represents a markup of 146%, an amount that is fraudulent and unconscionable.

**28.53**   On 3/16/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1853 $20.00 Liberty Gold Double Eagle Prospector BU for $5,950.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,350.00. This represents a markup of 129%, an amount that is fraudulent and unconscionable.

**28.54**   On 3/20/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1836 $5.00 Classic Head S.S. Central America PCGS F15 for $4,150.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $528.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,622.00. This represents a markup of 686%, an amount that is fraudulent and unconscionable.

**28.55**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1880 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.56**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1882 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.57**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1893 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

$249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.58**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1894 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.59**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1885 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.60**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1897 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.61**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1900 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.62**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1907 $5.00 Liberty Gold Half Eagle for $1,498.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

$498.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.63**   On 4/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1908 $5.00 Liberty Gold Half Eagle for $749.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.64**   On 4/24/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1877-S $20.00 Gold Prospector Series PCGS for $4,200.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,990.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,210.00. This represents a markup of 111%, an amount that is fraudulent and unconscionable.

**28.65**   On 5/1/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1883 Morgan Silver Dollar (Gold River) MS67+ CAC for $7,990.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $3,960.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $4,030.00. This represents a markup of 102%, an amount that is fraudulent and unconscionable.

**28.66**   On 5/15/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1885-O Morgan Silver Dollar Certified MS67+ CAC for $6,100.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,580.00. This represents a markup of 142%, an amount that is fraudulent and unconscionable.

**28.67**   On 5/26/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 2009 $20.00 Ultra High Relief Saint Gaudens for $2,995.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,998.00, resulting in an immediate and unconscionable monetary loss to

Plaintiff of $997.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**28.68**   On 6/12/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1928 $1.00 Silver Peace Dollar MS65+ CAC for $9,250.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $4,080.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $5,170.00. This represents a markup of 127%, an amount that is fraudulent and unconscionable.

**28.69**   On 6/12/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1938 Walking Liberty Half Dollar PF68 for $7,200.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $3,840.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,360.00. This represents a markup of 88%, an amount that is fraudulent and unconscionable.

**28.70**   On 6/24/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1842-O $2.50 Liberty Gold Quarter Eagle for $7,740.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $6,240.00. This represents a markup of 416%, an amount that is fraudulent and unconscionable.

**28.71**   On 7/7/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1942-S Walking Liberty Half Dollar MS-67 for $14,950.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $6,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $8,350.00. This represents a markup of 127%, an amount that is fraudulent and unconscionable.

**28.72**   On 7/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1942 Walking Liberty Half Dollar (Ken Bressett) PF68 for $2,900.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $1,380.00, resulting in an immediate and unconscionable monetary

loss to Plaintiff of $1,520.00. This represents a markup of 110%, an amount that is fraudulent and unconscionable.

**28.73**   On 7/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1947-D Walking Liberty Half Dollar (Ken Bressett) MS-67 for $2,350.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $810.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,540.00. This represents a markup of 190%, an amount that is fraudulent and unconscionable.

**28.74**   On 7/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1946 Walking Liberty Half Dollar MS-67 for $1,700.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $780.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $920.00. This represents a markup of 118%, an amount that is fraudulent and unconscionable.

**28.75**   On 7/14/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1946-D Walking Liberty Half Dollar MS-67 for $1,300.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $552.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $748.00. This represents a markup of 136%, an amount that is fraudulent and unconscionable.

**28.76**   On 7/24/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1936-S $.50 Oregon Trail MS-68 for $4,800.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,220.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,580.00. This represents a markup of 116%, an amount that is fraudulent and unconscionable.

**28.77**   On 8/5/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1911-D $5.00 Indian Gold Half Eagle MS-60 for $6,475.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $4,080.00, resulting in an immediate and unconscionable monetary loss to

Plaintiff of $2,395.00. This represents a markup of 59%, an amount that is fraudulent and unconscionable.

**28.78**    On 8/13/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1917-D OBT $.50 Walking Liberty PCGS MS65 for $8,000.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $4,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,680.00. This represents a markup of 85%, an amount that is fraudulent and unconscionable.

**28.79**    On 8/13/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1917 $.50 Walking Liberty NGC MS65 for $1,155.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $555.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**28.80**    On 8/13/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1935 OGH $.50 Walking Liberty PCGS MS65 for $335.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $174.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $161.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**28.81**    On 8/25/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1995 $10.00 Gold American Eagle MS70 for $11,500.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $3,840.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,660.00. This represents a markup of 200%, an amount that is fraudulent and unconscionable.

**28.82**    On 8/25/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1911-D $10.00 Indian Head MS61 for $17,500.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $5,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

$11,980.00. This represents a markup of 217%, an amount that is fraudulent and unconscionable.

**28.83**   On 8/25/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1900-S $5.00 Liberty Gold Half-Eagle MS65 for $11,600.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $6,900.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $4,700.00. This represents a markup of 68%, an amount that is fraudulent and unconscionable.

**28.84**   On 9/15/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1869 $1.00 Liberty Seated PF-66 for $22,500.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $12,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $9,900.00. This represents a markup of 79%, an amount that is fraudulent and unconscionable.

**28.85**   On 10/6/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1916-D $.50 Walking Liberty (P) MS66 for $4,850.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,330.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**28.86**   On 10/20/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1908 Barber Quarter PR-68 for $7,975.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $4,200.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,775.00. This represents a markup of 90%, an amount that is fraudulent and unconscionable.

**28.87**   On 11/10/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1881 3CN PF68 Cameo for $7,000.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $3,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of

$4,000.00. This represents a markup of 133%, an amount that is fraudulent and unconscionable.

**28.88**   On 11/25/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1911-D $.50 Barber MS67 for $18,000.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $10,200.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,800.00. This represents a markup of 76%, an amount that is fraudulent and unconscionable.

**28.89**   On 12/2/2020, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1937-D $.50 Walker NGC MS67+ CAC (Certified) for $10,200.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $7,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,200.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**28.90**   On 7/8/2021, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 2021 Magnum Opus ASE T2 MS70 E.R. 20-Coin Dealer Tray for $3,825.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,825.00. This represents a markup of 91%, an amount that is fraudulent and unconscionable.

**28.91**   On 1/27/2021, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase a 1870 $.05 NGC PF67 Cameo (Certified) for $5,200.00 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $2,760.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,440.00. This represents a markup of 88%, an amount that is fraudulent and unconscionable.

**29.**   Overall, Defendants convinced Plaintiff through misrepresentations as to value and quality to purchase precious coins for a total of $500,660.19 as a sound and safe investment. The fair market value of this coin as of the date of purchase was just $189,655.00, resulting in an immediate

and unconscionable monetary loss to Plaintiff of $311,005.19. This represents an overall markup of 164%, with some markups over 2,000%, amounts that are fraudulent and unconscionable.  The above-listed coins were not worth the prices Van Gundy paid for them when they were purchased, and they have not attained such value to date nor provided the safe-haven or will ever produce a return on investment as claimed by Defendants.

**E.  The RICO Enterprises' Second Scheme to Ensnare the Plaintiff**

**30.**    After exhausting Van Gundy's life-savings by selling her coins at obscenely inflated prices, Defendants teed up their phase two of their scam by brazenly stealing back the coins they had already sold to Mrs. Van Gundy, along with coins she had purchased from other dealers.  In the fall of 2021, during the height of the COVID pandemic, Defendant Antonelli advised Mrs. Van Gundy over the telephone that it was the *"perfect time to sell, as coins would be at a record high.*" Unaware that she was being flimflammed, Mrs. Van Gundy naturally was interested in realizing a gain on her investment, so, at his request, Mrs. Van Gundy sent Antonelli a list of some 1,684 coins she had collected over the last several years at a total cost of $834,792.72. After Antonelli reviewed the list, he telephoned to advise her that he could immediately sell the coins on her behalf at a substantial profit and even promised a "good faith advance" if she would agree to the consignment.  Still unsuspecting, Mrs. Van Gundy agreed, and the Defendants sent her shipping boxes with labels, and she shipped the coins to the Defendants in New York. Antonelli called Mrs. Van Gundy about a week or two after he received the coins and represented that she would receive "in her pocket" at least $1.1 million for her collection after all commissions and auction fees.  Antonelli's representation, if true, meant that Mrs. Van Gundy would realize an overall return on her investment of over 33% (~$265,208.00). Based upon this representation, Mrs. Van Gundy gave Antonelli and the Defendants her consent to sell the coins on consignment.  When

Mrs. Van Gundy asked how confident Antonelli was in his ability to sell the coins for an amount that would net her $1.1 million, Antonelli assured her that he had "run the numbers" three times and that this $1.1 million figure was a "low estimate."   In fact, Antonelli bragged to Mrs. Van Gundy that he had already sent her coin list to various auction houses and that the auction houses were "fighting over" her coins.  Antonelli also promised to contact Mrs. Van Gundy and let her know the highest bid so she could decide if the price was acceptable.

