UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

BEVERLY VAN GUNDY,

                Plaintiff,           Case No.:  **2:23-cv-02072**

-against-

                                  **<u>SECOND AMENDED COMPLAINT</u>**

ATLAS RARE COINS, INC., et al.        **Jury trial demanded.**

                Defendants.
_____X

        Plaintiff, by her attorneys, Kenneth G. Walsh and R. Lyn Stevens, complaining of the

Defendants, alleges as follows on information and belief:

<u>**NATURE OF THE CASE**</u>

**1.**      This action arises from the fraudulent precious metals and coin sale operations of a

succession of three companies owned, managed and operated by Defendant Jason Sullivan

(hereinafter "Sullivan") and Defendant Christian Antonelli (hereinafter "Antonelli"):  Atlas

Collectibles Inc. (hereinafter "Atlas Collectibles") (f/k/a Atlas Gemstones, Inc. and d/b/a Atlas

Gemstones and Rarities) operated from May 2016 to December 2020; Atlas Rare Coins, Inc.

(hereinafter "Atlas Coins") (d/b/a Atlas Gemstones and Rarities, Atlas Rare Coins and Tri-State

Assets) operated from October 2018 to July 2021; and C.A. Rarities Inc. (hereinafter "CARI-

Atlas") (d/b/a Atlas Rare Coins, Tri-State Assets, Tri-State Assets, Inc.) which has been in

operation since July 2021 (all collectively "the Atlas Companies"). Each of the above entities

1

(under their legal and assumed names) via advertisements, social media and on websites utilizes a common telephone number and operates from a common physical address: 90 Colin Dr. Unit 7, Holbrook, NY 11741[1] which has a sign on the front door reading: "Tri-State Assets, Inc.," an entity not registered with the New York State Department of State, Division of Corporations. Defendants Antonelli and Sullivan intentionally launched a shell game of interrelated legal entities with, or operating under, similar names (i.e. "Atlas"), abandoning the names, changing the names, or abandoning the particular entities (and assumed names) for the illegal purpose of avoiding liability for their fraudulent actions and obfuscating any potential consumer redress.[2]

**2.**      Defendants Christian Antonelli and Jason Sullivan used these various, related "Atlas" companies to carry out a long-running scheme targeting elderly consumers. First, on behalf of Atlas Collectibles and later Atlas Coins, they fraudulently and deceptively sold precious metals and coins to the Plaintiff, Beverly Van Gundy (hereinafter "Plaintiff" or "Mrs. Van Gundy") and other consumers at inflated prices; and subsequently, Antonelli, on behalf of CARI-Atlas, converted precious metals and coins from Mrs. Van Gundy, presumably to recycle them back into the CARI-Atlas operation for overpriced resale to other unsuspecting victims. In essence, Sullivan, Antonelli and the Atlas Companies defrauded Mrs. Van Gundy twice: first, by way of

---

[1]  The first several "Atlas Gemstones & Rarities" invoices Mrs. Van Gundy received in 2017 listed an address of "112 South Country Road, Bellport Village, NY 11713" and a telephone number of "(631) 803-8648." Beginning in 2018, Atlas Collectibles moved operations to the 90 Colin Drive, Holbrook, New York address and changed the telephone number to "(877) 442-8527" (that is, ("(877) 44 ATLAS") which has remained the address and telephone number for each of the Atlas Companies to the present.

[2]  Significant "tells" of fraudulent coin dealers include periodic name changes and multiple assumed names. Atlas' Counsel admitted that his clients have changed their corporate identity several times in the span of seven years. *See,* ECF No. 19. Pointedly, CARI-Atlas now presents a fictitious name on the front door of its place of business—"Tri-State Assets, Inc." an entity that does not exist according to the New York Department of State, Division of Corporations. Nonetheless, the address and the telephone number on the door are exactly the same address and telephone number listed on the "Atlas Gemstones & Rarities" and "Atlas Rare Coins" invoices the Atlas Companies sent to Plaintiff after December 2017. The Atlas Companies cycle through names to mask their fraudulent business practices and to make the pleading and prosecution of fraud-based claims against them difficult.

the initial fraudulent coin sales and then by converting her coins and failing to adequately compensate her for them.

**3.**     Beverly Van Gundy is an 80-year-old widow, and a citizen and resident of California.  In June 2017, Mrs. Van Gundy saw a magazine advertisement for a new gold coin, but when she inquired about it via telephone, the Defendants, Antonelli and Sullivan, as representatives of the Atlas Companies, convinced her instead to purchase numismatic[3] coins based upon representations that the coins would result in high returns. Although she admitted to Antonelli and Sullivan, as representatives of the Atlas Companies, that she knew very little about precious metals and numismatics, Mrs. Van Gundy was intrigued by and succumbed to Antonelli's and Sullivan's sales pitch and purchased Benjamin Franklin silver half-dollars. Thus began the financial exploitation of Mrs. Van Gundy by Antonelli, Sullivan and the Atlas Companies.

**4.**     Over the course of four years, Antonelli, sometimes with Sullivan also on the telephone and always operating under Sullivan's direction and control, convinced Plaintiff to make ninety-one (91) distinct precious metal product purchases from Atlas Collectibles and Atlas Coins, as evidenced by fifty-eight (58) "Atlas" invoices, for an aggregate sales price of Five Hundred Thousand Six Hundred Sixty and 19/100 Dollars ($500,660.19). Antonelli, under Sullivan's direction and sometimes with Sullivan's active participation, convinced Mrs. Van Gundy to make these coin purchases by falsely claiming the purchases were "investments" at "dealers' cost" with a substantial likelihood of a high rate of return. Antonelli and Sullivan were so effective in selling the coins to Plaintiff that they even convinced her to move her assets from other, conventional

---

[3] Numismatics is the study or collection of currency, including coins, tokens, paper money, medals and related objects. Specialists, known as numismatists, are often characterized as students or collectors of coins, but the discipline also includes the broader study of money and other means of payment used to resolve debts and exchange goods.

investments to precious metal coins. However, the original purchase prices for the coins that Antonelli and Sullivan, on behalf of Atlas Collectibles and later Atlas Coins, sold to Mrs. Van Gundy were not the values represented by Antonelli and Sullivan on behalf of Atlas Collectibles and Atlas Coins. Instead, the true fair market value of the fraudulently overpriced precious metal coins was but a fraction of the amount Mrs. Van Gundy paid—just $189,655.00. In a nutshell, Antonelli, at Sullivan's direction and sometimes with Sullivan also on the telephone calls (and through them Atlas Collectibles and Atlas Coins) defrauded Mrs. Van Gundy of $311,005.19 of her life savings. This is the "First Fraud."

5.     Once Plaintiff's available funds began to be depleted, and, as a result, her purchases of coins from Atlas Collectibles and later Atlas Coins began to slow, Antonelli on behalf of CARI-Atlas launched phase two of the cynical fraudulent scheme against Mrs. Van Gundy. In 2021, claiming the COVID pandemic provided an unparalleled opportunity for Mrs. Van Gundy to realize even higher returns, Antonelli, now operating solo through CARI-Atlas, enticed Plaintiff to ship the coins she had already purchased from Atlas Collectibles/Atlas Coins at grossly overinflated prices, along with other coins she owned, to Antonelli (at his home address: 7 Francis Street, East Setauket, New York) "on consignment" allegedly to sell at auction with Antonelli's (and CARI-Atlas') assurance that Mrs. Van Gundy would realize an "in-pocket" return of $1.1 million after fees and commissions. Antonelli claimed that he had checked with reputable auction companies three (3) times and assured Plaintiff of the values represented and the return on investment. Antonelli further agreed to send Plaintiff a "good faith" downpayment as soon as he received the coins.

6.     In reliance upon these representations, Mrs. Van Gundy boxed up her coin collection and on September 17, 2021, shipped her coins using a shipping label provided by Antonelli to "C.

Antonelli, ATLAS" at Antonelli's home address in East Setauket. In furtherance of the scheme, Antonelli sent Mrs. Van Gundy two checks described as a "good faith" downpayment, one dated October 5, 2021 in the amount of $20,000.00 and a second dated October 14, 2021 in the amount of $224,915.00 for her shipped coins. **Both checks were drawn on a bank account with the name "Atlas Rare Coins, Inc."** After a few weeks, Mrs. Van Gundy began inquiring as to the results of the auctions, and Antonelli became evasive and began to dodge and stall her. Finally, in early 2022, Mrs. Van Gundy reached Sullivan on the telephone and confronted him about the status of her coins and the estimated auction value. Surprisingly, Sullivan admitted to Mrs. Van Gundy that Antonelli originally oversold the coins to her and that it was wrong. Sullivan also claimed that he had warned Antonelli that he needed to stop over-selling coins.

7.      After repeated calls, Antonelli finally answered and informed Mrs. Van Gundy that he did not send her coins to auction as represented but rather that he had gone "another way"[4] and that he had already paid her for the coins he had sold. When Mrs. Van Gundy then demanded that Antonelli and CARI-Atlas return the coins to her with a full accounting, Antonelli and CARI-Atlas returned just eight (8) coins valued at approximately $12,570.00, but they have never provided her an accounting. Mrs. Van Gundy then had a professional appraisal performed on the coins shipped to Antonelli. Based upon the inventory, as of October 1, 2021, the fair market of the coins was $629,468.40.[5] In sum, as a direct result of the Antonelli's actions and fraudulent misrepresentations on behalf of CARI-Atlas—including outright thievery—Mrs. Van Gundy has incurred losses of

---

[4]  It is a common scam technique for unscrupulous coin dealers to represent to coin holders that they will provide a free appraisal of coins. Once the coin dealers get possession of the coins, they tell the owner that their coins can be auctioned for a profit. Unfortunately, the promised auctions never occur. It is simply a delay tactic. The coin dealers instead sell the coins to another naïve consumer, leaving the original owner of the coins with nothing or, at most, a fraction of the coins' value.

[5]  *See* Exhibit 2, a compilation of the fair market value of the coins as of October 1, 2021.

$371,983.40. This is the "Second Fraud" upon Mrs. Van Gundy. It is against this backdrop that the elderly Beverly Van Gundy files this complaint.

8.      Mrs. Van Gundy brings this action under New York common and statutory law against Antonelli, Sullivan, and the three (3) Atlas Companies (Atlas Collectibles, Atlas Coins and CARI-Atlas) for their deceptive, unlawful, false, misleading and unconscionable misrepresentations and sales tactics that resulted in damages to Mrs. Van Gundy by: (a) inducing her to purchase collectible numismatic, semi-numismatic and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented which resulted in losses of $ 311,005.19 and (b) inducing her to ship those coins, as well as coins she had obtained from other sources, back to Antonelli at "Atlas" for "consignment sale" based upon the representation that she would receive at least $1,100,000.00 net from the "auction" but, instead, absconding with her coins, resulting in additional losses of $371,983.40. Plaintiff seeks to recover actual damages ($682,988.59), consequential damages, punitive damages, statutory treble damages, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## JURISDICTION AND VENUE

9.      This Court has diversity jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a), as Plaintiff is a citizen of California and all Defendants are citizens of states other than California, and the amount in controversy exceeds $75,000 exclusive of interest, costs and attorneys' fees. This Court has *in personam* jurisdiction over Defendants because at all relevant times Defendants resided, maintained citizenship, were found, had agents, conducted business and/or sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to Plaintiff in and/or from New York.

10.     At all relevant times, Defendants resided, were found, had agents and/or conducted business in the Eastern District of New York. Defendants sold the collectible numismatic, semi-numismatic, and bullion coins at issue in this case to Plaintiff in and/or from the Eastern District of New York, and Plaintiff shipped the coins at issue to Defendants in the Eastern District of New York for "consignment sale." A substantial part—if not all—of Defendants' wrongful acts and omissions occurred in the Eastern District of New York.  Accordingly, venue is proper in this Court pursuant to 28 U.S.C § 1391(a).

## PARTIES

11.     Plaintiff Beverly Van Gundy is a citizen and resident of California.

12.     Defendant Atlas Rare Coins, Inc. (d/b/a Tri-State Assets, Inc., Tri-State Assets, Atlas Gemstones & Rarities and Atlas Gemstones, Inc.) ("**Atlas Coins**") is a New York corporation incorporated on October 2, 2020, with its principal place of business at 90-7 Colin Drive, Holbrook, New York 11741.  As of May 10, 2023, the name on the door at said address was "Tri-State Assets, Inc.," an entity not registered with the New York Department of State, Division of Corporations. In November 2020, Defendant Sullivan transferred control, in whole or in part, to Defendant Antonelli.

13.     Defendant C.A. Rarities, Inc. (d/b/a Tri-State Assets, Inc., Tri-State Assets and Atlas Rare Coins, Inc.) ("**CARI-Atlas**") is a New York corporation incorporated on July 8, 2021 by Defendant Antonelli and which that same month filed an assumed name certificate to do business under the name "Tri-State Assets." Its principal place of business is located at 90-7 Colin Drive, Holbrook, New York 11741. As of May 10, 2023, the name on the door at said address was "Tri-State Assets, Inc.," an entity not registered with the New York Department of State, Division of Corporations.

7

14.     Defendant Atlas Collectibles Inc. (hereinafter "**Atlas Collectibles**") (f/k/a Atlas Gemstones, Inc. and d/b/a Atlas Gemstones & Rarities and Atlas Rare Coins, Inc.) is a New York corporation incorporated on May 2, 2016 that by amendment changed its name to Atlas Collectibles, Inc. on March 8, 2018. It has operated under the name "Atlas Gemstones and Rarities." This company is still active according to the New York Department of State, Division of Corporations. The corporation's principal place of business at 90-7 Colin Drive, Holbrook, New York 11741. As of May 10, 2023, the name on the door at said address was "Tri-State Assets, Inc.," an entity not registered with the New York Department of State, Division of Corporations.

15.     Defendant Christian Antonelli ("**Antonelli**") is a natural person and a citizen and resident of the State of New York. His address is 7 Francis Street, East Setauket, NY 11733. Antonelli is an owner of Defendant Atlas Coins -- which he acquired, in whole or in part, in November 2020 from Defendant Sullivan.  On or about July 8, 2021, he formed CARI-Atlas.  Defendant Antonelli handled telemarketing sales for Defendant Sullivan and Defendants Atlas Collectibles and Atlas Coins.

16.     Defendant Jason Sullivan ("**Sullivan**") is a natural person and a citizen and resident of the State of South Carolina. His last known address is 5098 Oat Fields Dr. Myrtle Beach, SC 29588. Upon information and belief, Sullivan is a prior part-owner, founder and operator of Defendants Atlas Collectibles and Atlas Coins.

17.     The Atlas Companies (under their legal names and/or under their various assumed names) market and sell collectible numismatic, semi-numismatic and bullion coins directly to consumers over the telephone, through advertisements in print media, social media and via their website(s) and are, or at all times pertinent, were, principally owned and controlled by Defendants Antonelli and Sullivan who manage, operate and treat the Atlas Companies as their personal bank accounts

8

in such a way that the Atlas Companies are their alter-egos because corporate formalities are not followed, and separate and distinct books and records are not maintained. The Atlas Companies are undercapitalized, and the line between owner/manager and the entities is substantially blurred to the point that it is difficult, if not impossible, to determine where the individual Defendants end and the Atlas Companies begin. The Atlas Companies exist as mere tools and business conduits for Antonelli and Sullivan (and possibly other owners) which has resulted in an injustice to Mrs. Van Gundy and the diminution of available resources from which she may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct.

## FACTUAL BACKGROUND

### A. The Predatory Precious Metals Market

**18.**     The precious metals industry is highly complex and nuanced, making it the ideal market for deceptive and fraudulent activity. Precious metals are naturally-occurring metals that carry a high economic value, often due to scarcity or global demand. These metals, including gold, silver, platinum, and palladium, can be sold as physical assets, in the form of bars, bullion, or coins, or as futures contracts or other speculative investments. Although precious metals prices are volatile, they tend to increase during economic turmoil and stabilize during more prosperous times as contrasted with the price fluctuations experienced by more traditional investment products, including stocks, bonds, and real estate. It is common to see financial reports and media headlines touting the gains in value experienced by precious metals when contrasted against poor yields in other investments during times of economic uncertainty. Interestingly, this market is largely unregulated as "precious metal dealers fall 'within a 'gap'' in the federal regulatory system."[6] For

---

[6] *See* David J. Gilberg, *Precious Metals Trading-The Last Frontier of Unregulated Investment*, 41 Wash. & Lee L. Rev. 943 (1984) (https://scholarlycommons.law.wlu.edu/wlulr/vol41/iss3/4) for an interesting overview of the precious metals' trading industry.

several decades, fraudsters, sharp operators, and con men have taken advantage of this lack of regulation to lure unsophisticated and trusting customers into purchasing precious metals at prices so far above the fair market value as to nullify any reasonable return on investment, thereby resulting in devastating losses of elderly customers' life savings and leaving them with no recourse or chance of recovery.

