

NEIL FLYNN
SENIOR COUNSEL
DIRECT TEL.: 516.355.9662
DIRECT FAX: 516.740.2011
NFLYNN@RFRIEDMANLAW.COM

August 9, 2023

**VIA ECF**
Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722-9014

      **Re:** *Van Gundy v. Atlas Rare Coins, Inc. et al.*
            Docket No. 2:23-cv-02072

Dear Judge Brown:

    Defendants Atlas Rare Coins, Inc., C.A. Rarities, Inc., and Christian Antonelli (collectively "Movants") hereby request a conference as a precursor to a Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC").

    To begin, Plaintiff's claims for Fraud and Fraudulent Concealment don't meet Rule 9(b)'s heightened pleading requirement.[1] Plaintiff claims to have purchased coins on 57 separate, relevant occasions, and makes the same non-specific, boilerplate accusations regarding each transaction: "Antonelli convinced Plaintiff…through misrepresentations of a high-reward/low-risk investment of limited, short-term availability and misrepresentations as to the value of the coin(s) being offered to Plaintiff, to purchase [coin(s)] for [price] as a sound and safe investment." Upon information and belief, it is impossible for this identical, boilerplate language to satisfy Rule 9(b)'s heightened pleading standard regarding 57 separate transactions. Not only are Plaintiff's allegations insufficiently specific, but she makes them against Defendants as a group instead of individually as required by Rule 9(b).[2]

    Plaintiff's Fraud claims must also be dismissed because what she calls fraud is actually "puffery", i.e. nothing more than opinions of value or future expectations that can't support a fraud claim. Any alleged misrepresentations regarding the value of the coins "constitutes nonactionable opinion that provide[s] no basis for a fraud claim."[3] Moreover, the market prices for the coins in

---

[1] *Minnie Rose LLC v. Yu*, 169 F. Supp 3d 504, 511 (S.D.N.Y. 2016).
[2] *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2nd Cir. 1993).
[3] *Elghanian v Harvey*, 249 AD2d 206, 206 (1st Dept. 1998).

question were readily available and Plaintiff cannot claim to have been at a disadvantage as to knowledge of specific coins or numismatics generally.[4]

Given her extensive knowledge and experience, Van Gundy could not have justifiably relied on any alleged misrepresentations about the value of the coins. The Fraudulent Concealment claim must also fail because Plaintiff can't allege a fiduciary relationship between the parties.

The SAC describes nothing more than a series of arm's-length transactions (representing a tiny fraction of those to which Plaintiff was a party over the last four decades). Therefore, Defendants did not have the requisite "superior knowledge" because the prices were available to anyone with internet access and, as of 2017, Plaintiff had been buying and selling coins for about as long as Antonelli had been alive. Finally, since the parties did not have a relationship prior to the events in question, there is no confidentiality necessary to create a fiduciary duty. The remaining claims must also be dismissed.

Plaintiff's Conversion claim must be dismissed because, contrary to her claims, Plaintiff didn't send Atlas Rare Coins, Inc. 2,386 coins to sell on consignment.[5] She sold it approximately 400 coins outright for $231,915.00, which Atlas Rare Coins, Inc. offered once it confirmed the value of the coins. Atlas Rare Coins, Inc. also agreed to advance Plaintiff $20,000.00 when it confirmed the value of the coins exceeded that amount. It's also why the second check for the balance of the purchase price is clearly marked "liquidation 231,915.00" and "advance - 20,000.00".[6] Therefore, the Conversion claim should be dismissed but, if it isn't, it must remain viable against all Defendants.

Contrary to the assertion in Co-Defendants' letter, Van Gundy doesn't allege Conversion "based on a consignment sale between her and *only* Antonelli". (*emphasis added*). She makes all allegations of Conversion against "Defendants" including Sullivan and Atlas Collectibles. Moreover, neither Sullivan nor Atlas Collectibles are insulated from liability by the mere existence of the contract of sale referenced in Co-Defendants' letter. While Atlas Rare Coins, Inc. did purchase the bulk of Atlas Collectibles, Inc.'s assets pursuant to the agreement, the former did not purchase the latter "lock, stock and barrel". Even if it had, the existence of the agreement doesn't prove compliance with its terms, contrary to Co-Defendants' claims.

Therefore, the claim that "[p]ursuant to this contract, Sullivan was not involved in any of the events in question after November 2020, as he sold his business to Antonelli" is essentially an appeal to authority. Not only didn't Antonelli purchase Sullivan's business, but the existence of the agreement doesn't prove Sullivan or Atlas Collectibles abided by its terms. Moreover, the

---

[4] For well over 40 years Plaintiff has been an active buyer and seller of coins and numismatics. Upon information and belief she's been a user and/or member of the Numismatic Guaranty Company ("NGC") and Professional Coin Grading Services ("PCGS") i.e., the "Kelly Blue Books" of coins for at least 20 years. Each of these services maintain detailed historical and current pricing, and grade and value coins. Plaintiff also owned and operated multiple eBay and internet storefronts through which she bought and sold such collectibles, which she closed shortly before filing this lawsuit.

[5] We have a voice mail from Plaintiff referring to approximately 400 coins as opposed to 2,386 alleged in the SAC.

[6] It also reflects a reduction of $7,000.00 for coins Plaintiff directed Atlas Rare Coins, Inc. to purchase for her.

Conversion cause of action in the SAC contains numerous allegations of fact against "Defendants" which must be read to include Sullivan and Atlas Collectibles, Inc. So, while Plaintiff's Conversion claim should be dismissed, if it isn't, they should stand against all Defendants.

Van Gundy's causes of action for Negligent Misrepresentation and Negligence should also be dismissed because they are duplicative of her fraud claim, because Van Gundy does not plead anything more than arm's-length transactions between the parties and they're time barred. Specifically, Plaintiff failed to allege the existence of a duty of care owed to her by Defendants.

The cause of action for General Business Law § 349 is time barred (like all of Plaintiff's claims arising before March 2020). This cause of action only applies to matters affecting the consumer public at large, and doesn't apply to private contractual disputes, unique to the parties such as those at issue here.[7] For the statute to apply, "[c]onsumer-oriented conduct…must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties…would not fall within the ambit of the statute." *Diaz v. Paragon Motors of Woodside, Inc.*, 424 F.Supp.2d 519 (E.D.N.Y. 2006) (*internal citations omitted*).

Moreover, the Complaint fails to allege deceptive conduct sufficient to trigger the applicability of General Business Law § 349 because opinions of value and/or puffery are neither deceptive nor actionable. Van Gundy's cause of action for Conspiracy must also be dismissed, since New York doesn't recognize it. Van Gundy's causes of action for Money Had and Received and Unjust Enrichment should also be dismissed because they are duplicative of the Fraud claim.

Based upon the foregoing arguments and authorities, Movants respectfully request a pre-motion conference as a precursor to a motion to dismiss. Should the court require any additional information, please contact me at your convenience.

> Respectfully submitted,
> **THE RUSSELL FRIEDMAN LAW GROUP, LLP**
>
> By: /s/*Neil Flynn*
> Neil Flynn

NF/dm

cc: All counsel (via ECF)

---

[7] *Kirk v. Heppt*, 532 F.Supp.2d 586 (S.D.N.Y. 2008); *International Design Concepts, LLC v. Saks Inc.*, 486 F.Supp2d 229.