UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BEVERLY VAN GUNDY,

                              Plaintiff,                                 **ORDER**

      -against-                                  23-CV-2072 (NJC) (JMW)

ATLAS RARE COINS, INC. *et al.,*

                              Defendants.
-------------------------------------------------------------------X

**A P P E A R A N C E S:**

    Kenneth G. Walsh, Esq.
    **Law Office of Kenneth G. Walsh**
    59 Kensico Road, Suite 7
    Thornwood, NY 10594
    *Attorney for Plaintiff*

    Raymond Lyn Stevens, Esq.
    **Stevens Law Firm**
    40540 Hwy 46 West, Suite 115-420
    Spring Branch, TX 78133
    *Attorney for Plaintiff*

    **Christian Antonelli**
    7 Francis Street
    PO Box 319
    East Setauket, NY 11733
    *PRO SE*

    *Defendants Atlas Rare Coins, Inc., and C.A. Rarities, Inc., pro se*

**WICKS**, Magistrate Judge:

    In this action for fraud, the Court recently ruled on the parties' respective motions to compel (ECF Nos. 121 and 123), directing that Plaintiff turn over her eBay account records, shredded documents relevant to the drafting of the Complaint, and text messages between former Defendant Jason Sullivan and Plaintiff. (ECF No. 131.) Defendants in turn were required to

1

produce bank records and ShipRush account documents as well as any other documents relating to the valuation or liquidation of Plaintiff's coins. (*Id.*)

Now, however, Plaintiff files a motion for sanctions against Defendants for failure to produce the documents as directed by the undersigned. (ECF No. 135.) Defendant Antonelli has also filed a motion for sanctions of his own, claiming Plaintiff has failed to turn over coin account information and text message conversations as required by the Court Order. (ECF No. 140.) Both motions are opposed. For the foregoing reasons, both Plaintiff's motion (ECF No. 135) and Defendants' motion (ECF No. 140) are denied.

## **LEGAL STANDARD**

Rule 16 of the Federal Rules of Civil Procedure authorizes the imposition of sanctions—including those authorized by Rule 37(b)(2)(A)(ii)-(vii)— when a party fails to comply with other pretrial orders. Fed. R. Civ. P. 16(f); *see Rahman v. Red Chili Indian Café, Inc.*, 17-CV-5156 (RA) (BCM), 2019 WL 6619893, at *3 (S.D.N.Y. July 12, 2019). Courts look to several factors when considering the appropriate sanction, including "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Sanchez v. Jyp Foods Inc.*, 16-CV-4472 (JLC), 2018 WL 4502008, at *3 (S.D.N.Y. Sept. 20, 2018) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). In addition to the four *Agiwal* factors, courts also consider whether the movant will be prejudiced by the party's non-compliance. *Griggs v. Weiner,* 13 CV 3885 (KAM) (CLP), 2020 U.S. Dist. LEXIS 124442, at *10-11 (E.D.N.Y. July 10, 2020).

**DISCUSSION**

### A. Plaintiff's Motion for Sanctions Against the Antonelli Defendants and Defendants' Opposition

Plaintiff seeks sanctions for Defendants' failure to comply with this Court's August 5, 2024 Order that Defendants produce documents relevant to the liquidation and valuation of the coins at issue. As to liquidation, Plaintiff claims that she can only establish that a portion, not all, of the coins that Defendants claim to have received were liquidated to Imperial Coin Exchange since she has documents demonstrating that Florida Coin Exchange only purchased 191 coins from Defendants. (ECF No. 135 at 1-2.) As to the valuation, Plaintiff has provided a declaration by Stephen Yaffe, custodian of records for Imperial, who stated that Imperial paid former Defendant Tri-State Assets, LLC over $20,000 for four coins in December 2021—however, there is no record of this produced by Imperial or Defendants since Tri-State received coins as consideration for the coins Imperial received from Defendants. (*Id*. at 2.) Plaintiff claims she needs to know the value of these coins Defendants received from Imperial for purposes of prosecuting her case. (*Id*. at 2-3.) Accordingly, Plaintiff states that sanctions are warranted given defendants' willfulness in flouting Court orders for several months now and any lesser sanctions would be ineffective. (*Id.* at 3.)