31.     Furthering the fraudulent scam, Antonelli indicated via telephone call to Mrs. Van Gundy that he would send her an advance of $231,915.00, plus a consignment contract that outlined the terms of the coin sales and commissions.  At Mrs. Van Gundy's request, he immediately sent her $20,000.00 to cover the expense for a planned vacation.  On October 14, 2021, Antonelli sent Mrs. Van Gundy the balance of the "advance" ($211,915.00), but he conveniently failed to include the promised contract. When Mrs. Van Gundy reminded Antonelli of his "oversight," he claimed to have forgotten but offered to email the contract to Mrs. Van Gundy.  He never did.

32.     Once the Defendants obtained possession of Mrs. Van Gundy's coins and sent her the "advance," they began to ignore her repeated calls about her coins. Indeed, it took almost six (6) months before the Defendants finally responded to her calls.  When Antonelli finally answered one of her calls, he informed Mrs. Van Gundy that he decided not to sell her coins at auction. Without her consent or knowledge, he explained that he had decided to go a "different way," but he failed to explain what he meant by a "different way."  He did indicate to Mrs. Van Gundy that contrary to his overblown, optimistic enticing representations, he only got "melt value" (spot value less processing costs) for her Gold Indian Head coins (less than 20 coins). When Antonelli did not elaborate on the status of the other 1600+ coins, Mrs. Van Gundy finally had

reason to suspect that she had been taken, she demanded a full accounting.  Antonelli promised her an accounting, but has not provided an accounting as of the date of filing this complaint.

**33.**   Subsequently, Antonelli admitted to Mrs. Van Gundy that Defendants via telephone conversation that Defendants had not sold all the coins and agreed to either sell her remaining coins, which he represented were worth about $250,000.00, rather than the $1 million-plus estimate by which he had convinced Mrs. Van Gundy to ship the coins to Defendants, or else to ship the remaining coins back to her.  Mrs. Van Gundy was shocked and told him to immediately return the remaining coins.  Defendants shipped the remaining coins back to Mrs. Van Gundy. Upon receipt, Van Gundy was dumbfounded to discover that that the shipment from Defendants consisted of just eight (8) coins which only had a value of approximately $12,570.00. In sum, Mrs. Van Gundy shipped the Defendants coins for which she had paid $834,792.72, and in return she received the "advance" of $231,915.00 plus the eight (8) coins valued at $12,570.00.   The Defendants' multi-layered scam robbed the elderly, widowed Mrs. Van Gundy of $590,307.72 of her life savings.  As the FBI earlier had warned, the Defendants' scam apparently worked "*because [Mrs. Van Gundy is] elderly and [the dealers] thought [they] could get away with it.*"[25]

**34.**   As a direct and/or proximate result of Defendants' above-described and detailed wrongful acts and practices, Plaintiff has suffered (and continues to suffer) substantial economic damages, which Defendants refuse to remedy.  This case has resulted.

---

[25] *See* footnote 17, *supra*.

## CLAIMS FOR RELIEF

### COUNT I

**DEFENDANTS ANTONELLI AND SULLIVAN
A PATTERN OF UNLAWFUL ACTIVITY UNDER 18 U.S.C. § 1961 *ET SEQ.*:
MAIL FRAUD AND WIRE FRAUD**

**35.**    The preceding factual statements and allegations are incorporated by reference.

**36.**    By engaging in the above-described open-ended scheme to defraud Plaintiff—a scheme also part of the consistent, regular and dominant part of the manner in which Defendants  Antonelli and  Sullivan participated in and conducted the day-to-day business affairs of Atlas Coins and Tri-State Assets—Defendants instigated, perpetrated and executed a scheme to defraud Plaintiff, to wit: Antonelli and Sullivan engaged in repeated and systematic mail fraud and wire fraud, as described above, in violation of 18 U.S.C. §§ 1341 and 1343 that generated multiple and repeated unlawful coin sales to Plaintiff, as described above, that in turn generated exorbitant compensation for them. Antonelli and Sullivan caused Atlas Coins and Tri-State Assets to use the interstate mails and wires to repeatedly make and/or send fraudulent solicitations, sales receipts and/or purchase confirmations to Plaintiff for the above-described coin transactions over a four-year period.  As such,  Antonelli and  Sullivan conducted and/or participated in the business and financial affairs of Atlas Coins and Tri-State Assets (the RICO Enterprises) through a pattern of racketeering activity, to wit: repeated and systematic mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, as described above, that generated multiple and repeated unlawful coin sales to Plaintiff that, in turn, generated exorbitant compensation for them. Antonelli and Sullivan committed these substantive RICO offenses, all the while knowing about, and agreeing to, the overall objective of the fraud—generating exorbitant compensation for themselves. By their unlawful actions, therefore, they conducted and/or participated in the affairs of Atlas Coins and

Tri-State Assets in violation of 18 U.S.C. § 1962(c) and/or conspired with others,  the identities of whom are only known by them at this stage in the litigation, to violate 18 U.S.C. §§ 1962(b) and 1962(c) in violation of 18 U.S.C. §1962(d), and defrauded Plaintiff, and other customers of the RICO Enterprises, in the process.

37.     Defendants Antonelli and Sullivan caused Atlas Coins and Tri-State Assets to engage in this fraudulent scheme with the intent, *inter alia*, to (i) shift the burden of proof to Plaintiff knowing she does not have unlimited resources (especially in light of their stealing her life savings) and (ii) generate exorbitant compensation for themselves.  The wrongful actions and fraudulent scheme of Defendants   Antonelli and   Sullivan constitute mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.

*Continuity of the Pattern:*

38.     The multiple, repeated and continuous acts of mail fraud and/or wire fraud described in Paragraphs 17-34 above constitute a pattern of unlawful activity under 18 U.S.C. § 1961(1); (5). Nothing about defendants' schemes to defraud Plaintiff indicated, or now indicate, that the schemes would ever terminate.  Moreover, and independent of the duration of the schemes, their wrongful acts were a consistent, regular, and dominant part of the manner in which they participated and conducted the day-to-day business and financial affairs of Atlas Coins and Tri-State Assets.

39.     Upon information and belief, the RICO persons have run the coin investment and consignment sales schemes for at least eight years, and their conduct has at all times manifested an unmistakable nexus between predicate RICO offenses such as mail fraud and wire fraud and a clear threat of continuing activity, and indeed their activity is ongoing. Since that time Defendants

have perpetrated their frauds in interstate commerce upon hundreds if not thousands of unsuspecting victims.

40.     On information and belief Defendants continue to engage in the same deceptive and fraudulent practices with other victims unto the present moment.  Defendants' predicate acts of fraud amount to a regular way of conducting their ongoing business and pose a specific threat of repetition extending indefinitely into the future.

**COUNT II**
**DEFENDANTS ANTONELLI AND SULLIVAN**
**VIOLATION OF 18 U.S.C. § 1962(c)**

41.     The preceding factual statements and allegations are incorporated by reference.

42.     Atlas and Tri-State are each an "enterprise" engaged in, and the activities of which affected, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4); 1962(c) and 1962(d).

43.     Defendants Antonelli and Sullivan are "persons" within the meaning of 18 U.S.C. §§ 1961(3); 1962(c); 1962(d).

44.     Antonelli and Sullivan conducted and/or participated in the business and financial affairs of Atlas and Tri-State through patterns of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(B); 1961(5); 1962(c); to wit, the multiple, repeated, and continuous acts of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 2; 1341 and 1343, as set forth above.

45.     Antonelli's and Sullivan's patterns of unlawful activity and corresponding violations of 18 U.S.C. § 1962(c) (*see* paragraphs 17-34 above) proximately and/or directly caused Plaintiff to suffer injury to her business and/or property within the meaning of 18 U.S.C. § 1964(c), to wit: Plaintiff was damaged by, *inter alia*, the fraudulent and inflated prices she paid for the above-described coins, consequential damages related to the funds she used to purchase the coins, and the loss of the coins Antonelli and Sullivan fraudulently convinced her to ship to Defendants for

the sham "consignment sale, as well as the corresponding mental anguish she suffers. Antonelli and Sullivan committed these substantive RICO offenses by using Atlas and Tri-State to engage in multiple predicate acts of mail fraud and wire fraud, all the while knowing about, and agreeing to, the overall objective of the mail fraud—generating exorbitant compensation for themselves. They knew their tactics and marketing practices were misleading and unlawful and would cause Plaintiff to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

**COUNT III**
**DEFENDANTS ANTONELLI AND SULLIVAN**
**VIOLATION OF 18 U.S.C. § 1962(d) BY**
**<u>CONSPIRACY TO VIOLATE 18 U.S.C. § 1962(c)</u>**

**46.**     The preceding factual statements and allegations are incorporated by reference.

**47.**     Atlas and Tri-State are considered "enterprises" that were engaged in, and the activities of which affected, interstate commerce within the meaning of 18 U.S.C. §§ 1961(4), 1962(c), and 1962(d).