19.    While there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry"), operating in the penumbra of the reputable dealers, has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[7] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors and mint populations, unethical coin dealers continue to confuse and confound the reasonable consumer with deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The complexities and unfamiliarity of the precious metals industry to the normal consumer provide fertile ground for fraudulent schemes such as those executed by Defendants and experienced to her great detriment by Mrs. Van Gundy in this case.[8]

20.    The ploys used by the Defendants have been condemned by the United States Senate and various Federal and State agencies and commissions. Nine years ago in 2014, a United States

---

[7] *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

[8] *See* note 2, *supra*. In 2010, the FTC elaborated on the precious metal fraudulent schemes identical to those used by the Defendants. *See* https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-precious-coins-and-bullion-disclosure-act/100923coinsbulliamact.pdf.

Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[9] Unfortunately, while federal and state regulators continue to aggressively pursue the worst actors in the industry, *"many other bad actors are able to continue their shady dealings with impunity."*[10] In other words, these coin fraud schemes have not abated, and dealers such as the Defendants continue to victimize unsuspecting, elderly customers such as Mrs. Van Gundy.

**21.**   The Federal Trade Commission has testified before the United States Senate that it had "*observed a proliferation of schemes targeting financially-distressed consumers. These schemes have included deceptive telemarketing operators posing as "brokers" and offering precious metals as purported high-profit, low-risk investments. By failing to disclose key information about the investments' terms and high costs, these brokers deceive consumers into believing that the investments provide a safe and secure vehicle for savings. Sadly, many Americans have lost their life savings to these unscrupulous operations*"[11] as has, unfortunately, Mrs. Van Gundy.

**22.**   The Commodities Futures Trade Commission and numerous States' Attorneys General have filed numerous actions attempting to curtail illegal over-charging for precious metal products.[12] The New York Attorney General has published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary*

---

[9]   *See Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation, at 17* (hereinafter "US Senate Report").

[10]   US Senate Report at 3.

[11]   *See* https://www.ftc.gov/legal-library/browse/prepared-statement-federal-trade-commission-exploring-perils-precious-metals-market; and https://www.ftc.gov/sites/default/files/documents/public_statements/prepared-statement-federal-trade-commission-precious-coins-and-bullion-disclosure-act/100923coinsbulliamact.pdf.

[12]   *See, e.g.*, http://metalsandbarrickcapitalreceivership.com/wp-content/uploads/2020/10/Complaint.pdf.

*investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims.*"[13] However, even though these Federal and State agencies have stepped up enforcement actions, *"many unscrupulous precious metal dealers are still able to cheat customers due to a lack of transparency within the industry and relatively little monitoring of their business practices."*[14]

**23.**   Government actors aside, the legitimate precious metals industry, comprised of professional numismatists, financial analysts, and reputable dealers, recognizes the creeping taint of fraudulent over-selling of precious metals. In 2019, the Professional Numismatists Guild[15] ("PNG"), issued warnings about grossly overpriced gold coins.[16] The PNG and the American Numismatic Association ("ANA") developed acceptable industry standards for selling and pricing of the various types of precious metal products. Industry associations have defined limits as to what constitutes a legitimate sales mark-up on precious metal coins to assist consumers to avoid the traps laid by fraudsters. For example, the National Futures Association ("NFA") advices that gold bullion should not be purchased at more than 5-10% above spot price.[17]

---

[13] *See* https://ag.ny.gov/common-investment-scams. Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g.,* https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins (Texas) and https://www.ag.state.mn.us/consumer/publications/CoinDealers.asp  (Minnesota).

[14]  US Senate Report at 3.

[15] The Professional Numismatists Guild (PNG) is a highly regarded nonprofit organization composed of the country's top numismatic experts who adhere to a strict code of ethics in the buying and selling of numismatic items.  *See* www.pngdealers.org.

[16] *See* https://www.numismaticnews.net/world-coins/beware-of-grossly-overpriced-gold-coins.

[17] The NFA adopted the U.S. Commodities Futures Trade Commission's bright line limits. *See* https://www.nfa.futures.org/investors/investor-newsletters/January-2021.html.

### B. **The Coin Fraudsters Prey Upon the Elderly.**

24.    The U.S. Senate Report revealed that the "*overwhelming number of victims in precious metal fraud are seniors.*"[18] Likewise, the FBI found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it"* and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[19] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[20] True to form, Defendants in this case targeted the elderly Mrs. Van Gundy.

### C. **The Defendants Use Misleading and False Marketing Claims.**

25.    Relying upon market complexity and lack of oversight of the precious metals industry to their benefit and to their unwitting customers' detriment, Antonelli and Sullivan, in their individual capacities as well as their capacities as principals and representatives of the Atlas Companies, practice a subterfuge upon naïve and unsuspecting customers/consumers. They operate their telemarketing operation for the sole purpose of selling collectible numismatic, semi-numismatic and bullion coins[21] directly to customers/consumers over the telephone (and/or via the internet and

---

[18]  *See* US Senate Report at 16.

[19]  *See Fraudster Targeted Elderly Victims*" https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.

[20]  *See, e.g.,* https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.

[21]  In this context, the term "numismatic coin" refers to collectible coins whose value is based upon other qualities in addition to the metal content of the coin, such as appearance, population, grade, rarity, and other attributes.  "Semi-numismatic coin" refers to a coin whose value partially derives from its numismatic value and mainly from the value of its precious metal content.  "Bullion coins" derive their value almost entirely from the fair market value of the precious metal content, commonly referred to as the "spot value."

print media advertisement), and, in this case, re-obtaining coins ostensibly to sell "on consignment" while, in reality, stealing those coins. Antonelli and Sullivan, in their individual capacities as well as their capacities as principals and representatives of the Atlas Companies, make many hundreds of intrastate and interstate sales calls per month — via the telephone — utilizing one or more of the following unlawful, false, misleading, and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry. These unscrupulous sales practices are specifically designed to prevent the customer/consumer from making informed decisions.

**a. Misrepresentations of "High-Reward/Low-Risk" Safe Investments:**

(1)     Claiming that precious metal coins are safe, secure investments that promise significant returns but failing to disclose that the significant markup or fees charged at the time of purchase created a substantial loss of the customer's/consumer's investment simultaneously with the purchase and that the customer/consumer would never recover because the precious metal products would have to appreciate to historical highs that have never been realized just for the customer/consumer to break even;

(2)     Claiming that certain coins are "rare," "valuable," and provide a "better" investment, when in truth such coins have limited numismatic and collectible value (if any) while at the same time ignoring the significant and immediate cost imposed on customers/consumers in the form of fraudulent pricing;

(3)     Claiming that the coins possessed certain qualities and will substantially appreciate quickly with full knowledge that such representations are false and misleading;

(4)     Representing that the coins being offered will outperform other types of investments—without any underlying data to support such assertions;

(5)     Claiming that precious metals represent a "safe haven" in a volatile economic market;

(6)     Claiming guaranteed high returns on the contemplated investment in precious metals, when in truth there is no way to predict the future rate of return on precious metals;

(7)     Convincing the customer/consumer to trade previously-purchased coins for other coins with representations that the customer/consumer will thereby attain a better investment position, when, in fact, the trade results in the customer/consumer experiencing even greater losses;

(8)     Misrepresenting that the customer/consumer benefited from "special pricing" and "early low prices" when the customer/consumer actually paid significant markups (margins) on the coins;

(9)     Misrepresenting that the customer/consumer would realize unusually high rates of return on investment due to various fictitious market conditions;

(10)    Misleading the customer/consumer with false representations as to the "no tax" aspects of precious metal coins by representing that the increased value of such coins are "tax-free" and that the customer/consumer is thereby avoiding tax on the appreciation or rate of return earned and/or misleading the customer/consumer to buy or trade for pre-1933 gold coins and representing that by making such purchases or trades the customer/consumer would avoid tax issues and liability;

(11)    Claiming that investments in numismatic and modern graded bullion are non-reportable or "tax-free" when in truth customer/consumer must ultimately pay taxes on capital gains, irrespective of the classification of the coins;

(12)    Upselling customers/consumers from bullion to numismatics via representations that numismatic coins provide a better investment than bullion when there is no historical basis, much less reliable data, to support that claim;

(13)    Offering a "no-risk money back guarantee" that either is illusory or has significant fees attached to it.; and

(14)   **Failing** to tell customers/consumers is that the precious metal coins have been marked up over 40% of the market value of the metal and will be bought back at the market value (usually less than melt value) less a liquidation fee or commission.[22]

**b.   Misrepresenting the availability of the "rare" precious metal coins:**

(1)   Pressuring the customer/consumer into believing the need to purchase at a purported substantial discount was "immediate" and that the customer/consumer had to "act right away" to achieve large profits or else lose a good deal and that the coins are elusive and will soon become unavailable, thereby creating a sense of urgency for the customer/consumer to consummate the sale; and

(2)   Misrepresenting that numismatics are preferred over precious metals bullion because there is at risk of bullion being "confiscated" by the government[23] when there is no current law under with the government can recall gold nor any way to predict that any item is immune from a theoretical future recall, thereby creating immediate pressure for the customer/consumer to move into numismatics instead of bullion.

**c.   Misrepresenting the value of the precious metal numismatic coins:**

(1)   Utilizing data from other, similar numismatic coins that have significantly different attributes and qualities to represent that the coin being purchased is of greater value or potential value than its actual fair market value;

(2)   Misrepresenting that the coin is "rare" or of limited population when the populations used are presented in such a way as to mislead or deceive customers;

(3)   Mis-grading or "upgrading" the coin to justify fraudulent markups; and

---

[22] The State of California has cited an undisclosed 33% markup by Lear Capital as fraudulent. *See California v Lear*, https://docs.simpluris.com/websites/13abd9da-de42-4adb-8903-54649f9c5695/documents/fcc995e5-6132-42f9-8608-aea59c728a84/CA%20Complaint(11118433.2).pdf.

[23] This ploy is based upon President Franklin Roosevelt's 1933 executive order, in which the government recalled most of the gold owned by private citizens but provided an exception for "rare and unusual coins." https://www.presidency.ucsb.edu/documents/executive-order-6102-requiring-gold-coin-gold-bullion-and-gold-certificates-be-delivered. Historically criticized, it was repealed in 1974 by President Gerald Ford. *See* https://www.cmi-gold-silver.com/gold-confiscation-1933/.

(4)     Failing to disclose that the purchase price is over 40% (and often significantly higher) above the market value of the coins and that any return or resell of the coin will be for less than the market value.

**d.  Misrepresenting their expertise, experience, and qualifications:**

(1)     Falsely claiming that they possess expert knowledge, qualifications, and experience in precious metals when they do not; and

(2)     Falsely claiming that they have specialized financial investment knowledge and experience regarding the precious metals market when they do not.

**e.  Taking, selling or charging for coins without authority:**

(1)     Illegally charging the customer's/consumer's credit card or banking account information obtained via prior transactions to ship (or, even worse, without shipping) coins to the customer/consumer without her permission or authority and then, when confronted, making false representations to confuse and obfuscate the issues;

(2)     Fraudulently obtaining the customer's/consumer's precious metal coins by offering to "resell" or "auction" the customer's coin collection "on consignment" with no intent of reselling or auctioning the coins, but instead, after receiving the coins from the customer, converting (stealing) the coins for their own use and benefit;

(3)     Fraudulently obtaining the customer's/consumer's precious metal coins by "baiting" customers with claims that the customer's/consumer's coins were worth a great amount, then after receiving shipment of the coins from the customer/consumer, switching the story and paying the customer/consumer only a fraction of the prior estimated value;

(4)     Fraudulently obtaining the customer's/consumer's precious metal coins by claiming some economic or social upheaval (e.g., the COVID pandemic) had created a unique opportunity to sell or buy precious metals, but then only paying the customer/consumer only a fraction of the represented value of the coins; and

(5)     Agreeing to buy the customer's/consumer's coins over time or broker sale of the coins but, after obtaining possession of the coins, failing to honor that agreement.

**f. Stalling or confusing customers to keep them from discovering or realizing the fraud:**

(1)    Forestalling customer/consumer complaints by utilizing the false pretext that they will broker the resale or auction of the customer's/consumer's coins for a substantial profit, when such inducement was merely intended to stonewall the customer/consumer, obfuscate the transactions, and delay discovery of the fraudulent purchase price at which the coins were sold in the first instance;[24]

(2)    Misrepresenting the present market value of the purchased coins to prevent or delay the customer/consumer from determining the actual market price of the coins; and

**g. Various other acts and practices that may be uncovered during discovery.**

In this case, Antonelli and Sullivan, in their individual capacities as well as their capacities as principals and representatives of the Atlas Companies, utilized, and continue to utilize, one or more of the foregoing unlawful, deceptive, false, misleading, and unconscionable sales and business tactics (which have been identified as fraudulent and prosecuted by various governmental entities[25]) as part of the Atlas Companies' daily on-going business model.

26.    Both in their individual capacities as well as their capacities as principals and representatives of the Atlas Companies, Antonelli's and Sullivan's repeated misrepresentations and sales of overpriced coins to Mrs. Van Gundy are neither isolated incidents nor unique to her interactions and experiences with the Atlas Companies. Rather, utilizing these deceptive and fraudulent tactics, Antonelli and Sullivan have sold millions of dollars of over-priced coins to thousands of other customers over the course of multiple years, and continue to do so.

---

[24] When discovery does begin, the Defendant coin dealers will claim that they no longer have any relevant documents concerning the transactions at issue (including cost of goods sold, commissions paid to their telemarketer agents on the sales, or any other documents).

[25] *See California v Lear*, pages 7-9, https://docs.simpluris.com/websites/13abd9da-de42-4adb-8903-54649f9c5695/documents/fcc995e5-6132-42f9-8608-aea59c728a84/CA%20Complaint(11118433.2).pdf.

### D.  **The First Fraudulent Scheme — Ensnare the Plaintiff**

**27.**      Plaintiff, Beverly Van Gundy is an 80-year-old widow whom Antonelli and Sullivan, as principals and representatives of Atlas Collectibles and Atlas Coins, convinced to invest a substantial portion of her life savings in gold and silver coins. In June 2017, Mrs. Van Gundy saw an advertisement on the back cover of a magazine that Atlas Collectibles was offering newly minted gold coins for sale at "low prices." When Mrs. Van Gundy called the telephone number listed in the advertisement, she spoke with Antonelli, and Sullivan,[26] who represented that they were knowledgeable about precious metals for both investing and collecting. When she admitted that she knew very little about precious metals and numismatics, Antonelli and Sullivan recommended that she would earn more by investing in silver Benjamin Franklin Half-dollars which they would sell her at "dealers' cost." Mrs. Van Gundy was intrigued by Defendants' sales pitch and succumbed to purchasing and investing in the Ben Franklin Half-dollars. Mrs. Van Gundy, knowing nothing about numismatics, placed her confidence in Antonelli's and Sullivan's representations both in their individual capacities and as agents and representatives of the corporate defendants concerning the value of the coins marketed and sold to her. She reasonably relied on their superior expertise and knowledge of the coins. Moreover, she never initiated a single purchase. Every purchase was initiated by a telephone call from Antonelli, Sullivan, or both to her. They selected the coin(s) and represented the value(s) of the coin during these calls. When Mrs. Van Gundy purchased the coin(s), Antonelli and Sullivan again misrepresented the value of the

---

[26] Mrs. Van Gundy remembers that her primary telephone contact was Antonelli, but she also spoke to Sullivan on her first contact with the Atlas Companies. Early on and at different times during her dealings with Atlas Collectibles and Atlas Coins, Antonelli would "patch" Sullivan into their calls. She received so many calls from Atlas Collectibles over several years that it is impossible to pinpoint exactly which calls involved Sullivan by date or transaction.

coin(s) she purchased on the corresponding Atlas Collectibles and Atlas Coins invoices sent to her.