Defendants respond that they have made "substantial efforts to comply with discovery requests" and any deficiencies result from the complex nature of the transactions and "ongoing efforts to gather the necessary information." (ECF No. 139.) Defendants aver that they have no knowledge or access to the materials upon which Plaintiff relies. (*Id*. at 2.) They further assert they have provided seven inventory intake sheets which "detail[] all inventory received and sold." (*Id*.) Further, he has made efforts to retrieve records from Imperial regarding Plaintiff's coins, but those records were "lost in a data breach." (*Id*. at 3-4.) Defendants also point to

3

Yaffe's prior, relevant criminal history for fraud and the suspicious timing of Yaffe's lawsuit against Defendants once Plaintiff's counsel contacted Yaffe about a document Yaffe originally claimed did not exist.  (*Id*. at 4.)  They claim there has been no willfulness or deliberate intent to defraud and the request for sanctions should be denied.  (*See generally id*.)

      The request for sanctions is denied.  Defendants' opposition demonstrates that they made at efforts to comply with the discovery obligations in the face of various obstacles such as data breaches.  *Teri v. Oxford Mgmt. Servs*., CV 05-2777 (DRH) (WDW), 2008 U.S. Dist. LEXIS 117446, at *17 (E.D.N.Y. Sept. 30, 2008) ("Non-compliance with discovery orders will be deemed willful when the court's orders have been clear, when the party has understood them *and when the party's noncompliance is not due to factors beyond the party's control*.") (internal citations omitted) (emphasis added), *report and recommendation adopted,* 2009 U.S. Dist. LEXIS 107807 (Nov. 18, 2009).  The parties have already discussed at length the discrepancies between Plaintiff's and Defendants' inventory sheets of coins.  At this juncture, Defendants should not be penalized for failing to provide non-existent documentation.  Accordingly, Plaintiff's request for sanctions for failure to comply with the Court's discovery order to produce documents related to coin valuation and liquidation is denied.  *See Morua v. Compania Dominicana de Aviacion C. por A.,* No. 85 Civ. 7494 (WCC), 1990 U.S. Dist. LEXIS 4561, at *6-7 (S.D.N.Y. Apr. 18, 1990) (declining to sanction plaintiffs who attempted to comply with court orders even by delivering partial responses to discovery requests but awarding reimbursement of reasonable expenses for the failure to fully respond); *cf. Quentin La Grande v. Hannaford Bros.,* 1:04-CV-1020 (GLS/RFT), 2007 U.S. Dist. LEXIS 108608, at *18-19 (N.D.N.Y. Oct. 5, 2007) (granting dismissal of case where plaintiff failed to comply with discovery requests and wholly flouted his obligations).  In addition, Plaintiff's request for

sanctions for failure to adhere to discovery obligations has been addressed in the undersigned's Report and Recommendation issued this same date, which recommends that attorney's fees be awarded in connection with Plaintiff's filing the first motion for sanctions. (ECF No. 132); *see Guan v. Long Island Bus. Inst., Inc.,* 15 Civ. 2215 (CBA) (VMS), 2017 U.S. Dist. LEXIS 217961, at *10-11 (E.D.N.Y. Mar. 2, 2017) (collecting cases concerning award of attorney fees associated with motion for sanctions).