**48.**     Defendants Antonelli and Sullivan are "persons" within the meaning of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d).

**49.**     Defendants Antonelli and Sullivan conspired between themselves and with other persons, the identities of whom are only known by them at this stage in the litigation, within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c); that is, they conspired to conduct and/or participate in the business and financial affairs of Atlas and Tri-State (the RICO Enterprises) through a pattern of unlawful activity within the meaning of 18 U.S.C. §§ 1961(1)(c), 1961(5), and 1962(c), to wit: the multiple, repeated and continuous acts of mail fraud and wire fraud, in violation of 18 U.S.C. §§ 2, 1341 and 1343 as set forth above.

50.     Antonelli's and Sullivan's pattern of unlawful activity and corresponding violations of 18 U.S.C. § 1962(d) proximately and/or directly caused plaintiff to suffer injury to her business and/or property within the meaning of 18 U.S.C. § 1964(c), to wit: Plaintiff was damaged by, *inter alia,* the fraudulent and inflated prices she paid for the above-described coins, consequential damages related to the funds she used to purchase the coins, and the loss of the coins Antonelli and Sullivan fraudulently convinced here to ship to Defendants for the sham "consignment sale, as well as the corresponding mental anguish she suffers. Antonelli and Sullivan agreed to commit these substantive RICO offenses by using Atlas and Tri-State to engage in multiple predicate acts of mail fraud and wire fraud, all the while knowing about, and agreeing to, the overall objective of the mail fraud—generating exorbitant compensation for themselves. They knew their tactics and marketing practices were misleading and unlawful and would cause Plaintiff to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their patterns of unlawful activity.

### COUNT IV
### FRAUD AND/OR FRAUDULENT CONCEALMENT

51.     The preceding factual statements and allegations are incorporated by reference.

52.     In order to sell the fraudulently overvalued coins to Plaintiff, Defendants utilized one or more of the above-described unlawful, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry. Specifically, Defendants, and specifically Antonelli and Sullivan, and their employees falsely and/or misleadingly represented to Plaintiff that she was a "preferred customer," Plaintiff "needed the coins," Plaintiff was "getting a good deal" and Plaintiff "would not lose any money" on the purchases (or other, similar representations). Defendants and their employees also falsely represented the current value of the coins with full knowledge that the coins were not worth the value at which they were purchased

nor will the coins attain the return of investment as promised. Defendants further misrepresented that they would: sell Plaintiff's coins "on consignment" for $1.1 million net to Plaintiff, that they would provide Plaintiff an accounting, that they would return Plaintiff's coins, and other misrepresentations more fully described in detail above.

53.     Defendants made the above false representations to Plaintiff with the intent that she rely upon them and with full knowledge that such representations were false when made.  Plaintiff reasonably relied on Defendants' above material and false representations when deciding to purchase the grossly overvalued coins which, in fact, she purchased to her financial detriment and defendants' financial gain and to ship Defendants her coins for sale on consignment  As a direct and/or proximate result of Defendants' false and misleading representations about the overvalued coins and the "consignment sale," Plaintiff suffered (and continues to suffer) damages in the form of, *inter alia,* the amounts paid to Defendants for the coins in excess of their value, the loss of the "for consignment" coins retained/stolen by Defendants, consequential damages related to the funds she used to purchase the coins and mental anguish damages.

54.     Defendants also intentionally concealed their wrongful actions until a significant amount of the damage to Plaintiff was a *fait accompli*. All the above facts were material to Plaintiff's decision to purchase coins from Defendants and to reasonably trust them to sell her coins on consignment

55.     By virtue of the confidential business relationship between Plaintiff and Defendants, Defendants had a duty to disclose the above-described concealed material facts to Plaintiff. Defendants' deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, is the equivalent of false representations and/or

omissions. Such false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of Plaintiff's rights and interests.

56.     Plaintiff justifiably relied on Defendants' false representations and/or omissions to her financial detriment by purchasing the grossly overvalued coins and shipping her coins to Defendants to sell on consignment.  Plaintiff suffered damages as a result of such reliance. Defendants' wrongful actions constitute fraud at New York common law.

57.     Defendants concealed their wrongful actions with the intent to mislead and defraud Plaintiff. Plaintiff was not aware of, nor through the exercise of due diligence could she have become aware of, Defendants' wrongful actions until such wrongful actions were committed and brought to light by third parties. Due to the parties' confidential business relationships, which were predicated on their mutual trust and confidence, and defendants' superior knowledge and/or means of knowledge, Defendants had a duty to disclose to Plaintiff the above-described materially false information.  Plaintiff reasonably relied upon Defendants' omissions and suffered damages as a result.  Defendants' failure to do so constitutes fraudulent concealment at New York common law.

## COUNT V
## NEGLIGENT MISREPRESENTATION

58.     The preceding factual statements and allegations are incorporated by reference.

59.     Defendants had a confidential business relationship with Plaintiff, which imposed a duty on Defendants to impart correct information to Plaintiff concerning the coins they offered and sold to Plaintiff.

60.     Defendants made certain representations to Plaintiff in the course of their business and in transactions in which Defendants had a substantial monetary interest. Defendants also supplied false information for the specific purpose of guiding Plaintiff in her purchase of the grossly overvalued coins and her decision to entrust Defendants to sell her coins on consignment.

61.     Defendants, however, failed to exercise reasonable care and competence in obtaining and communicating such information to Plaintiff by, *inter alia,* utilizing one or more of the above-described unlawful, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry and/or making such false and material misrepresentations and omissions.

62.     Plaintiff justifiably relied on Defendants' negligent misrepresentations when purchasing the grossly overvalued coins and shipping her coins to Defendants for consignment sale, which directly and/or proximately caused her to suffer damages to the financial benefit of Defendants. Defendants' wrongful conduct constitutes negligent misrepresentation at New York common law.

### COUNT VI
### NEGLIGENCE

63.     The preceding factual statements and allegations are incorporated by reference.

64.     Defendants negligently valued, promoted, marketed, advertised and sold grossly overvalued silver coins to Plaintiff.    As a result of the special and confidential business relationship between Defendants and Plaintiff, Defendants owed a duty to Plaintiff.  In doing so, Defendants owed a duty to Plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins. Defendants also were negligent in their representations to Plaintiff of the market value of her coins, in failing to auction said coins, in refusing to provide her an accounting for said coins, and in unlawfully retaining said coins after Plaintiff demanded the coins' return. Defendants breached their duty to Plaintiff by failing to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins to—and for—Plaintiff. Defendants' wrongful conduct directly and/or proximately caused Plaintiff to suffer damages. Defendants' wrongful conduct constitutes negligence at New York common law.

## COUNT VII
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### *(Deceptive and Unfair Trade Practices)*

**64.**      The preceding factual statements and allegations are incorporated by reference.

**65.**      Plaintiff is a "consumer" and defendants are "persons" that may be sued pursuant to § 349 of New York's General Business Law (GBL).

**66.**      By their above wrongful acts and/or misrepresentations, Defendants engaged in false, misleading and deceptive acts and practices which were consumer-oriented in violation of GBL § 349.  Defendants have made and continued to make deceptive, false and material misleading statements concerning the coins they sell, namely selling, packaging the coins sold with false and misleading statements, and have (i) represented that the coins have value that they do not have and that significant investor and collector demand exists for the coins that will cause them to appreciate in value, which does not exist and will not happen; (ii) represented that the coins are rare and/or unique and have substantial desire to investors and collectors, which will cause the coins to appreciate significantly in the future, which they are not; and (iii) failed to disclose the above information about the coins, which Defendants knew at the time of the transactions, with the intent to induce Plaintiff to purchase the coins that Plaintiff would not have purchased had Defendants disclosed such information. Plaintiff relied on Defendants' misrepresentations and omissions above in purchasing the coins to her financial detriment and in shipping her coins to Defendants for sale by consignment, as more fully described above.