28.     From June 2017 forward, Mrs. Van Gundy began to receive a constant barrage of phone calls from Antonelli, and sometimes both Antonelli and Sullivan who double-teamed Mrs. Van Gundy, and "pitched" Mrs. Van Gundy to purchase various "fantastic, rare and valuable coins" that they represented to be of significant investment value and that they represented she was getting at "dealers' cost." These included historical common date coins,[27] numismatic coins, and "graded modern bullion"[28] that Antonelli and Sullivan claimed were a sound investment. They further represented to Mrs. Van Gundy that she was getting "great deals," that the coins would retain their value, that the coins were unique and/or rare, that she needed to take immediate advantage of the opportunity and that any delay would result in her losing the opportunity to purchase and own a valuable coin. In reality, Antonelli and Sullivan failed to (and made sure not to) advise Mrs. Van Gundy that (1) she was paying substantially more than the fair market prices for the coins and (2) that she was incurring immediate and substantial losses with each transaction, ultimately draining her life savings.

29.     During the sale of coins to Mrs. Van Gundy from June 2017 to November 2020, Sullivan owned and operated Atlas Collectibles, but both Sullivan and Antonelli were actively marketing coins to Mrs. Van Gundy via telephone on Atlas Collectibles' behalf. During this period, Sullivan

---

[27] "Common date" means coins of a particular mintage issue that is readily available and has little numismatic value.

[28] Numismatic coins are graded on a numerical system, commonly referred to as the *Sheldon scale* that ranges between 1 and 70.  The numerical grade is assigned based on a number of attributes, such as luster (i.e. shininess), strike (i.e. how well the mint connected with the blank coin in manufacturing), and color (i.e. the dye variations used in striking the coin). The most valuable coins are uncirculated coins, commonly referred to as mint state (MS) and designated with grades from 60 to 70.  Thus, a coin with a grade MS-70 is a perfect coin in original, uncirculated condition and the highest grade for coins minted for general circulation. The grades are assigned for a nominal fee by independent grading services. The industry considers the premier professional grading services to be Numismatic Guaranty Corporation (NGC) and Professional Coin Grading Services (PCGS).

trained, coached, assisted and directed Antonelli on how to sell (and upsell) precious metal coins to Atlas Collectible's customers/consumers, including Mrs. Van Gundy. Sullivan, with Antonelli's knowledge, cooperation and assistance, would provide a list of coins to sell and establish the "base-price" for each coin without establishing any upper price limit. Thus, even when Sullivan was not on the telephone calls with Mrs. Van Gundy, he allowed and encouraged Antonelli, acting as a telemarketing agent for Atlas Collectibles and later Atlas Coins, to increase the sales prices of coins to achieve criminally outlandish and fraudulent markups in sales to unsophisticated, trusting customers/consumers like Mrs. Van Gundy. Under Sullivan's framework for Atlas Collectibles and later Atlas Coins, telemarketers such as and including Antonelli, were paid on commission, which incentivized Antonelli, and possibly others whose names are unknown to Mrs. Van Gundy, to sell the coins for much higher prices than the "base-prices." Sullivan, in turn, as principal of Atlas Collectibles and later Atlas Coins would realize higher profits on such sales.

**30.**     From November 2020 to July 2021, Antonelli stepped in as principal and owned and operated Atlas Coins and CARI-Atlas in their various iterations. Antonelli continued the same deceptive business practices utilized and taught to him by Sullivan and continued the predatory practices upon Mrs. Van Gundy and other elderly consumers from around the country. Upon information and belief, Sullivan transferred his interest in Atlas Coins to Antonelli because he realized the scope of the fraud perpetrated against Mrs. Van Gundy (and undoubtedly others) went too far and he attempted to distance himself from the day of reckoning; however, Sullivan continued to receive payments from that business as part of the sales agreement.

**31.**     Upon information and belief, Antonelli lacks the education or sophistication to be an expert in anything, much less numismatics. He parrots the fraudulent coin scheme taught to him by

Sullivan, who modeled and replicated these practices from the likes of the Romanos and Du Purtons, the most infamous coin fraudsters of this district.

**32.**      In truth, Sullivan and Antonelli were not specialists in anything but manipulation of the supply of coins in the everyday numismatic marketplace to fill the coffers of the Atlas Companies and their own pockets. In marketing coins, Sullivan and Antonelli would obtain a listing of available coins at fair market value from various sources, such as auction houses, common coin dealer sites, "wholesalers"[29] or coin shows. Sullivan and Antonelli would use this list to call customers/consumers, and if successful in pressuring the customer/consumer to buy the coin, they would *then* purchase the coin at fair market value from the marketplace and resell the coin to the customer/consumer at a substantial markup.[30] They would not tell the customer that she could buy the coin from this same marketplace, at the same fair market price. Nor would they tell the customer/consumer that there was a substantial markup over the fair market value.  What they would represent to the customer/consumer was that the coin was "rare," was limited in population, that she "had to act quickly," that such coins were a high-reward/low-risk investment and that the coins were being sold at fair prices.

**33.**      In this case, once Antonelli, under Sullivan's direction, and sometimes with his active assistance, convinced Mrs. Van Gundy to purchase a coin at the hyper-inflated price based on the misrepresentations they made to her during a sales call via the telephone (and after she had funded the purchase), Sullivan and Antonelli would then go into the marketplace and buy the coin at the fair market value. The coins were then shipped to Mrs. Van Gundy at the supposed "fair price" as

---

[29] Wholesalers are nothing but coin dealers that buy a large number of coins at fair market value from various sources and then peddle a list of available coins to under-capitalized coin dealers on a daily or weekly basis.

[30] In Mrs. Van Gundy's circumstance, the markup sometimes exceeded 2000%.

again represented on an "Atlas" invoice to Mrs. Van Gundy. Sullivan would then pay Antonelli a sizable commission, Sullivan would pocket a substantial profit, and Mrs. Van Gundy would be left with coins worth a fraction of what she paid for them as listed on the "Atlas" invoice. Simply put, the coin(s) Antonelli and Sullivan, as representatives of Atlas Collectibles and later Atlas Coins, sold to her and the prices she paid were not what she bargained for. The coins were substantially overvalued and overpriced, and Antonelli and Sullivan were only too aware—and too eager to take advantage—of the fact that Mrs. Van Gundy did not understand the subtleties and nuances of the numismatic industry as they preyed upon her.

**34.**   Through this fraudulent scheme, Antonelli and Sullivan convinced Mrs. Van Gundy to enter into ninety-five (95) separate transactions evidenced by fifty-eight (58) distinct "Atlas" invoices over a four (4) year period, between June 30, 2017 and July 8, 2021,[31] through which they drained a significant portion of her life savings. This series of purchases was tainted by the various high pressure and fraudulent sales tactics outlined and described above and Antonelli's and Sullivan's representations that Mrs. Van Gundy would realize a substantial return on her investment, that the coins purchased were a safe investment and that she was paying fair market value (or less) for her coins. Aside from perhaps Mrs. Van Gundy's initial inquiry in response to an "Atlas" advertisement, each and every transaction documented below was initiated by a telephone call from Antonelli, with Sullivan sometimes joining and participating, to the Plaintiff. During these calls Antonelli and Sullivan made false representations as to the value of the coin(s) they were offering Mrs. Van Gundy, and the coin sales by Antonelli and Sullivan on behalf of Atlas

---

[31] From June 30, 2017 through November 25, 2020, Mrs. Van Gundy's coin purchases were from Atlas Collectibles which utilized an "Atlas Gemstones & Rarities" invoice. From December 2, 2020 through her last "Atlas" coin purchase on July 8, 2021, she was buying from Atlas Coins, which used an "Atlas Rare Coins" invoice. However, after December 2017, she was at all times dealing with the same telemarketers—Antonelli and sometimes Sullivan—calling from the same telephone number, and all of the "Atlas" invoices listed the same business address.

Collectibles and, after November 2020, Atlas Coins to Mrs. Van Gundy were based on deception and fraud; to wit:

**34.1**   On or about 6/30/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff during a telephone call, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase two rolls of Benjamin Franklin 50¢ Gem Proof coins for $800.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1078 again misrepresenting the value of the coin(s) sold to her.[32] The fair market value of these coins as of the date of purchase was just $480.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $320.00. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

**34.2**   On 7/15/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase five (5) common date[33] $5 Gold Liberty Half-Eagle MS63 coins for $4,775.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1095 again misrepresenting the value of the coin(s) sold to her. The fair market value of these coins as of the date of purchase was just $2,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,275.00. This represents a markup of 91%, an amount that is fraudulent and unconscionable.

---

[32]  Supplementing the fraudulent and misleading representations, each "Atlas Gemstones & Rarities" and "Atlas Rare Coins" from 2017 to 2021 sent to Mrs. Van Gundy included the following patently false statement: "Atlas . . . complies with the rules and regulations of the top associations and governing bodies of the precious metals industry. As an authorized dealer of bullion and investment grade coins, we can guarantee the origin, authenticity and quality of every product we offer."

[33]  "Common date," as noted *supra* in note 22, is a term used to refer to numismatic coins that are less rare and relatively inexpensive because they are more available within a series and have a higher surviving number. "Common date" coins can be quite affordable, even when preserved in brilliant uncirculated, mint state grades.

**34.3**  On 8/6/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase five (5) rolls of 1965 Washington Quarters in Proof state for $575.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1168 again misrepresenting the value of the coin(s) sold to her.  The fair market value of these coins as of the date of purchase was just $100.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $475.00. This represents a markup of 475%, an amount that is fraudulent and unconscionable.

**34.4**  On 8/28/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1907 $20 Saint Gaudens Prospector PCGS coin for $1,900.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1191 again misrepresenting the value of the coin(s) sold to her.  The  fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**34.5**  On 8/28/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1908 $20 Saint Gaudens Prospector PCGS coin for $1,900.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1191 again misrepresenting the value of the coin(s) sold to her.  The fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**34.6** On 8/28/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1920 $20 Saint Gaudens Prospector PCGS coin for $1,900.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1191 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,300.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $600.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**34.7** On 9/12/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1922 Silver Peace Dollar - Brilliant Uncirculated for $387.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas" Invoice No. 2017-1230 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $180.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $207.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**34.8** On 9/12/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1923 Silver Peace Dollar - Brilliant Uncirculated for $301.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1230 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $140.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $161.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**34.9**     On 9/12/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1924 Silver Peace Dollar - Brilliant Uncirculated for $43.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1230 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $20.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $23.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**34.10**     On 9/12/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1925 Silver Peace Dollar - Brilliant Uncirculated for $129.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1230 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $60.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $69.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**34.11**     On 10/2/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase twenty (20) rolls of common date Silver Peace Dollars - Brilliant Uncirculated for $860.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1291 again misrepresenting the value of the coin(s) sold to her. The fair market value of these coins as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $460.00. This represents a markup of 115%, an amount that is fraudulent and unconscionable.

**34.12**   On 10/13/2017, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase three (3) rolls of Benjamin Franklin Gem Proof coins for $1,785.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 2017-1345 again misrepresenting the value of the coin(s) sold to her. The fair market value of these coins as of the date of purchase was just $480.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,305.00. This represents a markup of 272%, an amount that is fraudulent and unconscionable.

**34.13**   On 1/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a roll of JFK Gem Proof coins for $375.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1567 again misrepresenting the value of the coin(s) sold to her. The fair market value of these coin as of the date of purchase was just $160.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $215.00. This represents a markup of 134%, an amount that is fraudulent and unconscionable.

**34.14**   On 3/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1904 $2.50 Gold American Quarter-Eagle MS63 coin for $695.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1772 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**34.15**  On 3/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1905 $2.50 Gold American Quarter-Eagle MS63 coin for $695.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1772 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**34.16**  On 3/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1905 $2.50 Gold American Quarter-Eagle MS63 coin for $695.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1772 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**34.17**  On 3/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1906 $2.50 Gold American Quarter-Eagle MS63 coin for $695.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1772 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

29

**34.18**   On 3/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1907 $2.50 Gold American Quarter-Eagle MS63 coin for $695.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1772 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $295.00. This represents a markup of 74%, an amount that is fraudulent and unconscionable.

**34.19**   On 3/22/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase three (3) 1893 $10 Gold American Eagle MS63 coins for $3,450.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1803 again misrepresenting the value of the coin(s) sold to her. The combined fair market value of these coins as of the date of purchase was just $2,250.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,200.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**34.20**   On 3/22/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1899 $10 Gold American Eagle MS63 coin for $1,150.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1803 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $750.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $400.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**34.21**   On 3/22/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1907 $10 Gold American Eagle MS63 coin for $1,150.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1803 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $750.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $400.00. This represents a markup of 53%, an amount that is fraudulent and unconscionable.

**34.22**   On 4/5/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1924 Silver Peace Dollar NGC MS67 for $5,400.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1855 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,280.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,120.00. This represents a markup of 137%, an amount that is fraudulent and unconscionable.

**34.23**   On 4/12/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1923 Silver Peace Dollar NGC MS67 for $3,850.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1890 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,800.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,050.00. This represents a markup of 114%, an amount that is fraudulent and unconscionable.

**34.24**   On 4/26/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1922 Silver Peace Dollar MS66+ CAC for $3,450.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1934 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,045.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,405.00. This represents a markup of 230%, an amount that is fraudulent and unconscionable.

**34.25**   On 4/26/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1925 Silver Peace Dollar MS66+ CAC for $1,795.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1934 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $880.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $915.00. This represents a markup of 104%, an amount that is fraudulent and unconscionable.

**34.26**   On 5/8/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1927-S Silver Peace Dollar MS64+ CAC for $2,850.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-1962 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,528.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,322.00. This represents a markup of 87%, an amount that is fraudulent and unconscionable.

**34.27**   On 6/6/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1928-S Silver Peace Dollar MS64+ CAC for $3,240.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2062 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $823.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,417.00. This represents a markup of 294%, an amount that is fraudulent and unconscionable.

**34.28**   On 6/20/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1912 $5.00 Indian Head MS64+ CAC coin for $7,150.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2104 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $5,150.00. This represents a markup of 258%, an amount that is fraudulent and unconscionable.

**34.29**   On 6/28/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1910 $5.00 Indian Head MS64+ coin for $4,750.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2134 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,750.00. This represents a markup of 138%, an amount that is fraudulent and unconscionable.

**34.30**   On 7/20/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1909-D $5.00 Indian Head MS64+ coin for $3,850.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2202 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,850.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**34.31**   On 8/2/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1914-D $5.00 Indian Head PCGS MS64+ CAC coin for $11,950.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2247 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $9,450.00. This represents a markup of 378%, an amount that is fraudulent and unconscionable.

**34.32**   On 8/28/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1941-S Walking Liberty Half Dollar MS67 for $18,200.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2363 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $7,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,700.00. This represents a markup of 143%, an amount that is fraudulent and unconscionable.

**34.33**   On 10/10/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1897 $20.00 Liberty Double Eagle Prospector Series PCGS coin for $3,600.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2582 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,600.00. This represents a markup of 80%, an amount that is fraudulent and unconscionable.

**34.34**   On 12/5/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase twenty-five (25) rolls of JFK Gem Proof coins for $14,875.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2834 again misrepresenting the value of the coin(s) sold to her. The fair market value of these coins as of the date of purchase was just $4,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,875.00. This represents a markup of 272%, an amount that is fraudulent and unconscionable.

**34.35**   On 12/18/2018, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1881 Morgan Silver Dollar MS65 DPL for $12,250.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-2888 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $11,750.00. This represents a markup of 2,350%, an amount that is fraudulent and unconscionable.

**34.36**  On 1/23/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1922-D Silver Peace Dollar MS67 for $18,500.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3021 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $8,400.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $10,100.00. This represents a markup of 120%, an amount that is fraudulent and unconscionable.

**34.37**  On 3/18/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to exchange five (5) coins she had previously purchased for $75,000.00:

    **(a)** 1945 Walking Liberty MS67 CAC (FMV = $690.00);

    **(b)** 1945-D Walking Liberty MS67+ CAC (FMV = $2,233.00);

    **(c)** 1945-S Walking Liberty MS66+ CAC (FMV = $384.00);

    **(d)** 1880-O Morgan Silver Dollar MS64+ CAC (FMV = 2,640.00);

    **(e)** 1885-O Morgan Silver Dollar MS67+ CAC (FMV = $1,560.00.

*See* "Atlas Gemstones & Rarities" Invoice No. 18-3290. The upshot of this is that Antonelli convinced Plaintiff to trade coins for which she had paid $75,000.00 in exchange for coins with a total fair market value of just $7,507.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $67,493.00. This represents a markup in favor of Defendants of 900%, an amount that is fraudulent and unconscionable.