### B. Defendants' Motion for Sanctions and Plaintiff's Opposition

Defendants erroneously cite to Fed. R. Civ. P. 11[1] in moving for sanctions against Plaintiff—namely for Plaintiff's failure to comply with the Court's Order in producing account information and the text messages between Plaintiff and Sullivan. (ECF No. 140 at 1.) Although Plaintiff has produced eBay account information, Defendants claim she has failed to produce crucial account information from PCGS and NGC[2] which would help "determin[e] the timeline

---

[1] Under Fed. R. Civ. P. 11 "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Typically courts "impose sanctions under Rule 11 when it appears that a pleading has been interposed for any improper purpose, or where…a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law…." *Weber v. Churchill Communications Corp.*, No. 86 Civ. 2894 (JFK), 1988 U.S. Dist. LEXIS 1094, at *9-10 (S.D.N.Y. Feb. 8, 1988). Notably here, however, Defendants lodge complaints against Plaintiff for failure to comply with the Court's discovery orders but Rule 11 expressly states that it does not apply to discovery requests or motions under Rules 26 through 37. *See* Fed. R. Civ. P. 11(d). The motion should have been filed pursuant to Fed. R. Civ. P. 37.

[2] The Second Circuit has explained the grading services by Professional Coin Grading Service ("PCGS") and Numismatic Guaranty Corporation ("NGC") as follows:

> "Certified" coins are coins that have been graded by a third-party grading service such as NGC or PCGS. After grading a coin, the grading service normally places it in a protective capsule, or "slab," that is then sealed and difficult to open without a tool. An "unslabbed," or "raw," coin is one that is not certified by a grading service. NGC gives a guarantee for any coin it has certified (for so long as the coin remains in its slab), meaning that if a coin fails to trade in the marketplace for as much as the price associated with the grade given it by NGC, NGC either will buy the coin from the owner at the price associated with the certified grade or will regrade the coin, return it to the owner, and pay the owner the difference in value. NGC's grading is relied on in transactions

5

of Plaintiff's account creation, inventory of coins, and the documentation of scanned coins during the initial phase of this case." (*Id*. at 2.)  Worse for Plaintiff, she admitted to possessing the very information during her deposition and allegedly agreed to provide them but, to date, has not done so.  (*Id*.)  Defendants speculate that Plaintiff is concealing or altering evidence which justifies imposing sanctions and warrants an order compelling Plaintiff to produce the requested account information.  (*Id*.)  As to the text messages, Plaintiff has provided an affidavit that no further texts exist, but Defendants challenge the contents of the affidavit stating that Plaintiff has the ability to screenshot and compile text conversations and photos dating back to 2020.[3]  (ECF No. 140 at 2.)

Plaintiff first contends that the coins on the eBay account and sales are irrelevant given that those coins concern those from a Disney collection and are not "precious metal coins minted by the United States government and used as legal tender."  (ECF No. 141 at 2.)  Plaintiff avers there is a strict distinction between the numismatic coins turned over to Defendants versus the Disney coins.  Plaintiff has produced 462 pages of E-Bay account information, which demonstrated that she did not sell numismatic coins through that particular platform.  (*Id*.)

Next, as to the PCGS and NGC information, Plaintiff concedes that she purchased coins from Defendants from June 30, 2017 through January 27, 2021.  (ECF No. 141 at 1-2.)

---

> between and among dealers and collectors; indeed, some buyers purchase coins sight unseen based solely on the grades given by NGC. PCGS gives similar guarantees.

*United States v. Romano*, 794 F.3d 317, 323 (2d Cir. 2015).

[3] Defendants also seemingly request text messages between Plaintiff's counsel and Antonelli's neighbor, David Halstead. (ECF No. 140 at 3.)  However, this request was abandoned in Defendants' prior motion to compel. (ECF No. 129 at 3) ("Given these circumstances, and considering my ongoing engagement in drafting the motion to dismiss, I decided to postpone addressing the relevance of these materials for the time being, with the possibility of revisiting them in the future if deemed necessary.")  To the extent Defendants wish to compel these documents from Plaintiff, they must first request the documents from Plaintiff and if those efforts are unsuccessful, make a motion to compel the text messages, outlining their relevance to this case.