**67.**      By the acts and conduct alleged herein Defendants committed unfair or deceptive acts and practices by, *inter alia*, inducing Plaintiff to purchase collectible numismatic, semi-numismatic, and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented.

68.     The practices employed by defendants whereby they advertised, promoted, marketed and sold their coins are unfair, deceptive, and materially misleading.

69.     Defendants Atlas and Tri-State are liable for the above-described wrongful acts committed by Antonelli and Sullivan and their nonparty employees during the course and scope of their employment with Atlas and Tri-State under the doctrine of *respondeat superior*; to wit, Defendants' agents'/employees' wrongful conduct (and particularly that of Antonelli and Sullivan) was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the agents/employees were operating and/or hired (*i.e.,* marketing overvalued coins to customers like Plaintiff)—all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants.

70.     The foregoing deceptive acts and practices were directed at consumers, such as the Plaintiff herein.

71.     Plaintiff suffered a loss as a result of Defendants' deceptive and unfair trade practices. Specifically, as a proximate result of same, plaintiff suffered monetary losses associated with the purchase of the coins she obtained from defendants and/or the premium price paid by the Plaintiff insofar as said purchases were based on the inaccurate representations alleged herein of Defendants, and Plaintiff seeks an injunction against Defendants and penalties under GBL § 349

### COUNT VIII
### CONSPIRACY

72.     The preceding factual statements and allegations are incorporated by reference.

73.     Defendants Antonelli and Sullivan (and possibly others), either working together as a combined group or in sub-combinations of two or more, affirmatively conspired to engage in the wrongful actions set forth above.  By doing so, Defendants conspired to accomplish an unlawful purpose or a lawful purposed by an unlawful means.  As such, Defendants conspired to commit

the wrongful actions outlined in Counts I-IV, above, and took one or more affirmative measures in furtherance thereof, all of which directly and proximately caused Plaintiff to sustain actual and consequential damages.  Defendants' wrongful actions constitute civil conspiracy at New York common law.

**COUNT IX**
**MONEY HAD AND RECEIVED**

**74.**    The preceding factual statements and allegations are incorporated by reference.

**75.**    By their above-described wrongful actions and/or inaction, Defendants hold money obtained by a) the wrongfully charged and collected purchase prices paid by Plaintiff for the grossly overvalued coins misrepresented and sold to her by defendants; and b) coins impermissibly sold to third parties and the funds retained without payment to Plaintiff or replacement of the coins, that, in equity and good conscience, belong to Plaintiff.  Defendants, therefore, should be compelled to refund such wrongfully charged, retained and/or collected funds under the equitable doctrine of money had and received.

**COUNT X**
**UNJUST ENRICHMENT**

**64.**    The preceding factual statements and allegations are incorporated by reference.

**65.**    Defendants (and possibly other persons and entities, including Defendants' employees) have been unjustly enriched by (i) being paid an excessive value for coins that are not supported by any reasonable valuation; (ii) using the fraudulently obtained revenues and profits paid by Plaintiff, and (iii) generating a return on the amounts described in (i) and (ii). In addition, Defendants have been unjustly enriched in an amount equal to the coins belonging to Plaintiff which they promised to sell on consignment for Plaintiff for $1.1 million net to Plaintiff, but which they instead have retained or sold to others while pocketing the proceeds. Accordingly, Plaintiff

seeks to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' employees) have been unjustly enriched.

## COUNT XI

## **CONVERSION**

**64.**     The preceding factual statements and allegations are incorporated by reference.

**65.**     Plaintiff has and maintains a possessory right and interest over all funds that Plaintiff invested with Defendants, including the coins shipped to Defendants for consignment sale and all profits earned on any sales of said coins.

**66.**     Plaintiff requested a full liquidation of her account, including the return of her invested funds.

**67.**     Defendants had an obligation to return Plaintiff's funds and/or coins.

**68.**       Defendants acknowledged that Plaintiff was entitled to a liquidation of her account and the return of Plaintiff's account balance.

**69.**     Defendants wrongfully continue to exercise control over Plaintiff's funds.

**70.**     Defendants' wrongful control over Plaintiff's funds and refusal to return such funds is an interference of Plaintiff's ownership rights.

**71.**     As a result of Defendants' wrongful control over her funds, Plaintiff has been damaged in the amount $590,307.72, being a loss of the purchase price and consequential damages, as well as interest thereon.

**72.**     By virtue of the foregoing, Defendants have committed the tort of conversion, and Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $590,307.72 plus interest.

## **TOLLING OF THE STATUTES OF LIMITATION**

**73.**     The preceding factual statements and allegations are incorporated by reference.

**74.**     **EQUITABLE ESTOPPEL.** Defendants took active steps to conceal their above-described wrongful actions and/or inaction. The details of Defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery. At such time as this material information was first revealed to Plaintiff, she exercised due diligence by retaining counsel and pursuing her claims.  As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable estoppel.

**75.**     **EQUITABLE TOLLING.** Defendants took active steps to conceal their above-described wrongful actions and/or inaction.  The details of Defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery.  Even by exercising reasonable diligence, Plaintiff could not have discovered this information if for no other reason than she had no reason to make such inquiries. At such time as this material information was first revealed to Plaintiff, she exercised due diligence by retaining counsel and pursuing her claims.  As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable tolling.

## **RESPONDEAT SUPERIOR**

**76.**     The preceding factual statements and allegations are incorporated by reference.

**77.**     Defendants also are liable for the above-described wrongful acts committed by their agents and/or employees during the course and scope of their agency/employment by the Defendants; to wit: the agents'/employees' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the agents were

retained and/or the employees were hired (*i.e.*, selling and trading overvalued coins to and for customers like Plaintiff)—all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of defendants—under the doctrine of *respondeat superior.*

## RELIEF REQUESTED

78.     The preceding factual statements and allegations are incorporated by reference.

79.     **RECISSION.**  Based on Defendants' above wrongful conduct, Plaintiff is entitled to recission of the transaction(s) pursuant to which Defendants fraudulently sold the coins to Plaintiff and stole or converted Plaintiff's coins.

80.     **ACTUAL AND CONSEQUENTIAL DAMAGES.**  In the alternative, and as direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, *inter alia*, the amounts she paid to Defendants for the coins in excess of their value, and the represented or actual value of Plaintiff's coins which Defendants promised to sell for her on consignment but which Defendants either retain to this day or else sold and kept the proceeds. In any event, Plaintiff is entitled to recover consequential damages related to the assets she liquidated to purchase the coins and the mental anguish she has suffered in connection with these transactions—in an amount to be determined by the trier of fact.  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

81.     **PUNITIVE DAMAGES.**  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.  All conditions precedent to Plaintiff's claim for relief have been performed and/or occurred.

82.     **TREBLE DAMAGES.**  Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct in violation of the RICO statute under 18 U.S.C. § 1964 (c) and New York's GBL § 349 (up to the applicable cap).  All conditions precedent to plaintiff's claims for relief have been performed and/or occurred.

83.     **INJUNCTIVE RELIEF.** Plaintiff also is entitled to an injunction under NY GBL NY GBL § 349 prohibiting Defendants' unlawful act or practices as set out in detail above.

84.     **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  Plaintiff also is entitled to recover her reasonable and necessary attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, the RICO statute and NY GBL § 349 insofar as defendants' aforesaid actions were willful and knowing.

**WHEREFORE,** Plaintiff requests that upon final trial or hearing, judgment be awarded in her favor against the Defendants, jointly and severally for:

(a)     With respect to Counts I-III (violations of 18 U.S.C. § 1961, *et seq.*)--

   (i)     threefold the actual damages sustained by plaintiff with costs of suit, attorneys' fees, litigation expenses and court costs, all under 18 U.S.C. § 1964(c), with pre- and post-judgment interest at the highest legal rates; and

   (ii)    equitable relief, as may be appropriate, under 18 U.S.C. § 1964(a), including an equitable accounting for all benefits, consideration and profits received, directly or indirectly, including imposing a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits.

(b)     With respect to Counts IV-XI:

   (i)     rescission;
   (ii)    actual damages to be determined by the trier of fact;
   (iii)   punitive damages;
   (iv)    treble damages;
   (v)     all amounts by which Defendants have been unjustly enriched;
   (vi)    an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including imposing a constructive trust,

the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits;

(vii)   an injunction prohibiting Defendants' unlawful acts and practices;

(viii)   pre- and post-judgment interest at the highest legal rates;

(ix)   attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

(x)   costs of suit; and

(xi)   such other and further relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of her claims and causes of action so triable.