**34.38**  On 5/22/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1887-S Morgan Silver Dollar MS65+ CAC for $5,150.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3605

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,650.00. This represents a markup of 243%, an amount that is fraudulent and unconscionable.

34.39   On 6/13/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1921 Morgan Silver Dollar MS66+ CAC for $3,420.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3721 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,080.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,340.00. This represents a markup of 217%, an amount that is fraudulent and unconscionable.

34.40   On 6/27/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1937-S Walking Liberty Half Dollar MS66+ CAC for $2,995.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3795 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $630.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,365.00. This represents a markup of 375%, an amount that is fraudulent and unconscionable.

34.41   On 7/24/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1921-D Morgan Silver Dollar MS66+ CAC for $5,125.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3927

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,880.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,245.00. This represents a markup of 78%, an amount that is fraudulent and unconscionable.

34.42   On 8/7/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1879-S $20.00 Saint Gaudens Prospector BU PCGS coin for $4,400.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-3994 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,950.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,450.00. This represents a markup of 126%, an amount that is fraudulent and unconscionable.

34.43   On 9/9/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a roll of 1964 JFK Half-Dollars Gem Brilliant Uncirculated for $5,500.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-4152 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $375.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $5,125.00. This represents a markup of 1,367%, an amount that is fraudulent and unconscionable.

34.44   On 9/24/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1941 Walking Liberty Half Dollar MS67+ CAC for $2,900.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No.

18-4229 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $660.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,240.00. This represents a markup of 339%, an amount that is fraudulent and unconscionable.

34.45   On 10/18/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1943 Walking Liberty MS67+ CAC for $2,206.67 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-4332 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $960.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,246.67. This represents a markup of 130%, an amount that is fraudulent and unconscionable.

34.46   On 10/18/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1943-D Walking Liberty MS67+ CAC coin for $2,206.67 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-4332 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $886.67. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

34.47   On 10/18/2019, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1943-S Walking Liberty MS66+ CAC coin for $2,206.67 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 18-4332

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $886.67. This represents a markup of 67%, an amount that is fraudulent and unconscionable.

**34.48**  On 1/6/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 2019-S Silver American Eagle Enhanced Reverse PR70 coin for $400.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4614 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $125.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $275.00. This represents a markup of 220%, an amount that is fraudulent and unconscionable.

**34.49**  On 1/6/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1944 Walking Liberty MS67 CAC coin for $1,725.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4614 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $720.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,005.00. This represents a markup of 140%, an amount that is fraudulent and unconscionable.

**34.50**  On 1/6/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1944-D Walking Liberty MS67+ CAC coin for $8,700.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4614

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,170.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,530.00. This represents a markup of 644%, an amount that is fraudulent and unconscionable.

34.51    On 1/23/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1946-D Walking Liberty MS67+ coin for $5,250.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4680 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,680.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,570.00. This represents a markup of 213%, an amount that is fraudulent and unconscionable.

34.52    On 2/3/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1918-S Walking Liberty Half Dollar MS64+ CAC for $5,590.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4717 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,280.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,310.00. This represents a markup of 146%, an amount that is fraudulent and unconscionable.

34.53    On 3/16/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1853 $20.00 Liberty Gold Double Eagle Prospector BU coin for $5,950.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities"

Invoice No. 20-4832 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,350.00. This represents a markup of 129%, an amount that is fraudulent and unconscionable.

**34.54**   On 3/20/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1836 $5.00 Classic Head S.S. Central America PCGS F15 coin for $4,150.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4854 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $528.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,622.00. This represents a markup of 686%, an amount that is fraudulent and unconscionable.

**34.55**   On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1880 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.56**   On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1882 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.57**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1893 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.58**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1894 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.59**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1885 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.60**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1897 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an invoice no. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.61**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1900 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.62**  On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1907 $5.00 Liberty Gold Half Eagle coin for $1,498.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $498.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

34.63   On 4/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1908 $5.00 Liberty Gold Half Eagle coin for $749.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4897 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $249.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

34.64   On 4/24/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1877-S $20.00 Gold Prospector Series PCGS coin for $4,200.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-4920 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,990.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,210.00. This represents a markup of 111%, an amount that is fraudulent and unconscionable.

34.65   On 5/1/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1883 Morgan Silver Dollar (Gold River) MS67+ CAC for $7,990.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities"

Invoice No. 20-4948 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $3,960.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $4,030.00. This represents a markup of 102%, an amount that is fraudulent and unconscionable.

**34.66**  On 5/15/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1885-O Morgan Silver Dollar Certified MS67+ CAC for $6,100.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5009 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,580.00. This represents a markup of 142%, an amount that is fraudulent and unconscionable.

**34.67**  On 5/26/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 2009 $20.00 Ultra High Relief Saint Gaudens coin for $2,995.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5041 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,998.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $997.00. This represents a markup of 50%, an amount that is fraudulent and unconscionable.

**34.68**  On 6/12/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1928 $1.00 Silver Peace Dollar MS65+ CAC for $9,250.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5119

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $4,080.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $5,170.00. This represents a markup of 127%, an amount that is fraudulent and unconscionable.

34.69   On 6/12/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1938 Walking Liberty Half Dollar PF68 for $7,200.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5119 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $3,840.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,360.00. This represents a markup of 88%, an amount that is fraudulent and unconscionable.

34.70   On 6/24/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1842-O $2.50 Liberty Gold Quarter Eagle coin for $7,740.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5181 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,500.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $6,240.00. This represents a markup of 416%, an amount that is fraudulent and unconscionable.

34.71   On 7/7/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1942-S Walking Liberty Half Dollar MS-67 for $14,950.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5221

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $6,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $8,350.00. This represents a markup of 127%, an amount that is fraudulent and unconscionable.

34.72   On 7/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1942 Walking Liberty Half Dollar (Ken Bressett) PF68 for $2,900.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5255 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $1,380.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,520.00. This represents a markup of 110%, an amount that is fraudulent and unconscionable.

34.73   On 7/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1947-D Walking Liberty Half Dollar (Ken Bressett) MS-67 for $2,350.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5255 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $810.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,540.00. This represents a markup of 190%, an amount that is fraudulent and unconscionable.

34.74   On 7/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1946 Walking Liberty Half Dollar MS-67 for $1,700.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5255

again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $780.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $920.00. This represents a markup of 118%, an amount that is fraudulent and unconscionable.

34.75   On 7/14/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1946-D Walking Liberty Half Dollar MS-67 for $1,300.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5255 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $552.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $748.00. This represents a markup of 136%, an amount that is fraudulent and unconscionable.

34.76   On 7/24/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1936-S $.50 Oregon Trail MS-68 coin for $4,800.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5309 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,220.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,580.00. This represents a markup of 116%, an amount that is fraudulent and unconscionable.

34.77   On 8/5/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1911-D $5.00 Indian Gold Half Eagle MS-60 coin for $6,475.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No.

20-5360 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $4,080.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,395.00. This represents a markup of 59%, an amount that is fraudulent and unconscionable.

**34.78**  On 8/13/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1917-D OBT $.50 Walking Liberty PCGS MS65 coin for $8,000.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5399 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $4,320.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,680.00. This represents a markup of 85%, an amount that is fraudulent and unconscionable.

**34.79**  On 8/13/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1917 $.50 Walking Liberty NGC MS65 coin for $1,155.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5399 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $555.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**34.80**  On 8/13/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1935 OBV $.50 Walking Liberty PCGS MS65 coin for $335.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No.

50

20-5399 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $174.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $161.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

**34.81** On 8/25/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1995 $10.00 Gold American Eagle MS70 coin for $11,500.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5434 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $3,840.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,660.00. This represents a markup of 200%, an amount that is fraudulent and unconscionable.

**34.82** On 8/25/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1911-D $10.00 Indian Head MS61 coin for $17,500.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5434 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $5,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $11,980.00. This represents a markup of 217%, an amount that is fraudulent and unconscionable.

**34.83** On 8/25/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1900-S $5.00 Liberty Gold Half-Eagle MS65 coin for $11,600.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities"

Invoice No. 20-5434 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $6,900.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $4,700.00. This represents a markup of 68%, an amount that is fraudulent and unconscionable.

34.84   On 9/15/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1869 $1.00 Liberty Seated PF-66 for $22,500.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5515 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $12,600.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $9,900.00. This represents a markup of 79%, an amount that is fraudulent and unconscionable.

34.85   On 10/6/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1916-D $.50 Walking Liberty (P) MS66 coin for $4,850.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5594 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,520.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,330.00. This represents a markup of 93%, an amount that is fraudulent and unconscionable.

34.86   On 10/20/2020, at the direction and encouragement of Sullivan, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1908 Barber Quarter PR-68 for $7,975.00 as a sound and safe investment. After receipt of payment, Atlas Collectibles shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5652 again

misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $4,200.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $3,775.00. This represents a markup of 90%, an amount that is fraudulent and unconscionable.

34.87   On 11/10/2020, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1881 3CN PF68 Cameo coin for $7,000.00 as a sound and safe investment. After receipt of payment, Atlas Coins shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5730 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $3,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $4,000.00. This represents a markup of 133%, an amount that is fraudulent and unconscionable.

34.88   On 11/25/2020, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1911-D $.50 Barber MS67 coin for $18,000.00 as a sound and safe investment. After receipt of payment, Atlas Coins shipped Plaintiff the coin(s) sold to her along with an "Atlas Gemstones & Rarities" Invoice No. 20-5781 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $10,200.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $7,800.00. This represents a markup of 76%, an amount that is fraudulent and unconscionable.

34.89   On 12/2/2020, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 1937-D $.50 Walker NGC MS67+ CAC coin for $10,200.00 as a sound and safe investment. After receipt of payment, Atlas Coins shipped Plaintiff the coin(s) sold to her along with an "Atlas Rare Coins" Invoice No. 20-16111 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $7,000.00, resulting

in an immediate and unconscionable monetary loss to Plaintiff of $3,200.00. This represents a markup of 46%, an amount that is fraudulent and unconscionable.

**34.90** On 1/27/2021, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase an 1870 $.05 NGC PF67 Cameo coin for $5,200.00 as a sound and safe investment. After receipt of payment, Atlas Coins shipped Plaintiff the coin(s) sold to her along with an "Atlas Rare Coins" Invoice No. 21-16265 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin as of the date of purchase was just $2,760.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $2,440.00. This represents a markup of 88%, an amount that is fraudulent and unconscionable.

**34.91** On 7/8/2021, Antonelli convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase a 2021 Magnum Opus American Silver Eagle T2 MS70 E.R. 20-Coin Dealer Tray for $3,825.00 as a sound and safe investment. After receipt of payment, Atlas Coins shipped Plaintiff the coin(s) sold to her along with an "Atlas Rare Coins" Invoice No. 21-5503 again misrepresenting the value of the coin(s) sold to her. The fair market value of this coin set as of the date of purchase was just $2,000.00, resulting in an immediate and unconscionable monetary loss to Plaintiff of $1,825.00. This represents a markup of 91%, an amount that is fraudulent and unconscionable.

**35.**    Overall, via the "First Fraud Scheme," Antonelli and Sullivan, representing per the invoices, "Atlas Gemstones & Rarities" and "Atlas Rare Coins," convinced Plaintiff, through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase precious metal coins for an aggregate price of $500,660.19 as a sound and safe investment. The fair market value of these coins as of the dates Mrs. Van Gundy purchased them was just $189,655.00, resulting in an immediate and unconscionable monetary loss of $311,005.19. This represents an

overall markup of 164%, with some markups over 1,000%, amounts that are fraudulent and unconscionable. The above-listed coins were not worth a fraction of the prices Mrs. Van Gundy paid for them when they were purchased, and they have not attained such value to date nor provided the safe and sound investment haven promised by Antonelli and Sullivan, nor will the coins ever produce any positive return on investment as represented.

**E.  The Second Fraud Scheme — Impoverish the Plaintiff**

36.     After Sullivan and Antonelli combined to exhaust and abscond with Mrs. Van Gundy's life savings by selling her coins at obscenely inflated prices, Defendants teed up their "Second Fraud Scheme" in which they brazenly stole back the coins they had already sold to Mrs. Van Gundy, along with coins she had purchased from other coin dealers (several of which are based in Suffolk County). In September 2021, during the height of the COVID pandemic, Antonelli telephoned Mrs. Van Gundy and advised her that it was the *"perfect time to sell, as coins would be at a record high*." Naturally, unaware that she was being flimflammed, Mrs. Van Gundy was interested in realizing a gain on her investment, so, shortly after his request, Mrs. Van Gundy text messaged Antonelli and provided him a list of some 2,386 coins she had collected over the prior several years at a total purchase cost of $834,792.72. After Antonelli received and reviewed the list, he telephoned Mrs. Van Gundy and told her that he could immediately sell the coins at auction on her behalf at a substantial profit and even promised her a "good faith advance" if she would agree to the consignment.

37.     Still unsuspecting, Mrs. Van Gundy agreed to Antonelli's proposed consignment sale offer, and Antonelli sent her shipping boxes with preprinted address labels showing the addressee as "C. Antonelli—ATLAS" and Antonelli's home address in East Setauket. On September 17, 2021, she packed and shipped the coins to Antonelli. Antonelli called Mrs. Van Gundy about a week or two

after he received the shipment of coins and represented that she would receive "in her pocket" at least $1.1 million for her collection after all commissions and auction fees. Antonelli's representation, if true, meant that Mrs. Van Gundy would realize an overall return on her investment of over 32% (~$265,208.00). Based upon this fraudulent inducement, Mrs. Van Gundy consented for Atlas and Antonelli to sell the coins on consignment. When Mrs. Van Gundy asked how confident Antonelli was in his ability to sell the coins for an amount that would net her $1.1 million, Antonelli assured her that he had "run the numbers" three times and that this $1.1 million figure was a "low estimate." In fact, Antonelli bragged to Mrs. Van Gundy that he had already sent her coin list to various auction houses and that the auction houses were "fighting over" her coins. Antonelli also promised to contact Mrs. Van Gundy and let her know the highest bid so she could decide if the price was acceptable.

38.     Furthering the fraudulent scam, Antonelli indicated via telephone call in early October 2021 to Mrs. Van Gundy that he would send her an advance of $224,915.00, plus a consignment contract that outlined the terms of the coin sales and commissions. On October 5, 2021, at Mrs. Van Gundy's request, Antonelli immediately sent her a $20,000.00 "advance" check from "Atlas Rare Coins, Inc." (Check No. 13366) to cover the expense of a planned vacation. On October 14, 2021, Antonelli sent Mrs. Van Gundy the balance of the "advance" ($204,915.00) also drawn on the account of "Atlas Rare Coins, Inc." (Check No. 13378), but he conveniently failed to include the promised contract. When Mrs. Van Gundy reminded Antonelli of his "oversight," he claimed to have forgotten but offered to email the contract to Mrs. Van Gundy.  He never did.

39.     Once the Antonelli obtained possession of Mrs. Van Gundy's coins and sent her the "advance," Antonelli began to ignore her repeated calls about her coins. In early 2022, Mrs. Van Gundy managed to get Sullivan on the telephone and confronted him about the status of the coins

and the estimated auction value promised by Antonelli. Surprisingly, Sullivan admitted to Mrs. Van Gundy that Antonelli's original sell prices were significantly more than fair market value, that it was wrong of Antonelli to sell the coins at those prices, and that he warned Antonelli that Antonelli should stop over-pricing the coins to customers. Left unsaid was that it was Sullivan's own "base price" sales scheme that facilitated and encouraged Antonelli under Sullivan's authority to conduct such outrageous over-pricing in the first place.

**40.**   After almost six months of repeatedly attempting to reach Antonelli by telephone, Antonelli finally returned Mrs. Van Gundy's calls.  Antonelli's tune changed, and he refuted any prior representations that he could get Mrs. Van Gundy $1.1 million "in pocket" for the coins at auction. Instead, he informed Mrs. Van Gundy that the Defendants did not send her coins to auction; but rather, and without her consent or knowledge, he cryptically explained that he had decided to go a "different way." Without further explanation, Antonelli indicated to Mrs. Van Gundy that contrary to his earlier overblown, optimistic representations, he had only gotten "melt value" (i.e. spot value minus processing costs) for her Gold Indian Heads (comprising less than 20 coins). When Antonelli did not elaborate on the status of the other 2,366 coins, Mrs. Van Gundy demanded a full accounting. Antonelli promised her an accounting, but he has not provided any accounting as of the date of filing this complaint.