However, her membership with PCGS occurred *after* Defendants had already stolen and converted her coins in 2021. (*Id*.) She had even testified to this effect in her depositions. (*Id*. at 2.)

Finally, concerning the text messages, Plaintiff provided a sworn affidavit representing that she has turned over all text messages between her and Sullivan and Antonelli. (ECF No. 141 at 17.) Thus, Defendants raise baseless arguments regarding Plaintiff's alleged manipulation of the texts and failed to ask any questions about the missing or otherwise altered text messages during her deposition. (*Id*. at 2.) Nothing was proffered that would indicate that the representations made in the affidavit are false.

Regarding the coin account information, the Court never directed Plaintiff to turn over the requested information. (ECF No. 131 at 3) (directing Plaintiff to produce eBay records, the shredded document and a sworn affidavit as to the Plaintiff-Sullivan text messages). Nevertheless, the PCGS and NGC membership information would be irrelevant here given the timeline as outlined by Plaintiff—her coin account membership was established *after* Defendants had already engaged in the alleged misconduct and would have little to no bearing on the timeline of the course of events in this action. *See Torgovnick v. SoulCycle Inc.,* 17 Civ. 1782 (PAC), 2018 U.S. Dist. LEXIS 184932, at *5 (S.D.N.Y. Oct. 29, 2018) ("A party may move to compel discovery under Federal Rule of Civil Procedure 37 after conferring with the opposing party in good faith. Fed. R. Civ. P. 37(a)(1). On a motion to compel, the movant must demonstrate that the information sought is discoverable, including, among other things, that it is relevant.") (internal citations omitted); *Surles v. Air France*, 00 Civ. 5004 (RMB)(FM), 2001 U.S. Dist. LEXIS 15315 ("[I]nformation sought by Defendant does not become relevant merely because Defendant speculates that it might reveal useful material. Where a [party] fails to

produce any specific fact whatsoever to support an…allegation, a district court may, in its discretion, refuse to permit discovery….." (quoting *Spina v. Our Lady of Mercy Medical Center*, 97 CIV 4661 (RCC), 2001 U.S. Dist. LEXIS 7338, at *7 (S.D.N.Y. June 7, 2001)). Indeed the membership information page submitted establishes that the account was opened in June 2023 while Defendants' misconduct occurred most recently in 2021. (ECF No. 141 at 14.)

Regarding the text messages, Defendants' allegation that Plaintiff can compile certain text information is irrelevant. Even if she could do so, this still does not make the assertions in her affidavit untrue, *i.e.* that additional text conversations between her and Sullivan do not exist. Defendants merely speculate that Plaintiff has not fully disclosed all relevant text messages or otherwise altered certain documents. Further, Defendants jump to conclusions that because Plaintiff was able to text photos to Sullivan, she would have also "easily generated $7,000 using eBay." (ECF No. 140 at 3.) These allegations are wholly unfounded.[4] Nonetheless, Plaintiff did *exactly* as the Court previously ordered—that is, "provide a sworn affidavit describing search efforts [of the text conversations] and what was yielded." (ECF No. 131 at 3.) Therefore, sanctions are not warranted against Plaintiff here.

In light of the above, Defendants' motion for sanctions, specifically to compel Plaintiff to produce the account information and text message conversations is denied.

---

[4] Relatedly, Defendants point to Plaintiff's possession of coin storage binders as evidence that her entire coin collection had not been stolen as she claims. But again, this does not make the assertions in her Amended Complaint untrue—she can still have a coin storage binder and have had all her coins stolen by Defendants.

## **CONCLUSION**

For the foregoing reasons, both Plaintiff's and Defendants' motion for sanctions are denied.

Dated: Central Islip, New York
September 24, 2024

**S O   O R D E R E D:**

/S/ *James M. Wicks*
    JAMES M. WICKS
United States Magistrate Judge

9