Dated: March 17, 2023.

Respectfully submitted,

_/s/KENNETH G. WALSH_____

BY: KENNETH G. WALSH (1654)
 LAW OFFICE OF KENNETH G. WALSH
59 KENSICO ROAD, SUITE 7
THORNWOOD, NY 10595
(929) 241-7307

*Attorney for Plaintiff*

**EXHIBIT 1**
**Scam No. 1 – Fraudulent Sales to Widow Van Gundy**

| DATE | Description | # Coins | Total Selling Price | Total Fair Market Value | Losses | % Markup |
|---|---|---|---|---|---|---|
| 6/30/2017 | Franklin 50¢ Roll Gem Proof | 40 | $ 800.00 | $ 480.00 | $ | 67% |
| 7/15/2017 | CD $5 Gold Liberty Half-Eagle MS63 | 5 | $ 4,775.00 | $ 2,500.00 | $ | 91% |
| 8/6/2017 | 1965 Washington Quarter Proof | 200 | $ 3,950.00 | $ 200.00 | $ | 1875% |
| 8/28/2017 | 1907 $20 Saint Gaudens Prospector | 1 | $ 1,900.00 | $ 1,300.00 | $ | 46% |
| 8/28/2017 | 1908 $20 Saint Gaudens Prospector | 1 | $ 1,900.00 | $ 1,300.00 | $ | 46% |
| 8/28/2017 | 1920 $20 Saint Gaudens Prospector | 1 | $ 1,900.00 | $ 1,300.00 | $ | 46% |
| 9/12/2017 | 1922 Silver Peace Dollar - Brilliant | 9 | $ 387.00 | $ 180.00 | $ | 115% |
| 9/12/2017 | 1923 Silver Peace Dollar - Brilliant | 7 | $ 301.00 | $ 140.00 | $ | 115% |
| 9/12/2017 | 1924 Silver Peace Dollar - Brilliant | 1 | $ 43.00 | $ 20.00 | $ | 115% |
| 9/12/2017 | 1925 Silver Peace Dollar - Brilliant | 3 | $ 129.00 | $ 60.00 | $ | 115% |
| 10/2/2017 | Silver Peace Dollars - Brilliant | 20 | $ 860.00 | $ 400.00 | $ | 115% |
| 10/13/201 | Ben Franklin Roll Gem Proof | 60 | $ 1,785.00 | $ 480.00 | $ | 272% |
| 1/8/2018 | JFK Roll Gem Proof | 20 | $ 375.00 | $ 160.00 | $ | 134% |
| 3/8/2018 | 1904 $2.50 Gold American Quarter- | 1 | $ 695.00 | $ 400.00 | $ | 74% |
| 3/8/2018 | 1905 $2.50 Gold American Quarter- | 1 | $ 695.00 | $ 400.00 | $ | 74% |
| 3/8/2018 | 1905 $2.50 Gold American Quarter- | 1 | $ 695.00 | $ 400.00 | $ | 74% |
| 3/8/2018 | 1906 $2.50 Gold American Quarter- | 1 | $ 695.00 | $ 400.00 | $ | 74% |
| 3/8/2018 | 1907 $2.50 Gold American Quarter- | 1 | $ 695.00 | $ 400.00 | $ | 74% |
| 3/22/2018 | 1893 $10 Gold American Eagle MS63 | 3 | $ 3,450.00 | $ 2,250.00 | $ | 53% |
| 3/22/2018 | 1899 $10 Gold American Eagle MS63 | 1 | $ 1,150.00 | $ 750.00 | $ | 53% |
| 3/22/2018 | 1907 $10 Gold American Eagle MS63 | 1 | $ 1,150.00 | $ 750.00 | $ | 53% |
| 4/5/2018 | 1924 Silver Peace Dollar NGC MS67 | 1 | $ 5,400.00 | $ 2,280.00 | $ | 137% |
| 4/12/2018 | 1923 Silver Peace Dollar NGC MS67 | 1 | $ 3,850.00 | $ 1,800.00 | $ | 114% |
| 4/26/2018 | 1922 Silver Peace Dollar MS66+ CAC | 1 | $ 3,450.00 | $ 1,045.00 | $ | 230% |
| 4/26/2018 | 1925 Silver Peace Dollar MS66+ CAC | 1 | $ 1,795.00 | $ 880.00 | $ | 104% |
| 5/8/2018 | 1927-S Silver Peace Dollar MS64+ | 1 | $ 2,850.00 | $ 1,528.00 | $ | 87% |
| 6/6/2018 | 1928-S Silver Peace Dollar MS64+ | 1 | $ 3,240.00 | $ 823.00 | $ | 294% |
| 6/20/2018 | 1912 $5.00 Indian Head MS64+ CAC | 1 | $ 7,150.00 | $ 2,000.00 | $ | 258% |
| 6/28/2018 | 1910 $5.00 Indian Head MS64+ | 1 | $ 4,750.00 | $ 2,000.00 | $ | 138% |
| 7/20/2018 | 1909-D $5.00 Indian Head MS64+ | 1 | $ 3,850.00 | $ 2,000.00 | $ | 93% |
| 8/2/2018 | 1914-D $5.00 Indian Head PCGS | 1 | $ 11,950.00 | $ 2,500.00 | $ | 378% |
| 8/28/2018 | 1941-S Walking Liberty Half Dollar | 1 | $ 18,200.00 | $ 7,500.00 | $ | 143% |
| 10/10/201 | 1897 $20.00  Liberty Prospector Series | 1 | $ 3,600.00 | $ 2,000.00 | $ | 80% |
| 12/5/2018 | JFK Roll Gem Proof | 500 | $ 14,875.00 | $ 4,000.00 | $ | 272% |
| 12/18/201 | 1881 Morgan Silver Dollar MS65 DPL | 1 | $ 12,250.00 | $ 500.00 | $ | 2350% |
| 1/23/2019 | 1922-D Silver Peace Dollar MS67 | 1 | $ 18,500.00 | $ 8,400.00 | $ | 120% |
| 3/18/2019 | 1945 Walking Liberty MS67 CAC | 1 | $ 6,900.00 | $ 690.00 | $ | 900% |
| 3/18/2019 | 1945-D Walking Liberty MS67+ CAC | 1 | $ 22,330.00 | $ 2,233.00 | $ | 900% |
| 3/18/2019 | 1945-S Walking Liberty MS66+ CAC | 1 | $ 3,840.00 | $ 384.00 | $ | 900% |
| 3/18/2019 | 1880-O Morgan Silver Dollar MS64+ | 1 | $ 26,400.00 | $ 2,640.00 | $ | 900% |
| 3/18/2019 | 1885-O Morgan Silver Dollar MS67+ | 1 | $ 15,600.00 | $ 1,560.00 | $ | 900% |
| 5/22/2019 | 1887-S Morgan Silver Dollar MS65+ | 1 | $ 5,150.00 | $ 1,500.00 | $ | 243% |
| 6/13/2019 | 1921 Morgan Silver Dollar MS66+ | 1 | $ 3,420.00 | $ 1,080.00 | $ | 217% |
| 6/27/2019 | 1937-S Walking Liberty Half Dollar | 1 | $ 2,995.00 | $ 630.00 | $ | 375% |
| 7/24/2019 | 1921-D Morgan Silver Dollar MS66+ | 1 | $ 5,125.00 | $ 2,880.00 | $ | 78% |