**41.**   Subsequently, Antonelli admitted to Mrs. Van Gundy via telephone conversation that Defendants had not sold all the coins and agreed to either: a) sell her remaining coins, which he represented were now worth about $250,000.00, rather than the $1 million-plus estimate by which he had convinced Mrs. Van Gundy to ship the coins to him; or else, b) to ship the remaining coins back to her.  Mrs. Van Gundy was shocked and told him to immediately return the remaining coins. Antonelli shipped "the remaining coins" back to Mrs. Van Gundy.

**42.** Upon receipt, Mrs. Van Gundy was dumbfounded to discover that the shipment of "the remaining coins" from Antonelli consisted of just eight (8) coins which only had a combined value of approximately $12,570.00. In sum, based upon Antonelli's promises and representations, Mrs. Van Gundy shipped "ATLAS" (via Antonelli) coins for sale on "consignment" for which she had paid $834,792.72, and in return she received the "advance" of $224,915.00 plus the eight (8) coins valued at $12,570.00.

**43.** Through her counsel, Mrs. Van Gundy submitted the list of the 2,386 coins to an expert numismatic appraiser for an evaluation of the fair market value of the coins at the time the coins were shipped to Antonelli. The fair market value amounts to $629,468.40.[34] After deducting the advance of $244,915.00 and the return of the coins worth $12,750.00, Antonelli's phase two fraud scheme as principal and representative of CARI-Atlas resulted in losses to the elderly, widowed Mrs. Van Gundy of an additional $371,983.40 of her life savings.

**44.** As a direct and/or proximate result of Sullivan's and Antonelli's above-described and detailed wrongful acts and practices, perpetrated individually and as principals and representatives of the Atlas Companies, Plaintiff has suffered (and continues to suffer) substantial economic damages of $311,005.19 as a result of the first fraud on the over-pricing of coins[35] and $371,983.40 as a result of the second fraud[36] which the Atlas Companies, Sullivan and Antonelli refuse to remedy. This case has resulted.

---

[34] Attached as Exhibit 2 is the compilation of that appraisal.
[35] *See* ¶¶ 27-35, *supra*.
[36] *See* ¶¶ 37-43, *supra*.

58

## CLAIMS FOR RELIEF

### COUNT I
### FRAUD AND/OR FRAUDULENT CONCEALMENT

**45.**     The preceding factual statements and allegations are incorporated by reference.

**46.**     In order to sell the fraudulently overvalued coins to Plaintiff, Sullivan and Antonelli, individually and as principals and representatives of the Atlas Companies, utilized one or more of the above-described unlawful, deceptive, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry. On behalf of Atlas Collectibles and later Atlas Coins, Antonelli and Sullivan falsely and/or misleadingly represented to Plaintiff that she was a "preferred customer," that Plaintiff "needed the coins," that Plaintiff was "getting a good deal" and that Plaintiff "would not lose any money" on the purchases (or other, similar representations). On behalf of Atlas Collectibles and later Atlas Coins, Antonelli and Sullivan also falsely represented the current values of the coins with full knowledge that the coins were not worth the values at which they were purchased nor will the coins attain the return of investment as promised. On behalf of CARI-Atlas, Antonelli further misrepresented that he would: auction or sell Plaintiff's coins "on consignment" for $1.1 million net to Plaintiff, that they would provide Plaintiff an accounting, that they would return Plaintiff's coins and other misrepresentations more fully described in detail above.

**47.**     On behalf of the Atlas Companies, Antonelli and Sullivan made the above-detailed false representations to Plaintiff with the intent that she rely upon them and with full knowledge that such representations were false when made. Plaintiff reasonably relied on all of these material and false representations by Antonelli and Sullivan when deciding to purchase the grossly overvalued coins from Atlas Collectibles and later Atlas Coins which, in fact, she purchased to her financial

detriment and Antonelli's and Sullivan's financial gain and to ship Antonelli her coins for sale by CARI-Atlas "on consignment." As a direct and/or proximate result of Antonelli's and Sullivan's false and misleading representations about the overvalued coins and Antonelli's false and misleading representations about the "consignment sale," Plaintiff suffered (and continues to suffer) damages in the form of, *inter alia,* the amounts paid to Atlas Collectibles and Atlas Coins for the coins in excess of their value, the loss of the "for consignment" coins retained/stolen by Antonelli individually or as principal of CARI-Atlas, consequential damages related to the funds she used to purchase the coins and mental anguish damages.

**48.** Antonelli and Sullivan also intentionally concealed their wrongful actions until a significant amount of the damage to Plaintiff was a *fait accompli*. All the above facts were material to Plaintiff's decision to purchase coins from Atlas Collectibles and Atlas Coins and to reasonably trust Antonelli to sell her coins on consignment through CARI-Atlas.

**49.** By virtue of the confidential business relationship between Plaintiff and Antonelli and Sullivan, Antonelli, Sullivan, and the Atlas Companies had a duty to disclose the above-described concealed material facts to Plaintiff. Antonelli's and Sullivan's deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, is the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally or, at the very least, in reckless disregard of Plaintiff's rights and interests.

**50.** Plaintiff justifiably relied on Antonelli's and Sullivan's false representations and/or omissions to her financial detriment by purchasing the grossly overvalued coins from Atlas Collectibles and Atlas Coins and Antonelli's false representations and/or omissions that tricked her into shipping her coins to CARI-Atlas for Antonelli to sell "on consignment." Plaintiff suffered

damages as a result of such reliance. The wrongful actions of Antonelli, Sullivan, and the Atlas companies constitute fraud at New York common law.

51.     Antonelli, Sullivan, and the Atlas companies concealed their wrongful actions with the intent to mislead and defraud Plaintiff. Plaintiff was not aware of, nor through the exercise of due diligence could she have become aware of, the above-described wrongful actions until such wrongful actions were committed and brought to light by third parties. Due to the parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Antonelli's and Sullivan's superior knowledge and/or means of knowledge, the Atlas Companies—and specifically Antonelli and Sullivan individually and in their representative capacities—had a duty to disclose to Plaintiff the above-described materially false information. Plaintiff reasonably relied upon Antonelli's and Sullivan's omissions and suffered damages as a result. Antonelli's and Sullivan's omissions constitute fraudulent concealment at New York common law.

## COUNT II
## NEGLIGENT MISREPRESENTATION

52.     The preceding factual statements and allegations are incorporated by reference.

53.     Antonelli and Sullivan each had a confidential business relationship with Plaintiff, as individuals and/or as representatives and principals of Atlas Collectibles and Atlas Coins, which imposed a duty on them to impart correct information to Plaintiff concerning the coins they offered and sold to Plaintiff.

54.     Antonelli and Sullivan also made certain representations to Plaintiff in the course of their business and in transactions between the Atlas Companies and Plaintiff in which Antonelli and Sullivan had a substantial monetary interest. Antonelli and Sullivan also supplied false information for the specific purpose of guiding Plaintiff in her purchase of the grossly overpriced coins from

61

Atlas Collectibles and Atlas Coins and in regard to her decision to entrust Antonelli and CARI-Atlas to auction or sell her coins on consignment.

55.    Antonelli and Sullivan, however, failed to exercise reasonable care and competence in obtaining and communicating such information to Plaintiff by, *inter alia,* utilizing one or more of the above-described unlawful, deceptive, false, misleading and unconscionable high-pressure sales tactics typical of the precious metals/coins/bullion direct sales industry and/or making such false and material misrepresentations and omissions.

56.    Plaintiff justifiably relied on Antonelli's and Sullivan's negligent misrepresentations when purchasing the grossly overvalued coins from Atlas Collectibles and Atlas Coins and in shipping her coins to Antonelli for "consignment" sale by CARI-Atlas, which directly and/or proximately caused her to suffer damages to the financial benefit of Antonelli, Sullivan, and the Atlas Companies. Antonelli's and Sullivan's wrongful conduct, which is attributable to the Atlas Companies, constitutes negligent misrepresentation at New York common law.

**COUNT III**
**<u>NEGLIGENCE</u>**

57.    The preceding factual statements and allegations are incorporated by reference.

58.    Defendants negligently valued, promoted, marketed, advertised and sold grossly overvalued precious metal coins to Plaintiff. As a result of the special and confidential business relationship between Defendants and Plaintiff, Defendants owed a duty to Plaintiff.  In doing so, Defendants owed a duty to Plaintiff to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins. Defendants also were negligent in their representations to Plaintiff of the market value of her coins, in failing to auction said coins, in refusing to provide her an accounting for said coins, and in unlawfully retaining said coins after Plaintiff demanded the

coins' return. Defendants breached their duty to Plaintiff by failing to exercise reasonable care in valuing, promoting, marketing, advertising and selling the coins to—and for—Plaintiff. Defendants' wrongful conduct directly and/or proximately caused Plaintiff to suffer damages. Defendants' wrongful conduct constitutes negligence at New York common law.

**COUNT IV**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349**
*(Deceptive and Unfair Trade Practices)*

**59.**     The preceding factual statements and allegations are incorporated by reference.

**60.**     Plaintiff is a "consumer" and Defendants are "persons" that may be sued pursuant to § 349 of New York's General Business Law (GBL).

**61.**     By their above-detailed wrongful acts and/or misrepresentations, Defendants Atlas Coins, Atlas Collectibles and CARI-Atlas, as well as Sullivan and Antonelli, engaged in false, misleading and deceptive acts and practices which were consumer-oriented and marketed to consumers in violation of GBL § 349. Defendants have made and continued to make deceptive, false and material misleading statements to consumers orally, in print, via their websites (www.AtlasGemstones.com, www.Atlasrarecoins.com and www.TriStateAssets.com) and via social media accounts (i.e. @Atlasgemstones)), concerning the coins they sell, namely selling and packaging the coins sold with false and misleading statements, and they have (i) represented that the coins have value that they do not have and that significant investor and collector demand exists for the coins that will cause them to appreciate in value, which does not exist and will not happen; (ii) represented that the coins are rare and/or unique and have substantial desire to investors and collectors, which will cause the coins to appreciate significantly in the future, which they are not; and (iii) failed to disclose the above information about the coins, which Defendants knew at the time of the transactions, with the intent to induce Plaintiff to purchase the coins that Plaintiff would

not have purchased had Defendants disclosed such information. Plaintiff relied on Defendants' misrepresentations and omissions above in purchasing the coins to her financial detriment and in shipping her coins to Defendants for sale by consignment, as more fully described above.

62.     By the acts and conduct alleged herein Defendants Atlas Coins, Atlas Collectibles and CARI-Atlas, as well as Sullivan and Antonelli, committed unfair or deceptive acts and practices by, *inter alia*, inducing Plaintiff to purchase collectible numismatic, semi-numismatic, and bullion coins that are not worth the value at which they were purchased and will never attain the value as claimed or return on investment as represented.

63.     The practices employed by Defendants Atlas Coins, Atlas Collectibles and CARI-Atlas, as well as Sullivan and Antonelli, whereby they advertised, promoted, marketed and sold their coins are unfair, deceptive, and materially misleading.

64.     Defendants Atlas Coins, Atlas Collectibles and CARI-Atlas, as well as Sullivan and Antonelli, are liable for the above-described wrongful acts committed by Antonelli and Sullivan and their nonparty telemarketer agents/employees during the course and scope of their employment with Atlas Coins, Atlas Collectibles and CARI-Atlas under the doctrine of *respondeat superior*; to wit, Defendants' agents'/employees' wrongful conduct (and particularly that of Antonelli and Sullivan) was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the agents/employees were operating and/or hired (*i.e.,* marketing overvalued coins to customers like Plaintiff and/or promising to sell coins for customers/consumers on consignment and stealing them instead)—all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants.

65.     The foregoing deceptive acts and practices were directed at consumers, such as the Plaintiff herein.

66.     Plaintiff suffered a loss as a result of Defendants' deceptive and unfair trade practices. Specifically, as a proximate result of same, Plaintiff suffered monetary losses associated with the purchase of the coins she obtained from Defendants and/or the premium price paid by the Plaintiff insofar as said purchases were based on the inaccurate representations alleged herein of Defendants, and Plaintiff seeks an injunction against Defendants and penalties under GBL § 349.

**COUNT V**
**CONSPIRACY**

67.     The preceding factual statements and allegations are incorporated by reference.

68.     Antonelli and Sullivan (and possibly others), either working together as a combined group or in sub-combinations of two (or more), affirmatively conspired to engage in the wrongful actions set forth above.  By doing so, Antonelli and Sullivan conspired to accomplish an unlawful purpose or a lawful purpose by an unlawful means. As such, Antonelli and Sullivan, individually or in their representative capacities on behalf of the Atlas Companies, conspired to commit the wrongful actions outlined in Counts I-IV, above, and took one or more affirmative measures in furtherance thereof, all of which directly and proximately caused Plaintiff to sustain actual and consequential damages. Antonelli's and Sullivan's wrongful actions constitute civil conspiracy at New York common law.

**COUNT VI**
**MONEY HAD AND RECEIVED**

69.     The preceding factual statements and allegations are incorporated by reference.

70.     By their above-described wrongful actions and/or inaction, Defendants received and/or hold money obtained by a) the wrongfully charged and collected purchase prices paid by Plaintiff

for the grossly overvalued coins misrepresented and sold to her by Defendants and b) coins impermissibly sold to third parties and the funds retained without payment to Plaintiff or replacement of the coins, which has benefitted Antonelli, Sullivan and the Atlas Companies that, under principles of equity and good conscience, belong to Plaintiff. Defendants, therefore, should be compelled to refund such wrongfully charged, retained and/or collected funds under the equitable doctrine of money had and received.

**COUNT VII**
**UNJUST ENRICHMENT**

**71.**     The preceding factual statements and allegations are incorporated by reference.

**72.**     Defendants (and possibly other persons and entities, including Defendants' agents/employees) have been unjustly enriched at Plaintiff's expense and that it is against equity and good conscience to permit Antonelli, Sullivan and the Atlas Companies to retain: (i) being paid an excessive value for coins that are not supported by any reasonable valuation; (ii) using the fraudulently obtained revenues and profits paid by Plaintiff, and (iii) generating a return on the amounts described in (i) and (ii). In addition, Defendants have been unjustly enriched in an amount equal to the coins belonging to Plaintiff which they promised to sell on consignment for Plaintiff for $1.1 million net to Plaintiff, but which they instead have retained or sold to others while pocketing the proceeds. Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which Defendants (and possibly other persons and entities, including Defendants' agents/employees) have been unjustly enriched.

**COUNT VIII**
**CONVERSION**

**73.**     The preceding factual statements and allegations are incorporated by reference.

66

**74.**     Plaintiff has and maintains a possessory right and interest over all coins and/or funds that Plaintiff invested with Defendants, including the coins shipped to Defendants for consignment sale and all profits earned on any sales of said coins.

**75.**     Plaintiff requested a full liquidation of her account, including the return of her invested funds.

**76.**     Defendants had an obligation to return Plaintiff's funds and/or coins.

**77.**     Defendants acknowledged that Plaintiff was entitled to a liquidation of her account and the return of Plaintiff's account balance.

**78.**     Defendants wrongfully continue to exercise control over Plaintiff's coins and/or funds.

**79.**     Defendants' wrongful control over Plaintiff's funds and refusal to return such funds is an interference of Plaintiff's ownership rights.

**80.**     As a result of Defendants' wrongful control over her funds, Plaintiff has been damaged in the amount $371,983.40, being the fair market value, and consequential damages, as well as interest thereon.

**81.**     By virtue of the foregoing, Defendants have committed the tort of conversion, and Plaintiff is entitled to damages in an amount to be determined at trial, but in no event less than $371,983.40 plus interest.

## **TOLLING OF THE STATUTES OF LIMITATION**

**82.**     The preceding factual statements and allegations are incorporated by reference.

**83.**     **EQUITABLE ESTOPPEL.**  Defendants took active steps to conceal their above-described wrongful actions and/or inaction. The details of Defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery. At such time as this material information was first revealed to Plaintiff, she exercised due diligence by retaining

67

counsel and pursuing her claims.  As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable estoppel.

84. **EQUITABLE TOLLING.**  Defendants took active steps to conceal their above-described wrongful actions and/or inaction.  The details of Defendants' efforts to conceal their unlawful conduct are in their possession, custody and control, and await further discovery.  Even by exercising reasonable diligence, Plaintiff could not have discovered this information if for no other reason than she had no reason to make such inquiries. At such time as this material information was first revealed to Plaintiff, she exercised due diligence by retaining counsel and pursuing her claims. As such, all applicable statutes of limitation (if any) are tolled under the doctrine of equitable tolling.