| Date | Description | Qty | Price | | Value | | % |
|---|---|---|---|---|---|---|---|
| 8/7/2019 | 1879-S $20.00 Saint Gaudens | 1 | $ | 4,400.00 | $ | 1,950.00 | $ | | 126% |
| 9/9/2019 | 1964 JFK Gem Brilliant Uncirculated | 25 | $ | 5,500.00 | $ | 375.00 | $ | | 1367% |
| 9/24/2019 | 1941 Walking Liberty Half Dollar | 1 | $ | 2,900.00 | $ | 660.00 | $ | | 339% |
| 10/18/201 | 1943 Walking Liberty MS67+ CAC | 1 | $ | 2,206.67 | $ | 960.00 | $ | | 130% |
| 10/18/201 | 1943-D Walking Liberty MS67+ CAC | 1 | $ | 2,206.67 | $ | 1,320.00 | $ | | 67% |
| 10/18/201 | 1943-S Walking Liberty MS66+ CAC | 1 | $ | 2,206.67 | $ | 1,320.00 | $ | | 67% |
| 1/6/2020 | 2019-S Silver American Eagle | 1 | $ | 400.00 | $ | 125.00 | $ | | 220% |
| 1/6/2020 | 1944 Walking Liberty MS67 CAC | 1 | $ | 1,725.00 | $ | 720.00 | $ | | 140% |
| 1/6/2020 | 1944-D Walking Liberty MS67+ CAC | 1 | $ | 8,700.00 | $ | 1,170.00 | $ | | 644% |
| 1/23/2020 | 1946-D Walking Liberty MS67+ | 1 | $ | 5,250.00 | $ | 1,680.00 | $ | | 213% |
| 2/3/2020 | 1918-S Walking Liberty Half Dollar | 1 | $ | 5,590.00 | $ | 2,280.00 | $ | | 145% |
| 3/16/2020 | 1853 $20.00 Lib Gold Double Eagle | 1 | $ | 5,950.00 | $ | 2,600.00 | $ | | 129% |
| 3/20/2020 | 1836 $5.00 Gold Liberty SSCA PCGS | 1 | $ | 4,150.00 | $ | 528.00 | $ | | 686% |
| 4/14/2020 | 1880 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1882 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1893 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1894 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1885 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1897 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1900 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/14/2020 | 1907 $5.00 Liberty Gold Half Eagle | 2 | $ | 1,498.00 | $ | 1,000.00 | $ | | 50% |
| 4/14/2020 | 1908 $5.00 Liberty Gold Half Eagle | 1 | $ | 749.00 | $ | 500.00 | $ | | 50% |
| 4/24/2020 | 1877-S $20.00 Gold Prospector Series | 1 | $ | 4,200.00 | $ | 1,990.00 | $ | | 111% |
| 5/1/2020 | 1883 Morgan Silver Dollar MS67+ | 1 | $ | 7,990.00 | $ | 3,960.00 | $ | | 102% |
| 5/15/2020 | 1885-O Morgan Silver Dollar Certified | 1 | $ | 6,100.00 | $ | 2,520.00 | $ | | 142% |
| 5/26/2020 | 2009 $20.00 Ultra High Relief Saint | 1 | $ | 2,995.00 | $ | 1,998.00 | $ | | 50% |
| 6/12/2020 | 1928 $1.00 Silver Peace Dollar MS65+ | 1 | $ | 9,250.00 | $ | 4,080.00 | $ | | 127% |
| 6/12/2020 | 1938 Walking Liberty Half Dollar | 1 | $ | 7,200.00 | $ | 3,840.00 | $ | | 88% |
| 6/24/2020 | 1842-O $2.50 Liberty Gold Quarter | 1 | $ | 7,740.00 | $ | 1,500.00 | $ | | 416% |
| 7/7/2020 | 1942-S Walking Liberty Half Dollar | 1 | $ | 14,950.00 | $ | 6,600.00 | $ | | 127% |
| 7/14/2020 | 1942 Walking Liberty Half Dollar | 1 | $ | 2,900.00 | $ | 1,380.00 | $ | | 110% |
| 7/14/2020 | 1947-D Walking Liberty Half Dollar | 1 | $ | 2,350.00 | $ | 810.00 | $ | | 190% |
| 7/14/2020 | 1946 Walking Liberty Half Dollar MS- | 1 | $ | 1,700.00 | $ | 780.00 | $ | | 118% |
| 7/14/2020 | 1946-D Walking Liberty Half Dollar | 1 | $ | 1,300.00 | $ | 552.00 | $ | | 136% |
| 7/24/2020 | 1936-S $.50 Oregon Trail MS-68 | 1 | $ | 4,800.00 | $ | 2,220.00 | $ | | 116% |
| 8/5/2020 | 1911-D $5.00 Indian Gold Half Eagle | 1 | $ | 6,475.00 | $ | 4,080.00 | $ | | 59% |
| 8/13/2020 | 1917-D OBT $.50 Walking Liberty | 1 | $ | 8,000.00 | $ | 4,320.00 | $ | | 85% |
| 8/13/2020 | 1917 $.50 Walking Liberty NGC | 1 | $ | 1,155.00 | $ | 600.00 | $ | | 93% |
| 8/13/2020 | 1935 OGH $.50 Walking Liberty | 1 | $ | 335.00 | $ | 174.00 | $ | | 93% |
| 8/25/2020 | 1995 $10.00 Gold American Eagle | 1 | $ | 11,500.00 | $ | 3,840.00 | $ | | 199% |
| 8/25/2020 | 1911-D $10.00 Indian Head MS61 | 1 | $ | 17,500.00 | $ | 5,520.00 | $ | | 217% |
| 8/25/2020 | 1900-S $5.00 Liberty Gold Half-Eagle | 1 | $ | 11,600.00 | $ | 6,900.00 | $ | | 68% |
| 9/15/2020 | 1869 $1.00 Liberty Seated PF-66 | 1 | $ | 22,500.00 | $ | 12,600.00 | $ | | 79% |
| 10/6/2020 | 1916-D $.50 Walking Liberty (P) | 1 | $ | 4,850.00 | $ | 2,520.00 | $ | | 92% |
| 10/20/202 | 1908 Barber Quarter PR-68 | 1 | $ | 7,975.00 | $ | 4,200.00 | $ | | 90% |
| 11/10/202 | 1881 3CN PF68 Cameo | 1 | $ | 7,000.00 | $ | 3,000.00 | $ | | 133% |
| 11/25/202 | 1911-D $.50 Barber MS67 | 1 | $ | 18,000.00 | $ | 10,200.00 | $ | | 76% |
| 12/2/2020 | 1937-D $.50 Walker NGC MS67+ | 1 | $ | 10,200.00 | $ | 7,000.00 | $ | | 46% |
| 7/8/2021 | 2021 ASE T2 MS70 E.R. 20-Coin Set | 20 | $ | 3,825.00 | $ | 2,000.00 | $ | | 91% |
| 1/27/2021 | 1870 $.05 NGC PF67 Cameo | 1 | $ | 5,200.00 | $ | 2,760.00 | $ | | 88% |
| | **TOTALS** | **995** | **$ 504,065.00** | | **$ 189,755.00** | | **$ 314,310.00** | **166%** |

**EXHIBIT NO. 2**
**Scam No. 2 – Consignment by Widow Van Gundy**

| Coins Consigned to Atlas | # of coins | Purchase Price or ... |
|---|---|---|
| $1 Silver Commemoratives  MS/PF | 200 | $   3,700.00 |
| 1882 $10 Gold Liberty Head  MS63 | 1 | $      890.00 |
| 1894 $10 Gold Liberty Head  MS63 | 1 | $      890.00 |
| 1902-S $10 Gold Liberty Head MS63 | 1 | $      890.00 |
| 1842 Gold Liberty Head $2.50 gold O MS60 | 1 | $   7,740.00 |
| 1853 $20.00 Gold Double Eagle Prospector  BU | 1 | $   5,950.00 |
| 1869 $1.00 Liberty Seated PF-66 | 1 | $  22,500.00 |
| 1870 $.05 NGC PF67 Cameo (Certified) | 1 | $  27,260.00 |
| 1872 Seated $1.00 NGC PF66 (Certified) | 1 | $  16,000.00 |
| 1875 Gold Liberty Head $20 Gold Piece S MS61 | 1 | $   2,650.00 |
| 1875-S Gold $20 Liberty Double Eagle MS-61 PCGS | 1 | $   2,000.00 |
| 1876-S $20 Gold Double Eagle AU 58 | 1 | $   1,925.00 |
| 1876-S Trade Dollar MS64+ CAC | 1 | $   5,000.00 |
| 1877-S $20.00 Gold Prospector Series | 1 | $   4,200.00 |
| 1878 $2.50 Gold Liberty Head Choice BU | 1 | $      895.00 |
| 1878-S Silver Morgan Dollar NGC MS66+ CAC | 1 | $   5,600.00 |
| 1878 Silver Morgan Dollar 7TF MS64 NGC VAM- | 1 | $   2,900.00 |
| 1878 Silver Morgan Dollar 7TF MS64+ CAC | 1 | $   1,275.00 |
| 1878-1921 Silver Morgan Dollars MS 63 (var. dates) | 72 | $  19,300.00 |
| 1878-S Silver Morgan Dollar ANACS MS63 VAM 5 | 1 | $   1,000.00 |
| 1879-1904 Silver Morgan Dollar MS63 | 20 | $   1,180.00 |
| 1879-S $20.00 Saint Gaudens Prospector | 1 | $   4,400.00 |
| 1880/9-S Silver Morgan Dollar S MS63 VAM-11 | 1 | $   1,300.00 |
| 1880-1904 Silver Morgan Dollars MS63 | 20 | $   1,180.00 |
| 1880-O Silver Morgan Dollar MS64+ | 1 | $   6,200.00 |
| 1880s (CD) Silver Morgan Dollar MS67 | 1 | $   2,999.00 |
| 1881 3CN (three cent nickel) PF68 Cameo | 1 | $   7,000.00 |
| 1881 Morgan Silver Dollar MS65 DPL | 1 | $  12,250.00 |
| 1881-O Silver Morgan Dollar MS64 VAM-1D NGC | 1 | $   1,800.00 |
| 1882 Gold Liberty Head $10 Gold Piece MS63 | 1 | $      890.00 |
| 1882-84 CC Silver Morgan Dollar BU | 18 | $   1,995.00 |
| 1883 Morgan Silver Dollar (Gold River) MS67+ | 1 | $   7,990.00 |
| 1883-CC Silver Morgan Dollar MS64+ | 1 | $      240.00 |
| 1884-P Silver Morgan Dollar PR66+ | 1 | $  14,500.00 |
| 1884-CC $20.00 Gold Double Eagle PCGS MS-61 | 1 | $   6,900.00 |
| 1884-O Silver Morgan Dollar MS66  PCGS  CAC | 1 | $   1,000.00 |
| 1885-P Silver Morgan Dollar PR66 | 1 | $  12,500.00 |
| 1885-CC Silver Morgan Dollar MS66 | 1 | $   2,900.00 |
| 1885-O Morgan Silver Dollar MS67+ CAC | 1 | $  10,200.00 |
| 1885-O Morgan Silver Dollar MS67+ CAC | 1 | $   6,100.00 |
| 1885-O Silver Morgan Dollar MS63 | 1 | $   2,250.00 |
| 1885-O Silver Morgan Dollar MS67+ CAC | 1 | $   7,250.00 |