## RESPONDEAT SUPERIOR

85. The preceding factual statements and allegations are incorporated by reference.

86. Defendants also are liable for the above-described wrongful acts committed by their agents and/or employees during the course and scope of their agency/employment by the Defendants; to wit: the agents'/employees' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Defendants' business, and (iii) to accomplish the objective for which the agents were retained and/or the employees were hired (*i.e.*, selling and trading overvalued coins to and for customers like Plaintiff)—all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—under the doctrine of *respondeat superior.*

## RELIEF REQUESTED

87. The preceding factual statements and allegations are incorporated by reference.

88. **ACTUAL AND CONSEQUENTIAL DAMAGES.**  In the alternative, and as direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in

the form of, *inter alia*, the amounts she paid to Defendants for the coins in excess of their value, and the represented or actual value of Plaintiff's coins which Defendants promised to sell for her on consignment but which Defendants either retain to this day or else sold and kept the proceeds. In any event, Plaintiff is entitled to recover consequential damages related to the assets she liquidated to purchase the coins and the mental anguish she has suffered in connection with these transactions—in an amount to be determined by the trier of fact.  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

89.     **PUNITIVE DAMAGES.**  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.  All conditions precedent to Plaintiff's claim for relief have been performed and/or occurred.

90.     **TREBLE DAMAGES.**  Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct in violation of New York's GBL § 349 (up to the applicable cap).  All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

91.     **INJUNCTIVE RELIEF.**  Plaintiff also is entitled to an injunction under NY GBL § 349 prohibiting Defendants' unlawful act or practices as set out in detail above.

92.     **ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS.**  Plaintiff also is entitled to recover her reasonable and necessary attorneys' fees, litigation expenses and court costs in prosecuting this action pursuant to, *inter alia*, NY GBL § 349 insofar as Defendants' aforesaid actions were willful and knowing.

**WHEREFORE,** Plaintiff requests that upon final trial or hearing, judgment be awarded in her favor against the Defendants, jointly and severally for:

(i)      actual damages to be determined by the trier of fact;

(ii)     punitive damages;

(iii)    treble damages;

(iv)    all amounts by which Defendants have been unjustly enriched;

(v)     an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including imposing a constructive trust, the voiding of unlawful transfers, and the disgorgement of all ill-gotten gains and profits;

(vi)    an injunction prohibiting Defendants' unlawful acts and practices;

(vii)   pre- and post-judgment interest at the highest legal rates;

(viii)  attorneys' fees and litigation expenses incurred through the trial and any appeals of this case;

(ix)    costs of suit; and

(x)     such other and further relief that the Court deems just and proper.


## JURY DEMAND

Plaintiff respectfully demands a trial by jury on all of her claims and causes of action so triable.

Dated: July 21, 2023.

Respectfully submitted,


  /S/KENNETH G. WALSH
BY: KENNETH G. WALSH (1654)
 LAW OFFICE OF KENNETH G. WALSH
59 KENSICO ROAD, SUITE 7
THORNWOOD, NY 10595
(929) 241-7307

**R. LYN STEVENS (*Pro Hace Vice*)**
**STEVENS LAW FIRM**
**20540 HWY 46 WEST, SUITE 115-420**
**SPRING BRANCH, TX  78070**
**(409) 880-9714**

*Attorneys for Plaintiff*

## EXHIBIT 1: FRAUD No. 1 – Fraudulent Coin Sales to Beverly Van Gundy

| DATE | Order Number | Item | Total Selling Price | Fair Market Value Per Item | Total Fair Market Value | Losses | % Markup |
|---|---|---|---|---|---|---|---|
| 6/30/2017 | 2017-1078 | Franklin 50¢ Roll Gem Proof | $ 800.00 | $ 12.00 | $ 480.00 | $ 320.00 | 67% |
| 7/15/2017 | 2017-1095 | CD $5 Gold Liberty Half-Eagle MS63 | $ 4,775.00 | $ 500.00 | $ 2,500.00 | $ 2,275.00 | 91% |
| 8/6/2017 | 2017-1168 | 1964 Washington Quarter Proof | $ 575.00 | $ 1.00 | $ 100.00 | $ 475.00 | 475% |
| 8/28/2017 | 2017-1191 | 1907 $20 Saint Gaudens Prospector PCGS | $ 1,900.00 | $ 1,300.00 | $ 1,300.00 | $ 600.00 | 46% |
| 8/28/2017 | 2017-1191 | 1908 $20 Saint Gaudens Prospector PCGS | $ 1,900.00 | $ 1,300.00 | $ 1,300.00 | $ 600.00 | 46% |
| 8/28/2017 | 2017-1191 | 1920 $20 Saint Gaudens Prospector PCGS | $ 1,900.00 | $ 1,300.00 | $ 1,300.00 | $ 600.00 | 46% |
| 9/12/2017 | 2017-1230 | 1922 Silver Peace Dollar - Brilliant Uncirculated | $ 387.00 | $ 20.00 | $ 180.00 | $ 207.00 | 115% |
| 9/12/2017 | 2017-1230 | 1923 Silver Peace Dollar - Brilliant Uncirculated | $ 301.00 | $ 20.00 | $ 140.00 | $ 161.00 | 115% |
| 9/12/2017 | 2017-1230 | 1924 Silver Peace Dollar - Brilliant Uncirculated | $ 43.00 | $ 20.00 | $ 20.00 | $ 23.00 | 115% |
| 9/12/2017 | 2017-1230 | 1925 Silver Peace Dollar - Brilliant Uncirculated | $ 129.00 | $ 20.00 | $ 60.00 | $ 69.00 | 115% |
| 10/2/2017 | 2017-1291 | Silver Peace Dollars - Brilliant Uncirculated | $ 860.00 | $ 20.00 | $ 400.00 | $ 460.00 | 115% |
| 10/13/2017 | 2017-1345 | Ben Franklin Roll Gem Proof | $ 1,785.00 | $ 8.00 | $ 480.00 | $ 1,305.00 | 272% |
| 1/8/2018 | 18-1567 | JFK Roll Gem Proof | $ 375.00 | $ 8.00 | $ 160.00 | $ 215.00 | 134% |
| 3/8/2018 | 18-1772 | 1904 $2.50 Gold American Quarter-Eagle MS63 | $ 695.00 | $ 400.00 | $ 400.00 | $ 295.00 | 74% |
| 3/8/2018 | 18-1772 | 1905 $2.50 Gold American Quarter-Eagle MS63 | $ 695.00 | $ 400.00 | $ 400.00 | $ 295.00 | 74% |
| 3/8/2018 | 18-1772 | 1905 $2.50 Gold American Quarter-Eagle MS63 | $ 695.00 | $ 400.00 | $ 400.00 | $ 295.00 | 74% |
| 3/8/2018 | 18-1772 | 1906 $2.50 Gold American Quarter-Eagle MS63 | $ 695.00 | $ 400.00 | $ 400.00 | $ 295.00 | 74% |
| 3/8/2018 | 18-1772 | 1907 $2.50 Gold American Quarter-Eagle MS63 | $ 695.00 | $ 400.00 | $ 400.00 | $ 295.00 | 74% |
| 3/22/2018 | 18-1803 | 1893 $10 Gold American Eagle MS63 | $ 3,450.00 | $ 750.00 | $ 2,250.00 | $ 1,200.00 | 53% |
| 3/22/2018 | 18-1803 | 1899 $10 Gold American Eagle MS63 | $ 1,150.00 | $ 750.00 | $ 750.00 | $ 400.00 | 53% |
| 3/22/2018 | 18-1803 | 1907 $10 Gold American Eagle MS63 | $ 1,150.00 | $ 750.00 | $ 750.00 | $ 400.00 | 53% |
| 4/5/2018 | 18-1855 | 1924 Silver Peace Dollar NGC MS67 | $ 5,400.00 | $ 2,280.00 | $ 2,280.00 | $ 3,120.00 | 137% |
| 4/12/2018 | 18-1890 | 1923 Silver Peace Dollar NGC MS67 | $ 3,850.00 | $ 1,800.00 | $ 1,800.00 | $ 2,050.00 | 114% |
| 4/26/2018 | 18-1934 | 1922 Silver Peace Dollar MS66+ CAC | $ 3,450.00 | $ 1,045.00 | $ 1,045.00 | $ 2,405.00 | 230% |
| 4/26/2018 | 18-1934 | 1925 Silver Peace Dollar MS66+ CAC | $ 1,795.00 | $ 880.00 | $ 880.00 | $ 915.00 | 104% |
| 5/8/2018 | 18-1962 | 1927-S Silver Peace Dollar MS64+ CAC | $ 2,850.00 | $ 1,528.00 | $ 1,528.00 | $ 1,322.00 | 87% |
| 6/6/2018 | 18-2062 | 1928-S Silver Peace Dollar MS64+ CAC | $ 3,240.00 | $ 823.00 | $ 823.00 | $ 2,417.00 | 294% |
| 6/20/2018 | 18-2104 | 1912 $5.00 Indian Head MS64+ CAC | $ 7,150.00 | $ 2,000.00 | $ 2,000.00 | $ 5,150.00 | 258% |
| 6/28/2018 | 18-2134 | 1910 $5.00 Indian Head MS64+ | $ 4,750.00 | $ 2,000.00 | $ 2,000.00 | $ 2,750.00 | 138% |
| 7/20/2018 | 18-2202 | 1909-D $5.00 Indian Head MS64+ | $ 3,850.00 | $ 2,000.00 | $ 2,000.00 | $ 1,850.00 | 93% |
| 8/2/2018 | 18-2247 | 1914-D $5.00 Indian Head PCGS MS64+ CAC | $ 11,950.00 | $ 2,500.00 | $ 2,500.00 | $ 9,450.00 | 378% |
| 8/28/2018 | 18-2363 | 1941-S Walking Liberty Half Dollar MS67 | $ 18,200.00 | $ 7,500.00 | $ 7,500.00 | $ 10,700.00 | 143% |
| 10/10/2018 | 18-2582 | 1897 $20.00  Liberty Prospector Series PCGS | $ 3,600.00 | $ 2,000.00 | $ 2,000.00 | $ 1,600.00 | 80% |
| 12/5/2018 | 18-2834 | JFK Roll Gem Proof | $ 14,875.00 | $ 8.00 | $ 4,000.00 | $ 10,875.00 | 272% |
| 12/18/2018 | 18-2888 | 1881 Morgan Silver Dollar MS65 DPL | $ 12,250.00 | $ 500.00 | $ 500.00 | $ 11,750.00 | 2350% |
| 1/23/2019 | 18-3021 | 1922-D Silver Peace Dollar MS67 | $ 18,500.00 | $ 8,400.00 | $ 8,400.00 | $ 10,100.00 | 120% |
| 3/18/2019 | 18-3290 | 1880-O Morgan Silver Dollar MS64+ CAC | $ 26,400.00 | $ 2,640.00 | $ 2,640.00 | $ 23,760.00 | 900% |
| 3/18/2019 | 18-3290 | 1885-O Morgan Silver Dollar MS67+ CAC | $ 15,600.00 | $ 1,560.00 | $ 1,560.00 | $ 14,040.00 | 900% |
| 3/18/2019 | 18-3290 | 1945 Walking Liberty MS67 CAC | $ 6,893.57 | $ 690.00 | $ 690.00 | $ 6,203.57 | 899% |
| 3/18/2019 | 18-3290 | 1945-D Walking Liberty MS67+ CAC | $ 22,309.18 | $ 2,233.00 | $ 2,233.00 | $ 20,076.18 | 899% |
| 3/18/2019 | 18-3290 | 1945-S Walking Liberty MS66+ CAC | $ 3,837.44 | $ 384.00 | $ 384.00 | $ 3,453.44 | 899% |
| 5/22/2019 | 18-3605 | 1887-S Morgan Silver Dollar MS65+ CAC | $ 5,150.00 | $ 1,500.00 | $ 1,500.00 | $ 3,650.00 | 243% |
| 6/13/2019 | 18-3721 | 1921 Morgan Silver Dollar MS66+ CAC | $ 3,420.00 | $ 1,080.00 | $ 1,080.00 | $ 2,340.00 | 217% |
| 6/27/2019 | 18-3795 | 1937-S Walking Liberty Half Dollar MS66+ CAC | $ 2,995.00 | $ 630.00 | $ 630.00 | $ 2,365.00 | 375% |
| 7/24/2019 | 18-3927 | 1921-D Morgan Silver Dollar MS66+ CAC | $ 5,125.00 | $ 2,880.00 | $ 2,880.00 | $ 2,245.00 | 78% |
| 8/7/2019 | 18-3994 | 1879-S $20.00 Saint Gaudens Prospector BU PCGS | $ 4,400.00 | $ 1,950.00 | $ 1,950.00 | $ 2,450.00 | 126% |
| 9/9/2019 | 18-4152 | 1964 JFK Gem Brilliant Uncirculated | $ 5,500.00 | $ 15.00 | $ 375.00 | $ 5,125.00 | 1367% |
| 9/24/2019 | 18-4229 | 1941-D Walking Liberty Half Dollar MS67+ CAC | $ 2,900.00 | $ 660.00 | $ 660.00 | $ 2,240.00 | 339% |
| 10/18/2019 | 18-4332 | 1943 Walking Liberty MS67+ CAC | $ 2,206.67 | $ 960.00 | $ 960.00 | $ 1,246.67 | 130% |
| 10/18/2019 | 18-4332 | 1943-D Walking Liberty MS67+ CAC | $ 2,206.67 | $ 1,320.00 | $ 1,320.00 | $ 886.67 | 67% |
| 10/18/2019 | 18-4332 | 1943-S Walking Liberty MS66+ CAC | $ 2,206.67 | $ 1,320.00 | $ 1,320.00 | $ 886.67 | 67% |
| 1/6/2020 | 20-4614 | 1944 Walking Liberty MS67 CAC | $ 1,725.00 | $ 720.00 | $ 720.00 | $ 1,005.00 | 140% |
| 1/6/2020 | 20-4614 | 1944-D Walking Liberty MS67+ CAC | $ 8,700.00 | $ 1,170.00 | $ 1,170.00 | $ 7,530.00 | 644% |