| | | | |
|---|---|---|---|
| 1886-S $5 Gold MS63 | 1 | $ | 800.00 |
| 1886 Silver Morgan Dollar MS67+ CAC | 1 | $ | 4,845.00 |
| 1887-S Morgan Silver Dollar MS65+ CAC | 1 | $ | 5,150.00 |
| 1889 Silver Morgan Dollar MS63 | 1 | $ | 149.95 |
| 1890-CC Silver Morgan Dollar MS63 | 1 | $ | 1,700.00 |
| 1891 $5 Gold Piece CC MS62 | 1 | $ | 3,500.00 |
| 1891-CC Silver Morgan Dollar MS64 spitting eagle | 1 | $ | 1,300.00 |
| 1893 GAE $10.00 MS63 | 1 | $ | 3,450.00 |
| 1894 $5 Gold Piece MS63 | 1 | $ | 835.00 |
| 1895 $5 Gold Liberty Choice BU | 1 | $ | 961.67 |
| 1895 $5 Gold Liberty Choice BU | 1 | $ | 700.00 |
| 1897 $20.00  Liberty Prospector Series | 1 | $ | 3,600.00 |
| 1897 Gold Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,680.00 |
| 1898  $5 Gold Liberty Choice BU | 1 | $ | 700.00 |
| 1898 $10 Gold Liberty Choice BU | 1 | $ | 1,485.00 |
| 1898 $5 Gold Liberty Choice BU | 1 | $ | 961.67 |
| 1898-O Silver Morgan Dollar MS67+ | 1 | $ | 6,000.00 |
| 1899 $5 Gold Piece MS63 | 1 | $ | 825.00 |
| 1899 Gold Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,800.00 |
| 1900 Gold $10 Liberty Head MS63 | 1 | $ | 890.00 |
| 1900-S $5 Gold Piece MS65 | 1 | $ | 11,600.00 |
| 1901-P Gold $10 Liberty Head MS66 NGC | 1 | $ | 5,995.00 |
| 1902 Gold $2.50 Liberty Head Choice BU | 1 | $ | 895.00 |
| 1902-S $5 Gold Liberty Head MS64 CAC | 1 | $ | 900.00 |
| 1904 $2.50 Gold Liberty Q-Eagle  MS63 | 1 | $ | 695.00 |
| 1904-O Silver Morgan Dollar MS64 | 1 | $ | 150.00 |
| 1905 Gold Liberty Head $2.50 gold MS63 | 1 | $ | 695.00 |
| 1905 Gold Liberty Head $2.50 gold MS63 | 1 | $ | 695.00 |
| 1906 Gold $10 Liberty Head | 1 | $ | 1,105.00 |
| 1906 Gold Liberty Head $2.50 gold MS63 | 1 | $ | 695.00 |
| 1906 Gold Liberty Head $20 Gold Piece S MS63 | 1 | $ | 3,600.00 |
| 1907 $10 Gold Liberty Eagle MS63 | 1 | $ | 1,150.00 |
| 1907 $10 Gold Liberty Head MS62 | 1 | $ | 1,306.67 |
| 1907 $10 Gold Liberty Head MS63 | 1 | $ | 890.00 |
| 1907 $10 Gold Liberty Head MS63 | 1 | $ | 890.00 |
| 1907 $10 Gold Indian Head MS61 | 1 | $ | 1,292.50 |
| 1907 $2.5 Gold Liberty Head MS62 | 1 | $ | 326.67 |
| 1907 $2.50 Gold Liberty MS63 | 1 | $ | 695.00 |
| 1907 $20 Gold Liberty MS-62 | 1 | $ | 2,613.33 |
| 1907 $20 Saint Gaudens Prospector PCGS | 1 | $ | 1,900.00 |
| 1907 $5 Gold Liberty Head MS62 | 1 | $ | 653.33 |
| 1907 Gold $5 Eagle MS64 | 1 | $ | 900.00 |
| 1908 Barber Quarter PR-68 | 1 | $ | 7,975.00 |
| 1908 Gold Liberty $20 Gold Piece w/ motto | 1 | $ | 1,900.00 |
| 1909-D $5 Gold Indian Head D MS64+ | 1 | $ | 3,850.00 |
| 1910 $5 Gold Indian Head MS64+ | 1 | $ | 4,750.00 |
| 1911 $10 Gold Indian Head MS62 | 1 | $ | 997.00 |
| 1911 $10 St. Gaudens Gold Indian Head D MS61 | 1 | $ | 17,500.00 |
| 1911 $10 St. Gaudens Gold Indian Head D MS63 | 1 | $ | 18,000.00 |
| 1911 $5 Gold Indian Head D MS60 | 1 | $ | 6,475.00 |
| 1911-S $5 Gold Indian Head MS63 | 1 | $ | 5,000.00 |
| 1911-D Silver Barber Half Dollar MS67 | 1 | $ | 18,000.00 |