72

| 1/6/2020 | 20-4614 | 2019-S SAE Enhanced Reverse PR70 | $ 400.00 | $ 125.00 | $ 125.00 | $ 275.00 | 220% |
|---|---|---|---|---|---|---|---|
| 1/23/2020 | 20-4680 | 1946-D Walking Liberty MS67+ | $ 5,250.00 | $ 1,680.00 | $ 1,680.00 | $ 3,570.00 | 213% |
| 2/3/2020 | 20-4717 | 1918-S Walking Liberty Half Dollar MS64+ CAC | $ 5,590.00 | $ 2,280.00 | $ 2,280.00 | $ 3,310.00 | 145% |
| 3/16/2020 | 20-4832 | 1853 $20.00 Gold Double Eagle Prospector BU | $ 5,950.00 | $ 2,600.00 | $ 2,600.00 | $ 3,350.00 | 129% |
| 3/20/2020 | 20-4854 | 1836 $5.00 Classic Head S.S.C.A. PCGS F15 | $ 4,150.00 | $ 528.00 | $ 528.00 | $ 3,622.00 | 686% |
| 4/14/2020 | 20-4897 | 1880 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4898 | 1882 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4899 | 1885 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4900 | 1893 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4901 | 1894 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4902 | 1897 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4903 | 1900 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/14/2020 | 20-4904 | 1907 $5.00 Liberty Gold Half Eagle | $ 1,498.00 | $ 500.00 | $ 1,000.00 | $ 498.00 | 50% |
| 4/14/2020 | 20-4905 | 1908 $5.00 Liberty Gold Half Eagle | $ 749.00 | $ 500.00 | $ 500.00 | $ 249.00 | 50% |
| 4/24/2020 | 20-4920 | 1877-S $20.00 Gold Prospector Series PCGS | $ 4,200.00 | $ 1,990.00 | $ 1,990.00 | $ 2,210.00 | 111% |
| 5/1/2020 | 20-4948 | 1883 Morgan Silver Dollar MS67+ CAC | $ 7,990.00 | $ 3,960.00 | $ 3,960.00 | $ 4,030.00 | 102% |
| 5/15/2020 | 20-5009 | 1885-O Morgan Silver Dollar MS67+ CAC | $ 6,100.00 | $ 2,520.00 | $ 2,520.00 | $ 3,580.00 | 142% |
| 5/26/2020 | 20-5041 | 2009 $20.00 Ultra High Relief Saint Gaudens | $ 2,995.00 | $ 1,998.00 | $ 1,998.00 | $ 997.00 | 50% |
| 6/12/2020 | 20-5119 | 1928 $1.00 Silver Peace Dollar MS65+ CAC | $ 9,250.00 | $ 4,080.00 | $ 4,080.00 | $ 5,170.00 | 127% |
| 6/12/2020 | 20-5119 | 1938 Walking Liberty Half Dollar PF68 | $ 7,200.00 | $ 3,840.00 | $ 3,840.00 | $ 3,360.00 | 88% |
| 6/24/2020 | 20-5181 | 1842-O $2.50 Liberty Gold Quarter Eagle | $ 7,740.00 | $ 1,500.00 | $ 1,500.00 | $ 6,240.00 | 416% |
| 7/7/2020 | 20-5221 | 1942-S Walking Liberty Half Dollar MS-67 | $ 14,950.00 | $ 6,600.00 | $ 6,600.00 | $ 8,350.00 | 127% |
| 7/14/2020 | 20-5255 | 1942 Walking Liberty Half Dollar PF68 | $ 2,900.00 | $ 1,380.00 | $ 1,380.00 | $ 1,520.00 | 110% |
| 7/14/2020 | 20-5255 | 1946 Walking Liberty Half Dollar MS-67 | $ 1,700.00 | $ 780.00 | $ 780.00 | $ 920.00 | 118% |
| 7/14/2020 | 20-5255 | 1946-D Walking Liberty Half Dollar MS-67 | $ 1,300.00 | $ 552.00 | $ 552.00 | $ 748.00 | 136% |
| 7/14/2020 | 20-5255 | 1947-D Walking Liberty Half Dollar MS-67 | $ 2,350.00 | $ 810.00 | $ 810.00 | $ 1,540.00 | 190% |
| 7/24/2020 | 20-5309 | 1936-S $.50 Oregon Trail MS-68 | $ 4,800.00 | $ 2,220.00 | $ 2,220.00 | $ 2,580.00 | 116% |
| 8/5/2020 | 20-5360 | 1911-D $5.00 Indian Gold Half Eagle MS-60 | $ 6,475.00 | $ 4,080.00 | $ 4,080.00 | $ 2,395.00 | 59% |
| 8/13/2020 | 20-5399 | 1917 $.50 Walking Liberty NGC MS65 | $ 1,155.00 | $ 600.00 | $ 600.00 | $ 555.00 | 93% |
| 8/13/2020 | 20-5399 | 1917-D OBT $.50 Walking Liberty PCGS MS65 | $ 8,000.00 | $ 4,320.00 | $ 4,320.00 | $ 3,680.00 | 85% |
| 8/13/2020 | 20-5399 | 1935 OGH $.50 Walking Liberty PCGS MS65 | $ 335.00 | $ 174.00 | $ 174.00 | $ 161.00 | 93% |
| 8/25/2020 | 20-5434 | 1900-S $5.00 Liberty Gold Half-Eagle MS65 | $ 11,600.00 | $ 6,900.00 | $ 6,900.00 | $ 4,700.00 | 68% |
| 8/25/2020 | 20-5434 | 1911-D $10.00 Indian Head MS61 | $ 17,500.00 | $ 5,520.00 | $ 5,520.00 | $ 11,980.00 | 217% |
| 8/25/2020 | 20-5434 | 1995 $10.00 Gold American Eagle MS70 | $ 11,500.00 | $ 3,840.00 | $ 3,840.00 | $ 7,660.00 | 199% |
| 9/15/2020 | 20-5515 | 1869 $1.00 Liberty Seated PF-66 | $ 22,500.00 | $ 12,600.00 | $ 12,600.00 | $ 9,900.00 | 79% |
| 10/6/2020 | 20-5594 | 1916-D $.50 Walking Liberty (P) MS66 | $ 4,850.00 | $ 2,520.00 | $ 2,520.00 | $ 2,330.00 | 92% |
| 10/20/2020 | 20-5652 | 1908 Barber Quarter PR-68 | $ 7,975.00 | $ 4,200.00 | $ 4,200.00 | $ 3,775.00 | 90% |
| 11/10/2020 | 20-5730 | 1881 3CN PF68 Cameo | $ 7,000.00 | $ 3,000.00 | $ 3,000.00 | $ 4,000.00 | 133% |
| 11/25/2020 | 20-5781 | 1911-D $.50 Barber MS67 | $ 18,000.00 | $ 10,200.00 | $ 10,200.00 | $ 7,800.00 | 76% |
| 12/2/2020 | 20-16111 | 1937-D $.50 Walker NGC MS67+ CAC | $ 10,200.00 | $ 7,000.00 | $ 7,000.00 | $ 3,200.00 | 46% |
| 1/27/2021 | 21-16265 | 1870 $.05 NGC PF67 Cameo | $ 5,200.00 | $ 2,760.00 | $ 2,760.00 | $ 2,440.00 | 88% |
| 7/8/2021 | 21-55603 | 2021 Magn.Opus ASE T2 MS70 E.R. 20-Coin Set | $ 3,825.00 | $ 2,000.00 | $ 2,000.00 | $ 1,825.00 | 91% |
| | | **TOTALS** | **$ 500,660.19** | | **$ 189,655.00** | **$ 311,005.19** | **164%** |

## EXHIBIT NO. 2:  FRAUD No. 2 – Theft from Beverly Van Gundy

| Description | Number of coins | Total FMV on 10/1/21 |
|---|---|---|
| $1 Silver Dollar Commemoratives | 200 | $   5,280.00 |
| 1842-O Liberty Head $2.50 gold MS60 | 1 | $   8,100.00 |
| 1853 $20 Gold Piece BU | 1 | $   4,800.00 |
| 1869 $1 Trade Dollar PF66 | 1 | $  12,600.00 |
| 1870 Shield Nickel Cameo PF67 Cameo | 1 | $   3,312.00 |
| 1872 $1 Trade Dollar PF66 | 1 | $  18,720.00 |
| 1873-S $20 Gold Liberty Head cosed 3  BU | 1 | $   2,760.00 |
| 1875-S $20 Gold Liberty Head MS61 | 1 | $   3,048.00 |
| 1876 $20 Gold Piece S AU 58 | 1 | $   2,354.40 |
| 1876-S $1 Trade Dollar MS64+ | 1 | $   3,168.00 |
| 1877 Liberty Head $20 Gold Piece BU | 1 | $   2,319.60 |
| 1878 Liberty Head $2.50 gold CBU | 1 | $     630.00 |
| 1878 Morgan Silver Dollar 7/8TF MS63 | 1 | $     480.00 |
| 1878 Morgan Silver Dollar 7/8TF MS63 | 1 | $     480.00 |
| 1878 Morgan Silver Dollar 7TF MS63 | 1 | $     210.00 |
| 1878 Morgan Silver Dollar 7TF MS64 | 1 | $     360.00 |
| 1878 Morgan Silver Dollar 7TF MS64+ CAC | 1 | $     648.00 |
| 1878 Morgan Silver Dollar 8TF MS63 | 1 | $     480.00 |
| 1878-CC Morgan Silver Dollar MS63 | 1 | $     558.00 |
| 1878-CC Morgan Silver Dollar Unc | 1 | $     450.00 |
| 1878-S Morgan Silver Dollar MS63 | 1 | $     114.00 |
| 1878-S Morgan Silver Dollar MS63 | 1 | $     114.00 |
| 1879 Liberty Head $20 Gold Piece BU | 1 | $   2,343.60 |
| 1879 Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1879 Morgan Silver Dollar MS63 | 1 | $     114.00 |
| 1879-O Morgan Silver Dollar MS63 | 1 | $     306.00 |
| 1879-S Morgan Silver Dollar MS63 | 1 | $     102.00 |
| 1880 Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1880 Morgan Silver Dollar MS63 | 1 | $      99.60 |
| 1880/9-S Morgan Silver Dollar MS63 | 1 | $      96.00 |
| 1880/9-S Morgan Silver Dollar MS63 | 1 | $     102.00 |
| 1880-CC Morgan Silver Dollar MS66 | 1 | $   1,680.00 |
| 1880-CC Morgan Silver Dollar Unc | 1 | $     522.00 |
| 1880-O Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1880-O Morgan Silver Dollar MS64+ CAC | 1 | $   6,048.00 |
| 1880-S Morgan Silver Dollar MS63 | 1 | $      63.60 |
| 1880-S Morgan Silver Dollar MS67 | 1 | $   1,551.60 |
| 1881 3CN (three cent nickel) PF 68 Cameo | 1 | $   6,063.60 |
| 1881 Morgan Silver Dollar MS63 | 1 | $      99.60 |
| 1881 Morgan Silver Dollar MS65 | 1 | $     480.00 |
| 1881-CC Morgan Silver Dollar MS63 | 1 | $     660.00 |
| 1881-CC Morgan Silver Dollar Unc | 1 | $     582.00 |
| 1881-O Morgan Silver Dollar MS63 | 1 | $      93.60 |
| 1881-O Morgan Silver Dollar MS64 | 1 | $     144.00 |
| 1881-S Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1881-S Morgan Silver Dollar MS63 | 1 | $      87.60 |
| 1882 Liberty Head $10 Gold Piece MS63 | 1 | $   1,278.00 |
| 1882 Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1882 Morgan Silver Dollar MS63 | 1 | $      87.60 |
| 1882-CC Morgan Silver Dollar MS63 | 1 | $     408.00 |
| 1882-CC Morgan Silver Dollar UC | 1 | $     408.00 |
| 1882-CC Morgan Silver Dollar Unc | 1 | $     408.00 |
| 1882-S Morgan Silver Dollar MS63 | 1 | $      93.60 |
| 1883 Morgan Silver Dollar  VF | 1 | $      32.40 |
| 1883 Morgan Silver Dollar MS67+  CAC | 1 | $   6,048.00 |
| 1883-CC Morgan Silver Dollar MS63 | 1 | $     408.00 |
| 1883-CC Morgan Silver Dollar MS64+ | 1 | $     630.00 |

| | | |
|---|---|---|
| 1883-CC Morgan Silver Dollar UC | 1 | $ 408.00 |
| 1883-CC Morgan Silver Dollar Unc | 1 | $ 408.00 |
| 1883-O Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1883-O Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1884 Morgan Silver Dollar MS63 Unc | 1 | $ 93.60 |
| 1884 Morgan Silver Dollar PR66+ | 1 | $ 8,400.00 |
| 1884-CC Liberty Head $20 Gold Pieces MS61 | 1 | $ 8,400.00 |
| 1884-CC Morgan Silver Dollar MS63 | 1 | $ 408.00 |
| 1884-CC Morgan Silver Dollar Unc | 1 | $ 408.00 |
| 1884-CC Morgan Silver Dollar Unc | 1 | $ 408.00 |
| 1884-CC Morgan Silver Dollar Unc | 1 | $ 408.00 |
| 1884-O Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1884-O Morgan Silver Dollar MS66  CAC | 1 | $ 375.60 |
| 1885 Morgan Silver Dollar  MS63 | 1 | $ 87.60 |
| 1885 Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1885 Morgan Silver Dollar PR66 | 1 | $ 8,400.00 |
| 1885-CC Morgan Silver Dollar MS66 | 1 | $ 1,920.00 |
| 1885-CC Morgan Silver Dollar MS67 | 1 | $ 8,280.00 |
| 1885-O Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1885-O Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1885-O Morgan Silver Dollar MS67+ CAC | 1 | $ 4,609.20 |
| 1885-O Morgan Silver Dollar MS67+ CAC | 1 | $ 4,609.20 |
| 1885-S Morgan Silver Dollar MS63 | 1 | $ 438.00 |
| 1886 Morgan Silver Dollar  VF | 2 | $ 64.80 |
| 1886 Morgan Silver Dollar MS67+ CAC | 1 | $ 1,056.00 |
| 1886-S $5 Gold Piece MS63 | 1 | $ 702.00 |
| 1886-S Morgan Silver Dollar MS63 | 1 | $ 570.00 |
| 1887 Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1887-O Morgan Silver Dollar MS63 | 1 | $ 174.00 |
| 1887-S Morgan Silver Dollar MS65+ CAC | 1 | $ 1,680.00 |
| 1888 Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1888 Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1888-O Morgan Silver Dollar MS63 | 1 | $ 99.60 |
| 1888-S Morgan Silver Dollar MS63 | 1 | $ 594.00 |
| 1889 Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1889 Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1889 Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1889 Morgan Silver Dollar MS63 * | 1 | $ 87.60 |
| 1889-O Morgan Silver Dollar MS63 | 1 | $ 480.00 |
| 1890 Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1890 Morgan Silver Dollar MS63 | 1 | $ 105.60 |
| 1890-CC Morgan Silver Dollar MS63 | 1 | $ 1,200.00 |
| 1890-CC Morgan Silver Dollar Unc | 1 | $ 636.00 |
| 1890-O Morgan Silver Dollar MS63 | 1 | $ 174.00 |
| 1890-S Morgan Silver Dollar MS63 | 1 | $ 162.00 |
| 1891 Morgan Silver Dollar MS63 | 1 | $ 180.00 |
| 1891-CC $5 Gold Piece MS62 | 1 | $ 2,880.00 |
| 1891-CC Morgan Silver Dollar MS64 | 1 | $ 1,266.00 |
| 1891-O Morgan Silver Dollar  VF | 1 | $ 32.40 |
| 1891-O Morgan Silver Dollar MS63 | 1 | $ 450.00 |
| 1891-S Morgan Silver Dollar MS63 | 1 | $ 240.00 |
| 1892 Morgan Silver Dollar MS63 | 1 | $ 660.00 |
| 1892-O Morgan Silver Dollar MS63 | 1 | $ 510.00 |
| 1893 $10 Liberty MS 63 | 3 | $ 5,526.00 |
| 1894 $5 Gold Liberty MS63 | 1 | $ 738.00 |
| 1894 Liberty Head $10 Gold Piece MS63 | 1 | $ 1,842.00 |
| 1895 $5 Gold Liberty Choice BU | 1 | $ 650.40 |
| 1896 Morgan Silver Dollar MS63 | 1 | $ 87.60 |
| 1897 Liberty Head $10 Gold Piece MS63 | 1 | $ 1,278.00 |
| 1897 Liberty Head $20 Gold Piece  BU | 1 | $ 2,319.60 |
| 1897 Liberty Head $20 Gold Piece MS63 | 1 | $ 2,430.00 |
| 1897 Morgan Silver Dollar MS63 | 1 | $ 99.60 |
| 1897-S Morgan Silver Dollar MS63 | 1 | $ 186.00 |