| | | | |
|---|---|---|---|
| 1912 $10 Gold Indian Head  MS62 | 1 | $ | 997.00 |
| 1912 $5 Gold Indian Head MS64+ CAC | 1 | $ | 7,150.00 |
| 1914 $5 Gold Indian Head D MS64+ CAC | 1 | $ | 11,950.00 |
| 1916 Silver 50¢ Walking Liberty MS66 | 1 | $ | 5,400.00 |
| 1916-D Silver 50¢ Walking Liberty MS66 | 1 | $ | 4,850.00 |
| 1917 Silver 50¢ Walking Liberty MS65 | 1 | $ | 995.00 |
| 1917-D Silver 50¢ Walking Liberty MS65 | 1 | $ | 8,400.00 |
| 1917-D Silver 50¢ Walking Liberty MS65 | 1 | $ | 12,400.00 |
| 1918-S Silver 50¢ Walking Liberty MS64+ CAC | 1 | $ | 5,590.00 |
| 1920 $20 Gold Liberty Prospectors Series PCGS | 1 | $ | 1,900.00 |
| 1920 Silver 50¢ Walking Liberty MS65 CAC | 1 | $ | 3,200.00 |
| 1921-35 Silver Peace Dollar Year Set | 10 | $ | 1,500.00 |
| 1921-D Silver Morgan Dollar MS66+ CAC | 1 | $ | 5,125.00 |
| 1922 $20 Gold StG Double Eagle MS63 | 1 | $ | 2,175.00 |
| 1922 $20 Gold SG Double Eagles MS63 | 1 | $ | 1,566.67 |
| 1922 Silver Peace Dollar MS66+ CAC | 1 | $ | 3,450.00 |
| 1922 Silver Peace Dollars MS63 | 19 | $ | 760.00 |
| 1922-D Silver Peace Dollar MS67 | 1 | $ | 18,500.00 |
| 1923 Silver Peace Dollar MS67 | 1 | $ | 3,850.00 |
| 1923 Silver Peace Dollars MS63 | 17 | $ | 680.00 |
| 1923-S Silver 50c | 1 | $ | 110.00 |
| 1924 Silver Peace Dollar MS67 | 1 | $ | 5,400.00 |
| 1924 Silver Peace Dollars MS63 | 4 | $ | 160.00 |
| 1925 $20 Gold SG Double Eagles MS63 | 1 | $ | 1,566.67 |
| 1925 Silver Peace Dollar MS66+ CAC | 1 | $ | 1,795.00 |
| 1926 Gold $2.50 Sesq Comm Q-Eagle MS65 PCGS | 1 | $ | 1,995.00 |
| 1926 Silver Peace Dollar MS66+ CAC | 1 | $ | 11,000.00 |
| 1927 $20 Gold Piece MS65 | 1 | $ | 2,575.00 |
| 1927 $20 Gold SG Double Eagles MS63 | 1 | $ | 1,566.67 |
| 1927-S Silver Peace Dollar MS64+ CAC | 1 | $ | 2,850.00 |
| 1928 Silver Peace Dollar MS65+ CAC | 1 | $ | 9,250.00 |
| 1928-S Silver Peace Dollar MS64+ CAC | 1 | $ | 3,240.00 |
| 1929-D Silver 50¢ Walking Liberty MS65 | 1 | $ | 2,300.00 |
| 1932 $10 Gold Indian Head MS62 | 1 | $ | 997.00 |
| 1935 Silver 50¢ Walking Liberty MS65 | 1 | $ | 1,475.00 |
| 1936 Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 5,250.00 |
| 1936-S Fifty-cent piece MS68 | 1 | $ | 4,800.00 |
| 1936-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 7,900.00 |
| 1937-D Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 10,200.00 |
| 1937-S Silver 50¢ Walking Liberty MS66+ CAC | 1 | $ | 2,995.00 |
| 1938 Silver 50¢ Walking Liberty MS68 PF | 1 | $ | 7,200.00 |
| 1939-D Silver 50¢ Walking Liberty MS67 CAC | 1 | $ | 2,250.00 |
| 1939-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 2,250.00 |
| 1940-S Silver 50¢ Walking Liberty MS66+ | 1 | $ | 150.00 |
| 1941 S Silver 50¢ Walking Liberty MS66+ | 1 | $ | 4,800.00 |
| 1941 Silver 50¢ Walking Liberty MS67 CAC | 1 | $ | 1,000.00 |
| 1941 Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 2,900.00 |
| 1941 Walking Liberty Half Dollar MS67+ CAC | 1 | $ | 2,900.00 |
| 1941-D Silver 50¢ Walking Liberty MS67+ | 1 | $ | 150.00 |
| 1941-D Silver Mercury Dimes | 1 | $ | 5.00 |
| 1941-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 18,200.00 |
| 1941-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 14,950.00 |

| | | | |
|---|---|---|---|
| 1941-S Silver Mercury Dimes | 1 | $ | 5.00 |
| 1942 S Silver Mercury Dimes | 1 | $ | 5.00 |
| 1942 Silver 50¢ Walking Liberty MS68 PF | 1 | $ | 2,900.00 |
| 1942-D Silver Mercury Dimes | 1 | $ | 5.00 |
| 1942-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 2,000.00 |
| 1943 D Silver 50¢ Walking Liberty MS67 | 1 | $ | 550.00 |
| 1943 D Silver Mercury Dimes | 1 | $ | 5.00 |
| 1943 S Silver Mercury Dimes | 1 | $ | 5.00 |
| 1943 Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 2,206.67 |
| 1943 Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 4,550.00 |
| 1943-D Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 2,206.67 |
| 1943-S Silver 50¢ Walking Liberty MS66+ CAC | 1 | $ | 2,206.67 |
| 1944 D Silver Mercury Dimes | 1 | $ | 5.00 |
| 1944 S Silver Mercury Dimes | 1 | $ | 5.00 |
| 1944 Silver 50¢ Walking Liberty MS66+ | 1 | $ | 150.00 |
| 1944 Silver 50¢ Walking Liberty MS67 CAC | 1 | $ | 1,725.00 |
| 1944 Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 8,700.00 |
| 1944-S Silver 50¢ Walking Liberty MS67 | 1 | $ | 2,000.00 |
| 1945 D Silver Mercury Dimes | 1 | $ | 5.00 |
| 1945 S Silver Mercury Dimes | 1 | $ | 55.00 |
| 1945 Silver 50¢ Walking Liberty MS67 CAC | 1 | $ | 2,250.00 |
| 1945-D Silver 50¢ Walking Liberty MS67+ CAC | 1 | $ | 4,900.00 |
| 1945-S Silver 50¢ Walking Liberty MS66+ CAC | 1 | $ | 2,650.00 |
| 1946 Silver 50¢ Walking Liberty MS67 | 1 | $ | 1,700.00 |
| 1946-D Silver 50¢ Walking Liberty MS67+ | 1 | $ | 5,250.00 |
| 1947-D Silver 50¢ Walking Liberty MS67 | 1 | $ | 2,350.00 |
| 1963 Silver 50¢ Franklin BU | 100 | $ | 1,100.00 |
| 1964 Silver 50¢ JFK Gem BU | 500 | $ | 5,500.00 |
| 1964-2014-W Gold 50¢ JFK Comm UC PF70 | 2 | $ | 3,580.00 |
| 1986-W $50 Gold Eagle American UC PF 70 | 1 | $ | 1,960.00 |
| 1989-W $50.00 Gold Eagle American Eagle PCGS | 1 | $ | 1,795.00 |
| 1990-W $50 Gold American Eagle PF70 NGC Moy | 1 | $ | 6,200.00 |
| 1990-W $50.00 Gold Eagle American Eagle PCGS | 1 | $ | 1,795.00 |
| 1992 Gold American Eagle 4-coin set | 4 | $ | 9,900.00 |
| 1993-W Gold American Eagle PF70 UC Moy | 2 | $ | 10,722.00 |
| 1995 GAE $10 MS70 | 1 | $ | 11,500.00 |
| 1999-W $50 Gold American Eagle PF70 UC | 1 | $ | 6,200.00 |
| 2006-W $50 Gold Buffalo PR70 DCAM | 1 | $ | 2,950.00 |
| 2009 Saint Gaudens $20 HR Eagle MS70 | 1 | $ | 2,995.00 |
| 2009-P $20 Gold American Double Eagle UHR | 1 | $ | 2,990.00 |
| 2012-W $50 Gold American Buffalo PF70 UC | 1 | $ | 1,950.00 |
| 2013-W $50 Gold American Buffalo PR70 DCAM | 1 | $ | 1,950.00 |
| 2013-W Gold $50 Buffalo PF70 Reverse | 1 | $ | 2,750.00 |
| 2015-W $100 Gold Liberty HR MS70 | 1 | $ | 2,750.00 |
| 2015-W $100 Gold Liberty HR MS70 | 1 | $ | 2,250.00 |
| 2015-W Gold $100 Liberty HR MS70 | 1 | $ | 2,750.00 |
| 2015-W Gold $100 Liberty HR MS70 | 1 | $ | 2,250.00 |
| 2015-W Gold $100 Liberty HR MS70 | 1 | $ | 2,250.00 |
| 2017 Palladium $25.00 Eagle High Relief MS70 | 1 | $ | 3,100.00 |
| 2017 Silver American Eagle MS70 | 100 | $ | 4,900.00 |
| 2017 Silver Indian Double Eagle HR Comm PF70 | 1 | $ | 199.99 |
| 2017-W Gold American Eagle PF70 DCAM | 1 | $ | 1,950.00 |

| | | | |
|---|---|---|---|
| 2018 50¢ Silver JFK PF 70 | 2 | $ | 3,580.00 |
| 2018-W $25 Pd American Eagle | 1 | $ | 2,995.00 |
| 2019 $25 Palladium American Eagle PR70 | 1 | $ | 3,199.95 |
| 2019-S SAE Enhanced Reverse PR70 | 1 | $ | 400.00 |
| 2019-W $25.00 Palladium American Eagle NGC Rev | 1 | $ | 3,000.00 |
| 2020-W $50.00 Gold Buffalo NGC MS-70 | 1 | $ | |
| 2021-W $50 Gold American Eagle Type 1 DCAM | 1 | $ | |
| 5 coin set Silver Morgan Dollars MS66 | 5 | $ | |
| 1878-1921 CD Silver Morgan Dollars BU | 20 | $ | |
| CD Silver Peace Dollars AU/BU | 180 | $ | |
| CD Silver Walking Liberty Half Dollars | 200 | $ | |
| **TOTAL** | **1684** | **$** | |