| | | | |
|---|---|---|---|
| 1898 $10 Gold Liberty Choice BU | 1 | $ | 1,132.80 |
| 1898 $5 Gold Liberty Choice BU | 1 | $ | 650.40 |
| 1898 Morgan Silver Dollar  VF | 1 | $ | 32.40 |
| 1898 Morgan Silver Dollar MS63 | 1 | $ | 87.60 |
| 1898-O Morgan Silver Dollar MS67+ CAC | 1 | $ | 1,800.00 |
| 1899 $5 Gold Piece MS63 | 1 | $ | 702.00 |
| 1899 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,278.00 |
| 1899 Morgan Silver Dollar MS63 | 1 | $ | 360.00 |
| 1899-O Morgan Silver Dollar MS63 | 1 | $ | 93.60 |
| 1899-S Morgan Silver Dollar MS63 | 1 | $ | 840.00 |
| 1900 $5 Gold Piece MS65 | 1 | $ | 1,764.00 |
| 1900 $5 Gold Piece MS65+ | 1 | $ | 2,820.00 |
| 1900 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,278.00 |
| 1900 Morgan Silver Dollar  VF | 1 | $ | 32.40 |
| 1900 Morgan Silver Dollar MS63 | 1 | $ | 87.60 |
| 1900-O Morgan Silver Dollar MS63 | 1 | $ | 87.60 |
| 1900-S Morgan Silver Dollar MS63 | 1 | $ | 600.00 |
| 1901 Liberty Head $10 Gold Piece MS66 | 1 | $ | 3,840.00 |
| 1901 Morgan Silver Dollar  VF | 1 | $ | 32.40 |
| 1901-O Morgan Silver Dollar MS63 | 1 | $ | 93.60 |
| 1902 $5 Gold Piece MS64 CAC | 1 | $ | 1,182.00 |
| 1902 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,842.00 |
| 1902 Liberty Head $2.50 gold MS63 | 1 | $ | 612.00 |
| 1902 Morgan Silver Dollar MS63 | 1 | $ | 294.00 |
| 1902-O Morgan Silver Dollar MS63 | 1 | $ | 87.60 |
| 1903 Morgan Silver Dollar MS63 | 1 | $ | 150.00 |
| 1903-O Morgan Silver Dollar MS63 | 1 | $ | 630.00 |
| 1904 Liberty Head $2.50 gold MS63 | 1 | $ | 612.00 |
| 1904 Morgan Silver Dollar MS63+ | 1 | $ | 390.00 |
| 1904-O Morgan Silver Dollar MS64 | 1 | $ | 114.00 |
| 1905 Liberty Head $2.50 gold MS63 | 1 | $ | 612.00 |
| 1906 $10 Liberty MS63 | 1 | $ | 1,842.00 |
| 1906 Liberty Head $2.50 gold MS63 | 1 | $ | 612.00 |
| 1906-S $20 Gold Liberty Head MS63 | 1 | $ | 3,180.00 |
| 1907 $10 St. Gaudens Gold Indian Head NM  MS61 | 1 | $ | 1,341.60 |
| 1907 $20 Gold Liberty MS62 PCGS | 1 | $ | 2,520.00 |
| 1907 $5 Gold Piece MS62 | 1 | $ | 672.00 |
| 1907 Liberty $20 Gold Piece  BU  (Prospector) | 1 | $ | 2,319.60 |
| 1907 Liberty Head $10 Gold Piece MS62 | 1 | $ | 1,182.00 |
| 1907 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,278.00 |
| 1907 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,278.00 |
| 1907 Liberty Head $10 Gold Piece MS63 | 1 | $ | 1,278.00 |
| 1907 Liberty Head $10 Gold Piece MS64 | 1 | $ | 2,076.00 |
| 1907 Liberty Head $2.50 gold MS62 | 1 | $ | 558.00 |
| 1907 Liberty Head $2.50 gold MS63 | 1 | $ | 612.00 |
| 1908 25¢ Barber Quarter PR68 PCGS | 1 | $ | 5,280.00 |
| 1908 Liberty $20 Gold Piece w/ motto BU Prospector | 1 | $ | 2,322.00 |
| 1909 $5 Gold Indian Head D MS64+ | 1 | $ | 2,400.00 |
| 1910 $5 Gold Indian Head MS64+ | 1 | $ | 3,240.00 |
| 1911 $10 St. Gaudens Gold Indian Head D MS63 | 1 | $ | 1,428.00 |
| 1911 $10 St. Gaudens Gold Indian Head MS62 | 1 | $ | 1,398.00 |
| 1911 $5 Gold Indian Head D MS64 | 1 | $ | 2,622.00 |
| 1911 $5 Gold Indian Head S MS63 CAC | 1 | $ | 1,728.00 |
| 1911-D $10 St. Gaudens Gold Indian Head MS61 | 1 | $ | 6,600.00 |
| 1911-D Barber Half Dollar MS67 | 1 | $ | 12,600.00 |
| 1912 $10 St. Gaudens Gold Indian Head MS62 | 1 | $ | 1,398.00 |
| 1912 $5 Gold Indian Head MS64+ CAC | 1 | $ | 3,060.00 |
| 1914 $5 Gold Indian Head D MS64+ CAC | 1 | $ | 3,720.00 |
| 1914-S $10 Indian Head BU | 1 | $ | 2,880.00 |
| 1916 Walking Liberty MS66 | 1 | $ | 3,360.00 |
| 1916-D Walking Liberty MS66 | 1 | $ | 2,880.00 |
| 1917 Walking Liberty MS65 | 1 | $ | 840.00 |
| 1917-D Walking Liberty MS65 (Obverse) | 1 | $ | 5,520.00 |

76

| | | |
|---|---|---|
| 1917-D Walking Liberty MS65 (Reverse) | 1 | $ 10,800.00 |
| 1918-S Walking Liberty MS64+ CAC | 1 | $ 2,016.00 |
| 1920 Liberty $20 Gold Piece BU Prospector Series | 1 | $ 2,319.60 |
| 1920 Walking Liberty MS65 CAC | 1 | $ 3,000.00 |
| 1921 Peace Dollar Unc | 1 | $ 390.00 |
| 1921-D Morgan Silver Dollar MS66+ CAC | 1 | $ 2,016.00 |
| 1921-S Morgan Silver Dollar MS63 | 1 | $ 102.00 |
| 1922 $20 Gold Piece MS63 | 1 | $ 2,388.00 |
| 1922 $20 St.G. Double Eagle MS63 PCGS | 1 | $ 2,562.00 |
| 1922 Peace Dollar MS66+ CAC | 1 | $ 480.00 |
| 1922 Peace Dollar Unc | 1 | $ 42.00 |
| 1922 Peace Dollars MS63 | 19 | $ 1,413.60 |
| 1922-D Peace Dollar MS67 | 1 | $ 12,600.00 |
| 1922-S Peace Silver Dollar BU (Roll) | 20 | $ 840.00 |
| 1923 Peace Dollar MS67 | 1 | $ 3,024.00 |
| 1923 Peace Dollar Unc | 1 | $ 42.00 |
| 1923 Peace Dollars MS63 | 17 | $ 1,264.80 |
| 1923-S 50¢ Comm-Monroe Doctrine MS62 NGC | 1 | $ 120.00 |
| 1923-S Peace Silver Dollar BU (Roll) | 20 | $ 840.00 |
| 1924 Peace Dollar MS67 | 1 | $ 5,160.00 |
| 1924 Peace Dollar Unc | 1 | $ 42.00 |
| 1924 Peace Dollars | 4 | $ 297.60 |
| 1925 $20 St.G. Double Eagle MS63 PCGS | 1 | $ 2,562.00 |
| 1925 Peace Dollar MS66+ CAC | 1 | $ 486.00 |
| 1925 Peace Dollar Unc | 1 | $ 42.00 |
| 1926 $2.50 Sesq. Gold Comm Quarter Eagle  MS65 PCGS | 1 | $ 1,380.00 |
| 1926 Peace Dollar MS66+ CAC | 1 | $ 1,980.00 |
| 1926 Peace Dollar Unc | 1 | $ 60.00 |
| 1927 $20 Gold Piece MS65 | 1 | $ 2,736.00 |
| 1927 $20 St.G. Double Eagle MS63 PCGS | 1 | $ 2,562.00 |
| 1927-S Peace Dollar MS64+ CAC | 1 | $ 3,428.40 |
| 1927 Peace Dollar Unc | 1 | $ 90.00 |
| 1928 Peace Dollar  MS65+ CAC | 1 | $ 3,780.00 |
| 1928 Peace Dollar Unc | 1 | $ 414.00 |
| 1928-S Peace Dollar  MS64+ CAC | 1 | $ 900.00 |
| 1929-D Walking Liberty MS65 | 1 | $ 1,800.00 |
| 1932 $10 St. Gaudens Gold Indian Head MS62 | 1 | $ 1,728.00 |
| 1934  Peace Dollar Unc | 1 | $ 132.00 |
| 1935  Peace Dollar Unc | 1 | $ 90.00 |
| 1935 Walking Liberty MS65 | 1 | $ 210.00 |
| 1936 Walking Liberty MS67+ | 1 | $ 750.00 |
| 1936-S Silver Half Dollar MS68 | 1 | $ 11,985.60 |
| 1936-S Walking Liberty MS67 | 1 | $ 10,200.00 |
| 1937-D Walking Liberty MS67+  CAC | 1 | $ 2,640.00 |
| 1937-S Walking Liberty MS66+ CAC | 1 | $ 792.00 |
| 1938 Walking Liberty Half Dollar PF68 | 1 | $ 4,608.00 |
| 1939-D Walking Liberty MS67 CAC | 1 | $ 1,200.00 |
| 1939-S Walking Liberty MS67 | 1 | $ 1,020.00 |
| 1940-S Walking Liberty MS66+ | 1 | $ 630.00 |
| 1941 S Walking Liberty Silver Half-Dollar MS66+ | 1 | $ 960.00 |
| 1941 Walking Liberty MS67+ CAC | 1 | $ 462.00 |
| 1941 Walking Liberty Silver Half-Dollar MS67 CAC | 1 | $ 462.00 |
| 1941-D Mercury Dime Unc | 1 | $ 7.20 |
| 1941-D Walking Liberty MS67+ | 1 | $ 540.00 |
| 1941-S Mercury Dime Unc | 1 | $ 7.20 |
| 1941-S Walking Liberty MS67 | 1 | $ 21,000.00 |
| 1941-S Walking Liberty MS67 | 1 | $ 9,360.00 |
| 1942 S Walking Liberty Silver Half-Dollar MS67 | 1 | $ 7,920.00 |
| 1942 Walking Liberty PF68 | 1 | $ 3,744.00 |
| 1942-D Mercury Dime Unc | 1 | $ 7.20 |
| 1942-S Mercury Dime Unc | 1 | $ 7.20 |
| 1943 D Walking Liberty Silver Half-Dollar MS67 | 1 | $ 480.00 |
| 1943 Walking Liberty MS67+ CAC | 1 | $ 462.00 |

| | | | |
|---|---|---|---|
| 1943 Walking Liberty Silver Half-Dollar MS67+ CAC | 1 | $ | 462.00 |
| 1943-D Mercury Dime Unc | 1 | $ | 7.20 |
| 1943-D Walking Liberty MS67+ CAC | 1 | $ | 480.00 |
| 1943-S Mercury Dime Unc | 1 | $ | 7.20 |
| 1943-S Walking Liberty MS66+ CAC | 1 | $ | 384.00 |
| 1944 S Walking Liberty Silver Half-Dollar MS67 | 1 | $ | 14,400.00 |
| 1944 Walking Liberty MS67 CAC | 1 | $ | 600.00 |
| 1944-D Mercury Dime Unc | 1 | $ | 7.20 |
| 1944-D Walking Liberty MS67+ CAC | 1 | $ | 600.00 |
| 1944-S Mercury Dime Unc | 1 | $ | 7.20 |
| 1944-S Walking Liberty MS66+ CAC | 1 | $ | 378.00 |
| 1945 Walking Liberty MS67 CAC | 1 | $ | 780.00 |
| 1945-D Mercury Dime Unc | 1 | $ | 7.20 |
| 1945-D Walking Liberty MS67+ CAC | 1 | $ | 2,326.80 |
| 1945-S Mercury Dime Unc | 1 | $ | 7.20 |
| 1945-S Walking Liberty MS66+ CAC | 1 | $ | 240.00 |
| 1946 Walking Liberty MS67 | 1 | $ | 936.00 |
| 1946 Walking Liberty Silver Half-Dollar MS67 | 1 | $ | 936.00 |
| 1946-D Walking Liberty MS67+ | 1 | $ | 162.00 |
| 1947-D Walking Liberty MS67 | 1 | $ | 1,152.00 |
| 1963 Franklin Half Dollars   BU (5 rolls) | 100 | $ | 1,440.00 |
| 1964 JFK Half Dollar Gem Proof (25 rolls) | 500 | $ | 9,000.00 |
| 1964-2014W 50th Anniv set JFK Gold 50¢ HR UC  PF70 | 1 | $ | 2,736.00 |
| 1964-2014W 50th Anniv set JFK Gold 50¢ HR UC  PF70 | 1 | $ | 2,736.00 |
| 1986 SAE70 | 1 | $ | 1,008.00 |
| 1986 SAE PR70 UCAM | 1 | $ | 756.00 |
| 1986-W Gold Eagle $50 PF70 UC | 1 | $ | 3,456.00 |
| 1989-W $50 GAE PR69 DCAM PCGS | 1 | $ | 2,400.00 |
| 1990-W $50 GAE PR69 DCAM PCGS | 1 | $ | 2,400.00 |
| 1990-W $50 Gold GAE PF70  NGC | 1 | $ | 3,096.00 |
| 1992 $10 Gold Eagle MS70 | 1 | $ | 2,592.00 |
| 1992 $25 Gold Eagle MS70 | 1 | $ | 2,826.00 |
| 1992 $5 Gold Eagle MS70 | 1 | $ | 1,008.00 |
| 1992 $50 Gold Eagle MS70 | 1 | $ | 5,184.00 |
| 1993-W $50 Gold GAE PF70  NGC | 1 | $ | 3,312.00 |
| 1993-W $50 Gold GAE PF70  NGC | 1 | $ | 3,312.00 |
| 1995 Gold Eagle $10 MS70 | 1 | $ | 4,176.00 |
| 1999-W $50 Gold GAE PF70  NGC | 1 | $ | 3,096.00 |
| 2006 W Gold Buffalo $50 PR70 DCAM | 1 | $ | 4,608.00 |
| 2006-W $50 Buffalo PR70 DCAM PCGS | 1 | $ | 2,672.40 |
| 2009 Saint Gaudens $20 Dbl Eagle MS70 UHR | 1 | $ | 3,600.00 |
| 2009-P $20 Ultra Hi-Relief MS70 NGC | 1 | $ | 4,032.00 |
| 2012-W $10 GAE PF70 UC NGC | 1 | $ | 633.60 |
| 2012-W $50 Gold Buffalo PR70 UC NGC | 1 | $ | 3,168.00 |
| 2013 W Gold Buffalo $50 PF70 Reverse PF | 1 | $ | 3,744.00 |
| 2013-W $10 GAE PF70 UC NGC early release | 1 | $ | 619.20 |
| 2015 W Gold American Liberty $100  HR MS70 | 1 | $ | 2,880.00 |
| 2015 W Gold American Liberty $100  HR MS70 | 1 | $ | 2,880.00 |
| 2015 W Gold American Liberty $100  HR MS70 | 1 | $ | 2,880.00 |
| 2015 W Gold American Liberty $100  HR MS70 | 1 | $ | 2,880.00 |
| 2017 $25 Pd Eagle Hi-Relief MS70 | 1 | $ | 4,032.00 |
| 2017 Silver American Eagles  MS70 | 100 | $ | 12,480.00 |
| 2017 Silver Comm NPF Dbl Indian Eagle PF/MS70 UC | 2 | $ | 360.00 |
| 2017 W Gold Liberty $100 HR Ultra Cameo MS70 | 1 | $ | 3,528.00 |
| 2017-P SAE   MS69 IGC | 1 | $ | 60.00 |
| 2017-W $50 GAE PF70 PCGS 1st Strike | 1 | $ | 2,592.00 |
| 2018 Palladium Eagle W $10 $25 | 1 | $ | 4,032.00 |
| 2018-S John F. Kennedy 50 cent Silver Rev PF70 | 2 | $ | 81.60 |
| 2018-W $50 Gold Buffalo PR70 DCAM PCGS | 1 | $ | 3,429.60 |
| 2019 $25 Pd Eagle PR70 NGC early release | 1 | $ | 3,456.00 |
| 2019-S SAE Enhanced Reverse PR70 | 1 | $ | 124.80 |
| 2019-W $25 Pd Eagle Reverse Proof 70 NGC | 1 | $ | 3,456.00 |
| 2020 $50 Gold Buffalo MS70 | 1 | $ | 2,611.20 |

| | | |
|---|---|---|
| 2020 Gold Buffalo $50 MS70 | 1 | $ 2,611.20 |
| 2021-W $50 GAE  PR70 DCAM | 1 | $ 3,456.00 |
| CD Morgan Silver Dollars (var. dates) | 72 | $ 4,320.00 |
| CD  Morgan Silver Dollar | 1 | $ 54.00 |
| CD (1882-84) Morgan Silver Dollar Unc | 1 | $ 54.00 |
| CD Morgan Silver Dollar (5-coin set) MS66 | 5 | $ 2,280.00 |
| CD Morgan Silver Dollars (4 rolls) | 100 | $ 3,240.00 |
| CD Silver $1 Peace dollar (6 rolls) | 120 | $ 3,168.00 |
| CD Walking Liberty Half Dollar (25 rolls) | 500 | $ 9,000.00 |
| CD Walking Liberty Half Dollar 15 rolls (look cleaned) | 300 | $ 4,320.00 |
| | 2386 | $ 629,468.40 |
| less advance paid to Van Gundy | | $ (244,915.00) |
| less returned coins | | $ (12,570.00) |
| | | **$ 371,983.40** |